UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KATRON CHAVIS,

Plaintiff,

v.                                                    8:24-CV-889
(GTS/MJK)

SYRACUSE POLICE DEPARTMENT

Defendant.

KATRON CHAVIS, Plaintiff, pro se

MITCHELL J. KATZ, United States Magistrate Judge

TO THE HONORABLE MAE A. D'AGOSTINO, United States District Court Judge:

**ORDER and REPORT-RECOMMENDATION**

Plaintiff commenced this action on July 18, 2024 by filing a complaint (Dkt. No. 1) together with a motion for leave to proceed in forma pauperis (Dkt. Nos. 2, 6). The Clerk has sent to the court for review the complaint brought pursuant to 42 U.S.C. § 1983 as well as the IFP Application.

**I.    IFP Application**

Plaintiff's IFP Application declares that he is unable to pay the filing fee. (Dkt. No. 6). After reviewing plaintiff's application, this court finds that he is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth

1

in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *See Neitzke*, 490 U.S. at 327; *see also Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II. **Complaint**

The complaint alleges violations of plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983. (Dkt. No. 1).

Plaintiff alleges that on September 14, 2023, he was "jumped out on" by two Syracuse police officers at the State Market. (Complaint ("Compl.") at 4).[1] Specifically, plaintiff alleges that one police officer placed him in a choke hold while the other "beat" him. (*Id.*). The complaint further alleges that at some point, two additional police officers began punching plaintiff while he was still in a choke hold. (*Id.*). According to plaintiff, bystanders recorded the incident with their telephones. (*Id.*). The complaint alleges that plaintiff suffered a seizure, nerve damage throughout his body, and in his

---

[1] The page references to the complaint are consistent with those assigned by CM/ECF.

right shoulder. (*Id.*). Plaintiff also complains of headaches, right hand pain, and ongoing pain in his neck, back and spine. (*Id.*).

Plaintiff's request for relief seeks $10,000,000 in damages. (*Id.* at 5).

III.  **Syracuse Police Department**

Although named in the caption to this action, the Syracuse Police Department is not listed as a defendant in section three of the complaint. Regardless, if the Syracuse Police Department had been so identified, the Syracuse Police Department would not be a proper party to this action as a matter of law. "A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cnty. of Nassau*, No. 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *La Grande v. Town of Bethlehem Police Dep't*, No. 08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 10-CV-1223 (GTS/DEP), 2012 WL 4052286, at

\*5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

For the foregoing reasons, the court recommends dismissing the complaint as to the Syracuse Police Department with prejudice.

## IV.   **Excessive Force Claim**

"The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects . . . . To establish a Fourth Amendment excessive force claim, Plaintiff must show that the force used by the officer was 'objectively unreasonable.'" *Wilson v. Flanders,* No. 3:23-CV-263 (DNH/TWD), 2023 WL 5018490, at \*3 (N.D.N.Y. July 6, 2023) (quoting *Correa v. McLeod*, No. 3:17-CV-1059, 2017 WL 2962884, at \*3 (D. Conn. July 11, 2017) (citations omitted)). "Determining whether the force is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the governmental interests at stake." *Id. (*quoting *Graham v. Connor*, 490 U.S. 386, 396, (1989)). A court shall consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the [arrestee] poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. However, "'[n]ot every push or shove' amounts to a Fourth Amendment violation. Indeed, a "'de minimis use of force will rarely suffice to state a

Constitutional claim.'" *Acosta v. City of New York*, No. 11-CV-856, 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 2005)). Moreover, a plaintiff must allege that he sustained an injury from the alleged excessive force. *See Wims v. N. Y.C. Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011). "However, an individual does not need to sustain a severe injury to maintain a claim." *Id*. (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.")).

Although the complaint describes the nature of the alleged excessive force and plaintiff's alleged injuries, it fails to delineate which defendant engaged in which specific conduct and therefore runs afoul of Fed. R. Civ. P. 8. "[L]umping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails to satisfy the "fair notice" standard of Fed. R. Civ. P. 8. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *see also Solano v. New York*, No. 9:20-CV-1378 (BKS/ML), 2021 WL 4134793, at *6 (N.D.N.Y. Sept. 10, 2021) ("Group pleading is generally impermissible as a violation of Federal Rules of Civil Procedure ("FRCP") notice requirements."); *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. Mar. 31, 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); *Holmes v. Allstate Corp.* No. 11-CV-1543, 2012 WL 627238, at *7 (S.D.N.Y. Jan. 27. 2012) ("[FRCP]

8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."), *report recommendation adopted*, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012). The court therefore recommends that the complaint be dismissed without prejudice and that plaintiff be granted leave to amend his complaint to state facts in support of his claim against each individual defendant.

V.   **Intentional Infliction of Emotional Distress**

Plausibly construed, plaintiff's second claim purports to describe a claim for intentional infliction of emotional distress. (Compl. at 5). As a preliminary matter, "there is no recognized claim for intentional infliction of emotional distress under section 1983." *Schisler v. City of Rome*, No. 6:17-CV-312 (GTS/ATB), 2017 WL 1418296, at *4 (N.D.N.Y. Mar. 22, 2017), *report recommendation adopted* 2017 WL 1411533 (N.D.N.Y. Apr. 20, 2017); *see also York v. City of Johnstown*, No. 1:20-CV-1616 (MAD/ML), 2022 WL 2209441, at *5 (N.D.N.Y. June 21, 2022). Thus, to the extent plaintiff intended to assert this claim under Section 1983 as a stand-alone claim against the individual defendants, the same must be dismissed.

Further, "[d]amages for Section 1983 cases are 'ordinarily determined according to principles derived from the common law of torts,' and encompass compensatory damages, nominal damages, punitive damages and presumed damages." *Rodriguez v. Village of Porchester*, 535 F.Supp.3d 202, 221 (S.D.N.Y. Apr. 26, 2021) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–11 (1986)). In turn, compensatory damages may comprise of compensation for (1) out-of-pocket losses; and (2) pain and suffering as well as emotional and mental distress. *See Memphis Cmty. Sch.*

*Dist.* 477 U.S. at 307; *see also Miner v. City of Glens Falls,* 999 F.2d 655, 662 (2d Cir.1993) ("It is settled that a court may award damages for emotional suffering in a § 1983 case.). Pain and suffering include compensation for physical pain, emotional pain and loss of enjoyment of the pleasurable activities of life. *See Sales v. Republic of Uganda*, 828 F. Supp. 1032, 1044 (S.D.N.Y. 1993).

Plaintiff's first claim alleges that he suffered "significant physical and emotional damage" from the alleged use of excessive force. (Dkt. No. 1 at 5). As such, to the extent that plaintiff's second claim is not predicated on an intentional tort, but merely seeks damages for mental and emotional harm incident to the alleged use of excessive force, the same is already pled in his first claim and is unnecessarily duplicative. In either event, the court recommends that plaintiff's second claim be dismissed with prejudice and without leave to replead.

## VI.   <u>Opportunity to Amend</u>

### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

The court recommends dismissing the complaint as against the Syracuse Police Department with prejudice. The court further recommends that plaintiff's claim for excessive force against Detective Fred Lamberton, Police Officer Mackenzie Glynn, Detective Abraham, and Detective DeJoseph be dismissed without prejudice. In deference to plaintiff's pro se status, however, the court recommends that plaintiff be provided with an opportunity to amend to clarify what specific acts each defendant allegedly engaged in so that they will have "fair notice" of the claims against them.

Finally, the court recommends that plaintiff's claim for intentional infliction of emotional distress  against the Detective Fred Lamberton, Police Officer Mackenzie Glynn, Detective Abraham, and Detective DeJoseph be dismissed with prejudice and without leave to amend.

 **WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED**,[2] and it is

**RECOMMENDED**, that the district court **DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY, WITH PREJUDICE, only** as to defendant Syracuse Police Department, and it is

---

[2] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

9

**RECOMMENDED**, that the district court **DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY, WITHOUT PREJUDICE**, with leave to replead, as to defendants Detective Fred Lamberton, Police Officer Mackenzie Glynn, Detective Abraham and Detective DeJoseph, except that plaintiff's second claim is dismissed **WITH PREJUDICE** and without leave to replead, and it is

**RECOMMENDED**, that if the District Judge adopts this Order and Report-Recommendation, plaintiff be given thirty (30) days from the date of the District Judge's order, within which to submit a proposed second amended complaint to the court for its consideration, and that plaintiff be advised that **any amended pleading must be a COMPLETE PLEADING, WHICH WILL SUPERCEDE THE COMPLAINT**, and that plaintiff must include all the remaining facts and causes of action in the second amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED,** that if the District Court adopts this Order and Report-Recommendation, and plaintiff files a proposed amended complaint, the proposed pleading be returned to me for review, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations, and it is

10

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation on plaintiff by regular mail.[3]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 6, 2024

Mitchell J. Katz
U.S. Magistrate Judge

---

[3] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 12 of 123

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]    On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

 **\*1**  The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

 **\*2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Case 8:24-cv-00889-MAD-MJK  Document 9  Filed 09/06/24  Page 13 of 123

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]   Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 14 of 123

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

**V. Analysis**

**A. Eleventh Amendment**

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to

whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Failure To Intervene

*5 The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 16 of 123

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

## C. First Amendment

### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988).

**\*7** It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart,* No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]   The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8** In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/ DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race." *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*


### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.


### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence. [9]

[9]    The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. W here the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133. [10]

[10]    The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Houston v. Coiterman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 W L 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

## E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 W L 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Houston v. Coleman, Not Reported in Fed. Supp. (2016)

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 21 of 123

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs,* No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York,* 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 8:24-cv-00889-MAD-MJK Document 9 Filed 09/06/24 Page 22 of 123

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by Hogan v. County of Lewis, N.Y., N.D.N.Y., March 8, 2013

2010 WL 335581
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Erwin JACKSON, Plaintiff,
v.
COUNTY OF NASSAU, Nassau County
Police Department, and Office of the Nassau
County District Attorney, Defendants.

No. 07-CV-245 (JFB)(AKT).
|
Jan. 22, 2010.

**Attorneys and Law Firms**

Erwin Jackson, pro se.

Ralph J. Reissman and Sara A. Wells of the Nassau County Attorney's Office, Mineola, NY, for defendants.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** On January 17, 2007, pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Erwin Jackson ("plaintiff" or "Jackson") brought this action against defendants County of Nassau ("the County"), Nassau County Police Department, and the Office of the Nassau County District Attorney alleging that defendants violated plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Specifically, Jackson claims that his constitutional rights were violated during his pretrial proceedings when police officers allegedly withheld exculpatory evidence, made perjurous statements, and falsely verified felony complaints against plaintiff when they had no personalknowledge of the underlying facts. Jackson further contends that the County of Nassau has a policy of committing these constitutional violations. Jackson also alleges that the County of Nassau

has a policy of failing to investigate criminal complaints regarding these types of violations if they are filed by pretrial detainees or criminal defendants. The defendants now move, jointly, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is granted.

**I. FACTS**

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the defendants' respective Rule 56.1 statements of facts. [1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party-here, the plaintiff. *See Capobianco v. City of New York,* 422 F.3d 47, 50 n. 1 (2d Cir.2001). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it. [2]

[1]    The Court notes that plaintiff failed to file and serve a response to defendant's Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see also Gilani v. GNOC Corp.,* No. 04 Civ. 2935(ILG), 2006 WL 1120602, at \*2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In plaintiff's opposition papers, he specifically identified those paragraphs of defendants' Rule 56.1 statement with which he agreed that there were no material disputed issues of fact. The Court, in its discretion, thus relies on those paragraphs as equivalent to plaintiff's Rule 56 .1 statement of facts for the purposes of this

opinion. In the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will also only deem admitted those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy,* 292 F.Supp.2d at 504-05.

2   Because plaintiff is *pro se,* the Court has independently reviewed plaintiff's deposition testimony. Plaintiff's deposition contains no additional evidence other than plaintiff's speculation and conclusory allegations.

### A. The Underlying Prosecution

On November 22, 2005, plaintiff Erwin Jackson was arrested by Nassau County police officers for attempted robbery of the Bank of America located in Baldwin, New York, on November 21, 2005. (Defs.' 56.1 Statement ¶ 4.) Plaintiff was brought to the Bellmore police station, where he was questioned about the November 21, 2005 robbery. (Deposition of Irwin Jackson, Defs.' Ex. E (hereinafter "Pl.'s Dep.") at 32-33.) At the station, Jackson was also questioned about other bank robberies. (*Id.* at 34-35.) Plaintiff was arrested and arraigned on November 23, 2005. He was charged for the November 21 robbery and four additional robberies that had occurred in Nassau County on November 13, 2005, October 1, 2005, September 2, 2005, and July 23, 2005. (*Id.* at 40-41; Defs.' 56.1 Statement ¶ 5.) Plaintiff was indicted by a grand jury on thirteen counts on December 19, 2005. (Pl.'s Dep. at 44-45.) In June 2006, a pretrial suppression hearing was held, at which Police Officer Joseph Hughes testified. (*Id.* at 45-46.) Plaintiff proceeded to trial on the charges and, on February 6, 2007, was found guilty on nine counts of Robbery in the First Degree (New York Penal Law 160.15) and one count of Conspiracy in the Fourth Degree (New York Penal Law 105.10). (*Id.* at 53-54.) On July 30, 2008, Jackson was sentenced to fifteen years for each of the nine counts of Robbery in the First Degree, plus one year and four months for Conspiracy in the Fourth Degree. (Defs.' 56.1 ¶ 8.) Jackson's minimum aggregate sentence was set at twenty-five years, eight months and sixteen days. (*Id.* ¶ 9.)

### B. Officer Hughes

**\*2**  By letter dated September 17, 2006, while a pretrial detainee, Jackson filed three criminal complaints against Police Officer Joseph Hughes with the Nassau County District Attorney's Criminal Complaint Unit. (*Id.* ¶ 10.) The complaints were based on Officer Hughes's allegedly inconsistent testimony at a pretrial suppression hearing. Jackson alleges that while testifying before the Grand Jury in December 2005, Officer Hughes stated that he observed five black males fleeing a four-door Buick wearing face masks. During a subsequent pretrial hearing on July 10, 2006, plaintiff cross-examined Officer Hughes. At that hearing, Officer Hughes stated that only some of the males he observed were wearing face masks. The testimony at the July 10 pretrial hearing was as follows:

Q: This individual jumps out of the car. This is the individual that you pursued after?

A: Correct. * * *

Q: Did he have mask on? A: No mask.

Q: No mask. You testified in the grand jury that all five of the occupants of that car that fled had masks on?

A: I was incorrect about that. I stated that before.

Q: That information wasn't true?

A: It was incorrect. * * *

Q: You testified they all had masks on. Now, you're saying, you take the mask off one-

A: I believe in that statement. I was describing all the occupants. I said, they all had masks on. I was incorrect. I should have said, some had masks on.

(*Id.* ¶ 12 (citing Ex. AB at 485-86).)

Jackson also claims Officer Hughes made a "punishable false written statement" and committed the crime of "offering a false instrument for filing" by verifying and signing five felony complaints against plaintiff, although Officer Hughes had no personal knowledge of the information contained in those complaints and relied on information provided by other officers. (*Id.* ¶¶ 13-14.) According to Jackson, during the pretrial hearing and trial of his co-defendant Paul Henry, Officer Hughes testified that it was police procedure for officers to verify and swear to felony complaints even though they lacked knowledge of the underlying facts or crimes alleged therein. (Pl.'s Dep. at 61.) Jackson also alleges that Hughes testified to this at Jackson's own trial on cross-examination. (*Id.* at 61-62.)

On September 21, 2006, Assistant District Attorney ("ADA")
Thurer transferred plaintiff's perjury complaint against
Officer Hughes to ADA Barbara Kornblau, Chief of the
Public Corruption Bureau. (*Id.* ¶ 15.) ADA Kornblau
reviewed plaintiff's complaint against Officer Hughes.
Because plaintiff's case was still pending and "the issues
alleged by plaintiff all pertained to credibility," (Defs.'
Ex. K ¶ 6), ADA Kornblau notified Daniel Looney, the
ADA prosecuting plaintiff, and plaintiff's attorney, Jeffrey
Groder, of plaintiff's claims. The District Attorney's Office
later informed Jackson that it also forwarded the case to
the Internal Affairs Bureau of the Nassau County Police
Department for administrative action at their discretion.
(Pl.'s Dep. at 56; Defs.' 56.1 ¶ 16.) After receiving
plaintiff's complaint from the District Attorney's Office, the
Nassau County Police Department's Internal Affairs Bureau
"determined that plaintiff's complaint against Officer Hughes
for perjury was unfounded, since plaintiff had been convicted
in a jury trial on February 6, 2007." (Defs.' 56.1 ¶ 18.)

### C. Detective Comiskey

**\*3** Jackson also filed criminal complaints against Detective
Joseph Comiskey with the Nassau County District Court.
(Pl.'s Dep. at 58-59.) According to Jackson, Detective
Comiskey committed "official misconduct" and perjury
for allegedly failing to provide plaintiff with "exculpatory
material" in July 2006 at a pretrial hearing, and for advising
the court that he had turned over all of his notes when,
according to Jackson, he had not done so. (Defs.' 56.1
¶ 19.) ADA Steven L. Schwartz, Chief of the Nassau
County District Attorney's District Court Bureau, investigated
these two complaints against Detective Comiskey, and
found the claims in them unfounded. (*Id.* ¶ 20.) Plaintiff
was subsequently informed that the District Attorney's
Office declined to prosecute these complaints. (*Id.*) These
complaints were also reviewed by ADA Kornblau, who
determined that Detective Comiskey's actions were not a
crime. (*Id.* ¶ 22.) Subsequently, as she had done with
the complaint against Officer Hughes, she forwarded the
complaints to the Nassau County Police Department Internal
Affairs Bureau. (*Id.* ¶ 22.) ADA Kornblau also sent a letter
to Jeffrey Groder, plaintiff's trial counsel, informing him of
plaintiff's allegations, since they pertained to an incident in
which Groder was involved. (*Id.*)

### D. The Instant Complaint

Jackson alleges eleven causes of action against the
County of Nassau and two of its administrative arms, the
Nassau County District Attorney's Office and the
Nassau County Police Department, arguing that these entities
had unconstitutional policies, practices, and customs that
infringed his constitutional rights. Jackson asserts three
claims specifically against the County of Nassau. First, he
alleges that the County had a policy of failing to discipline its
employees for any alleged perjury or cover-ups with respect
to evidence. (Compl. at 5; Pl.'s Dep. at 93.) Jackson's second
cause of action claims that the County has a policy, practice,
procedure and custom of failing to take steps to terminate
the unconstitutional practices of "its legal subordinates,"
defendants Nassau County Police Department and the Nassau
County District Attorney's Office. (Compl. at 5; Pl.'s Dep. at
93-94.) Jackson's third cause of action alleges that the County
has failed to properly train and supervise its employees
with regard to "the proper constitutional and statutory
requirements in the exercise of their authority." (Compl. at 5;
Pl.'s Dep. at 94.)

Jackson asserts four claims against the Nassau County
Police Department. The fourth cause of action in Jackson's
complaint alleges that the Nassau County Police Department
has a policy that authorizes subordinates to falsely verify
and file criminal felony complaints without "knowledge of
or knowledge based upon belief" of the underlying facts.
(Compl. at 5; Pl.'s Dep. at 95.) The fifth cause of action
alleges that the Nassau County Police Department failed to
properly train and supervise its employees in the processing
of arrestees. (Compl. at 5-6.) Specifically, Jackson contends
that, due to inadequate training, employees of the Nassau
County Police Department do not realize "that they are not
authorized to swear or fill out a felony complaint that they
have absolutely no knowledge of." (Pl.'s Dep. at 96.) The sixth
cause of action in Jackson's complaint claims that the Nassau
County Police Department has an illegal practice or custom
that condones and sanctions its employees who commit
perjury, which is demonstrated by the fact that plaintiff, a
pretrial criminal defendant, attempted to file criminal charges
against the defendants' subordinates, but the defendants took
no corrective actions. (*Id.* at 96-97; Compl. at 6.) Jackson's
seventh cause of action alleges that the Nassau County Police
Department, as a policy maker, has a defective and illegal
policy whereby it does not correct or punish wrongdoings,

such as those alleged in causes of action numbers four, five, and six. (Compl. at 6; Pl.'s Dep. at 97-98.)

**\*4** Jackson asserts his four final claims against the Nassau County District Attorney's Office. Jackson's eighth cause of action alleges that the Nassau County District Attorney's Office has a history and practice of ignoring criminal defendants' and arrestees' complaints, ignoring evidence of police misconduct, and shielding police officers and other assistant district attorneys from prosecution. (Compl. at 6.) Jackson's ninth cause of action alleges that the Nassau County District Attorney's Office does not give "any credence to pretrial criminal defendants who seek to file and give any credence to pretrial criminal defendants that seek to commence criminal actions in the court against public officials." (*Id.* at 130.) Specifically, plaintiff contends that the Nassau County District Attorney's Office declines to investigate, arrest, and/or prosecute public officials when illegal conduct is alleged by pretrial or criminal defendants. (Compl. at 6-7.) Jackson's tenth cause of action alleges that the Nassau County District Attorney's Office has failed to punish the illegal practices and wrongdoings of their employees and the Nassau County Police Department. (Compl. at 7.) Jackson's eleventh and final cause of action contends that the Nassau County District Attorney's Office has a policy and procedure whereby the district court clerk does not submit or file any claims or complaints against a public official made by criminal defendants. (Compl. at 7.)

## II. PROCEDURAL HISTORY

Jackson filed the complaint in this action on January 17, 2007. The Court granted plaintiff leave to proceed *in forma pauperis* on January 31, 2007. Defendants filed an answer to the complaint on May 23, 2007. On March 14, 2008, plaintiff filed a motion to amend the complaint. This Court denied that motion on February 13, 2009. On May 15, 2009, defendants submitted their motion for summary judgment and provided *pro se* plaintiff with the notice required by Local Civil Rule 56.2. Defendant submitted supplemental papers to their motion on June 5, 2009. Plaintiff submitted opposition papers on May 28, 2009.[3] Defendants filed their reply to plaintiff's opposition on June 5, 2009. Plaintiff also submitted a motion for sanctions against defendants on June 10, 2009. Defendants submitted their opposition to the motion for sanctions on June 11, 2009. This matter is fully submitted.

3   Due to delay, it appears that plaintiff's response was not filed with the Court until June 11, 2009.

## III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir.2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

**\*5** Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.* ' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary

2010 WL 335581

judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

Where the plaintiff is proceeding *pro se,* the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (alterations in original) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.,* --- F.Supp.2d ----, No. 08 Civ. 7371(GEL), 2009 WL 2877604, at *2 (S.D.N.Y. Sept. 9, 2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009))).

## IV. DISCUSSION

### A. Proper Defendants

Plaintiff alleges specific causes of action against the Nassau County Police Department and Nassau County District Attorney's Office as defendants. However, "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *See Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department); *see also Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) ("Because plaintiff has named the City of White Plains as a defendant, any claims against the [White Plains Department of Public Safety] are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Polite v. Town of Clarkstown,* 60 F.Supp.2d 214, 216 (S.D.N.Y.1999) ("[M]unicipal departments in this State-such as the Clarkstown Police Department-are not amenable to suit, and no claims can lie directly against them."); *Wilson v. City of New York,* 800 F.Supp. 1098, 1101 (E.D.N.Y.1992) ("The court also dismisses the claims against the New York City Police Department, which cannot be sued

independently because it is an agency of the City of New York." (citations omitted)). Plaintiff's allegations against the Police Department are more properly raised in claims against Nassau County, which plaintiff has also brought in his first, second, and third causes of action. Accordingly, the Nassau County Police Department is dismissed as a defendant.

**\*6** For the same reason, plaintiff cannot bring claims against the Nassau County District Attorney's Office. *See Conte v. County of Nassau,* No. 06-CV-4746 (JFB)(ETB), 2008 WL 905879, at *1 n. 2 (E.D .N.Y. Mar. 31, 2008) (dismissing Section 1983 claims against the Nassau County District Attorneys Office because the entity is an " 'administrative arm[ ]' of the same municipal entity-the County ... and thus lack[s] the capacity to be sued"). Plaintiff's allegations against the District Attorneys Office are more properly brought as claims against Nassau County. Plaintiff has brought substantially the same claims against the District Attorney's Office as he has brought against the County of Nassau. Accordingly, the Nassau Count District Attorney's Office is dismissed as a defendant in this case. [4] Because the plaintiff is proceeding *pro se,* the Court, in its discretion, does not dismiss plaintiff's fourth through eleventh causes of action in their entirety, but rather construes those claims, which are largely duplicative of causes of action one through three, as against the County of Nassau.

[4] The Court further notes that it has previously denied plaintiff's attempt to amend his complaint to state claims against Lawrence Mulvey, the Commissioner of the Nassau County Police Department, and Kathleen Rice, the Nassau County District Attorney. *See Jackson v. County of Nassau,* No. 07-CV-0245 (JFB)(AKT), 2009 WL 393640 (E.D.N.Y. Feb. 13, 2009).

### B. Section 1983 Liability

As stated *supra,* Jackson has brought his claims pursuant to Section 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979). [5] For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of

the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999) (citation omitted). Here, the parties do not dispute that defendants were acting under color of state law. The question presented, therefore, is whether defendants' conduct deprived Jackson of the rights he asserts.

<sup>5</sup> Specifically, Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....
>
> 42 U.S.C. § 1983.

Although *pro se* plaintiff alleges eleven separate causes of action against the County of Nassau and its administrative arms, the claims alleged by plaintiff in his complaint are as follows: (1) the County of Nassau has a policy or practice of permitting its employees (or employees of its administrative arms) to commit perjury and a policy or practice of failing to discipline its employees who do commit perjury; (2) the County of Nassau has a policy or practice of permitting its police officers to falsely verify criminal complaints; and (3) the County of Nassau has a policy of not investigating, responding to, or prosecuting complaints or cross-criminal complaints of pretrial detainees and criminal defendants that allege crimes and misconduct against police officers and assistant district attorneys. (Plaintiff's Opposition (hereinafter "Opp.") at 14.)

Defendants argue that they are entitled to summary judgment on the grounds that Jackson has failed to provide any evidence that would raise a genuine issue of fact as to municipal liability for any of these claims. As set forth below, the Court agrees. First, plaintiff has failed to provide any evidence that there was an underlying constitutional violation with respect to his arrest and conviction, which would be a necessary element of any municipal liability claim. In fact, under well-settled Supreme Court and Second Circuit precedent, plaintiff's valid conviction precludes him from litigating any of his claims in the instant case because success on such claims (that is, demonstrating his constitutional rights were violated in connection with the investigation and prosecution of his case) would necessarily implicate the unconstitutionality of his conviction. Second, plaintiff has

provided absolutely no evidence of an unconstitutional policy or custom of the County of Nassau and, thus, his municipal liability claims against the County cannot survive summary judgment.

### (1) Plaintiff Cannot Demonstrate Violation of His Constitutional Rights

**\*7** To bring a successful Section 1983 claim, plaintiff must first demonstrate that he was injured as a result of a constitutional violation. In the instant case, plaintiff cannot do so. First, Supreme Court precedent prevents a prisoner, like Jackson, from bringing a Section 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence. Second, even assuming this rule did not apply, plaintiff has presented no evidence of any constitutional violations relating to his conviction.

#### a. *Heck v. Humphrey*

As a threshold matter, although not explicitly raised by defendants, plaintiff's claims fail as a matter of law, by virtue of his conviction. Specifically, the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994), entitles defendants to a decision in their favor as a matter of law with respect to these claims.

#### i. The *Heck* Rule

In *Heck v. Humphrey,* the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir.1999) (citing *Heck,* 512 U.S. at 480-90). The Supreme Court in that case explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a

§ 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); *see also Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) ("Heck specifies that a prisoner cannot use § 1983 to obtain damages where success *would* necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)).

Thus, pursuant to *Heck,* courts routinely dismiss claims brought under Section 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Guerrero v. Gates,* 442 F.3d 697, 703-04 (9th Cir.2006) (holding that Heck bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Amaker,* 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983 conspiracy); *Perez v. Cuomo,* No. 09 Civ. 1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]") (internal quotation marks and citations omitted); *Younger v. City of N.Y.,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (holding that plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck); cf. Jovanovic*

*v. City of N.Y.,* No. 04 Civ. 8437, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006) (applying *Heck* to a Section 1983 claim for denial of the right to a fair trial in the context of a statute of limitations issue).

### ii. Application

**\*8** Here, as stated *supra,* Jackson was convicted after a trial in state court of nine counts of Robbery in the First Degree and one count of Conspiracy in the Fourth Degree on July 30, 2008. It is apparent that Jackson is still incarcerated for this conviction and, to date, has been unsuccessful in challenging his conviction or has not even attempted to do so. Under these circumstances, the Supreme Court's holding in *Heck* precludes plaintiff from bringing claims in this Court under Section 1983 for municipal liability, because a plaintiff bringing such claims must demonstrate a constitutional violation in connection with his conviction, and a successful result in this case on any one of plaintiff's claims would bear on the validity of that underlying conviction.

Indeed, *Heck'* s application to the instant matter is straightforward. Plaintiff's complaint claims that he was "subsequently indicted based upon officer Hughes['s] 'inaccurate' testimony." (Compl.¶ 9.) Plaintiff also contends that during his pretrial hearings there was extensive "late disclosure of [exculpatory] material." (*Id.* ¶ 11.) Although it is true that not all claims brought under Section 1983 necessarily implicate the validity of the underlying conviction, in this case, plaintiff's assertions of perjury, withheld evidence, and falsely sworn documents during his trial by police officers do necessarily implicate the validity of his conviction and are thus barred by the *Heck* rule. [6] *See, e.g., McCloud v. Jackson,* 4 F. App'x 7, 10 (2d Cir.2001) ("[Plaintiff] could not assert [municipal liability] claims under § 1983 against the county defendants for holding him in jail because any claim for money damages which, as here, necessarily imputes the invalidity of a conviction, is barred under *Heck v. Humphrey,* 512 U.S. 477, 484, 486-87 (1994), until such time as the conviction is vacated or otherwise invalidated."); *Channer v. Mitchell,* 43 F.3d 786, 787-88 (2d Cir.1994) (per curiam) (affirming *Heck*-based dismissal of claim that police officers committed perjury and coerced witnesses to identify plaintiff wrongfully); *Williams v. Schario,* 93 F.3d 527, 529 (8th Cir.1996) ("[A] judgment in Williams's favor on his damages claim that defendants engaged in malicious prosecution and presented perjured testimony would 'necessarily imply the invalidity of his conviction or sentence' " (quoting *Heck,*

512 U.S. at 487)); *Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir.1996) (per curiam) (affirming *Heck*-based dismissal of § 1983 claim of conspiracy to "bring unfounded criminal charges" against plaintiff); *Jasper v. Fourth Court of Appeals,* No. 08 Civ. 7472(LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 18, 2009) ("The Court liberally construes this complaint as asserting that plaintiff was denied his constitutional right to a fair trial. [However, s]ince plaintiff's conviction remains valid, plaintiff's fair trial claim is not cognizable under § 1983, and it must be dismissed as to all defendants[.]"); *Perez,* 2009 WL 1046137, at *7 ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[ .]") (internal quotation marks and citations omitted); *Fernandez v.. Holzbach,* No. 3:04 Civ. 1664(RNC), 2007 WL 1467182, at *1 (D.Conn. May 15, 2007) (holding that plaintiff's allegations that his convictions were based on perjury and fabricated evidence pursuant to a conspiracy to violate his federal rights "necessarily impl[ied] that he was wrongly convicted" and could not be litigated "until he show[ed] that the convictions have been invalidated"); *Duamutef v. Morris,* 956 F.Supp. 1112, 1115-16 (S.D.N.Y.1997) (dismissing § 1983 claims for, *inter alia,* malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction). Thus, in order to bring a cognizable Section 1983 claim in this Court for the harms alleged, plaintiff must first establish the invalidity of his state court conviction.

[6]   With respect to plaintiff's claim that the County of Nassau has a policy of declining to investigate criminal complaints filed by pretrial detainees and criminal defendants, as discussed *infra,* plaintiff has failed to present any evidence that his claim was not investigated, whereas the County has presented substantial evidence demonstrating that plaintiff's claim was, in fact, investigated. Moreover, the prosecution of plaintiff's criminal complaints against Officer Hughes and Detective Comiskey would have implicated the validity of his underlying conviction, in contravention of the *Heck* rule. Accordingly, *Heck* can be construed to preclude all of plaintiff's Section 1983 claims.

**\*9** The fact that plaintiff is seeking to assert municipal liability claims against the County of Nassau, rather than against individual defendants, does not vitiate the application

of the *Heck* rule to plaintiff's claims. To prevail against the County of Nassau in his Section 1983 action under any of these theories, a plaintiff must plead and prove: (1) there was an official municipal policy or custom; and (2) that policy or custom caused him to be subjected to a denial of a constitutional right. *See Monell v. Dep't Soc. Servs.,* 436 U.S. 658, 690-91 (1978). There must be a "direct causal link" between the alleged municipal action and the deprivation of the plaintiff's constitutional rights. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985); *see also Lynch v. Suffolk County Police Dep't,* No. 07-3684-cv, 2009 WL 3287565, at *2 (2d Cir. Oct. 14, 2009) ("In order to prevail on a claim against a municipality under *Monell,* a plaintiff must allege, among other things, that a 'municipal policy of some nature caused a constitutional tort.' " (citations omitted)). In the instant case, because the Court finds as a matter of law on summary judgment that *Heck v. Humphrey* prevents a finding that a constitutional violation was committed against plaintiff by any of the defendants, *see supra,* no *Monell* claim can lie against the County of Nassau pursuant to § 1983. [7] *See, e.g., Lynch,* 2009 WL 3287565, at *2 ("Insofar as plaintiff alleges that a municipal policy caused prosecutorial misconduct in the trial that led to his felony convictions, plaintiff's claim seeks to 'recover damages for [an] allegedly unconstitutional conviction or imprisonment' and is barred by *Heck,* 51 U.S. at 486." (alteration in original)); *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *accord Vippolis,* 768 F.2d at 44 ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who ... subjected, or cause[d][him] to be subjected,' to the deprivation of his constitutional rights." (citing 42 U.S.C. § 1983)); *see also Ewolski v. City of Brunswick,* 287 F.3d 492, 516 (6th Cir.2002) ("Having concluded that the Appellant has not shown a genuine issue of material fact as to any of the asserted constitutional claims, we therefore conclude that the district court correctly dismissed the Appellant's municipal liability claims.").

[7]   In any event, summary judgment would also be warranted in favor of the County of Nassau because, as discussed *infra,* plaintiff has failed to proffer any evidence of a policy, custom, or

failure to train, that led to any alleged constitutional violation.

In sum, even accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff cannot successfully bring a claim because the *Heck* rule, as a matter of law, prevents plaintiff from demonstrating a violation of his constitutional rights, which is a necessary predicate to any municipal liability claim pursuant to Section 1983.

### b. No Evidence of Violation of Plaintiff's Constitutional Rights

**\*10** Moreover, even assuming that the validity of plaintiff's underlying conviction is not implicated by his claim that the County of Nassau had a policy of ignoring criminal complaints filed by pretrial detainees and criminal defendants, he has presented no evidence to support his contention that the County did not investigate his claims. Thus, because there is no evidence from which a rational jury could find a violation of his constitutional rights, there is no predicate for his municipal liability claim.

The only forms of evidence offered by plaintiff on this issue are his bald assertions and the fact that the County did not prosecute Officer Hughes or Detective Comiskey for their alleged misconduct in relation to plaintiff's trial. Plaintiff's exhibits consist merely of copies of the letters and complaints that he filed with Nassau County entities. Plaintiff presents no evidence to contradict the evidence put forth by defendants, which demonstrates that plaintiff's complaints were investigated. In two affidavits submitted by ADA Kornblau, former Bureau Chief of the District Attorney's Public Corruption Bureau, she asserts that she personally investigated plaintiff's complaints against the officers. (*See* Defs.' Exs. K, X.) According to ADA Kornblau's affidavit, upon investigating Jackson's complaints, "[it] was clear from the minutes that [Jackson's] criminal attorney raised the issue of the failure to turn over *Rosario* material to the trial court, which is the proper venue for such an allegation." (Defs.' Ex. K ¶ 4.) Subsequently, ADA Kornblau determined that the remainder of plaintiff's claims were unfounded, and declined to prosecute the matter. (*See id.* ¶ 4 ("Subsequent to reviewing Jackson's complaint and after determining that the [complaint] did not allege conduct which constituted a crime, I referred the matter to the Internal Affairs Bureau of the Nassau County Police Department ...."); *id.* ¶ 6 ("In view of the fact that the trial of this case

was still pending, and the issues alleged by [Jackson] all pertained to credibility, I notified Daniel Looney, the Assistant District Attorney assigned to Jackson's prosecution, as well as defense counsel, Jeffrey Groder, of Jackson's claims. I also forwarded Jackson's complaint to the Internal Affairs Bureau of the Nassau County Police Department for whatever administrative action they deemed necessary.").) In a separate affidavit, ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that he personally investigated plaintiff's proposed accusatory instruments and found them to be unfounded; accordingly, they were not prosecuted. (Defs.' Ex. Q ¶ 9.) [8]

[8] The Court further notes that in the absence of any evidence that the Nassau County District Attorney's Office failed to investigate Jackson's complaints, the decision not to prosecute those complaints is protected by prosecutorial immunity. *See, e.g., Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("[U]nless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process.... This protection extends to the decision to prosecute as well as the decision not to prosecute." (internal quotations and citations omitted)).

Here, as in *Staley v. Grady,* 371 F.Supp.2d 411 (S.D.N.Y.2005), "[s]imply because defendants disagreed with plaintiff as to the merits of the proposed [complaint] and chose not to prosecute the same, does not give rise to an equal protection violation." *Id.* at 417. Here, too, the Nassau County District Attorney's Office received Jackson's criminal complaints, reviewed and investigated them, and declined to prosecute them based upon the conclusion that the complaints were without merit. (*See* Defs.' Exs. K, Q.)

**\*11** In short, due to plaintiff's inability to set forth any evidence from which a rational jury could find a deprivation of his constitutional rights, plaintiff's *Monell* claims against the County of Nassau cannot survive summary judgment.

### (2) Plaintiff Has Set Forth No Evidence to Support a *Monell* Claim

Even assuming *arguendo* that plaintiff had put forth evidence to create a genuine issue of fact on whether his constitutional rights were violated, his municipal liability claims still cannot survive summary judgment because there is no evidence of a policy, practice or custom to support a finding by a rational jury of municipal liability under *Monell.*

### i. Applicable Standard

Municipalities cannot be held vicariously liable for the actions of an employee under § 1983. *Monell,* 463 U.S. at 691 ("[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Thus, "[a] municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.' " *Abreu v. City of N.Y.,* No. 04-CV-1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at *11 (E.D.N.Y. Feb. 22, 2006) (quoting *Monell,* 436 U.S. at 690) (alteration in original). " '[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers ." *City of Canton,* 489 U.S. at 389 (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 483-84 (1986)). Thus, an individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y.C. Transit A uth .,* 941 F.2d 119, 123 (2d Cir.1991). However, "[a] court may draw the inference of the existence of a policy or custom 'when a plaintiff presents evidence that a municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *Caidor v. M & T Bank,* No. 05-CV-297 (FSJ), 2006 U.S. Dist. LEXIS 22980, at *35-36 (N.D.N.Y. Mar. 27, 2006) (quoting *Grifin-Nolan v. Providence Wash. Ins. Co.,* No. 04-CV-1453 (FJS), 2005 U.S. Dist. LEXIS 12902, at *10 (N.D.N.Y. June 20, 2005) (quotation omitted)). But, " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (quoting *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993)).

### ii. Application

Even if plaintiff could prove that his constitutional rights were violated, whether at trial or by the subsequent failure to prosecute his criminal complaint for the actions by municipal actors at his trial, this is not sufficient to demonstrate a policy or custom by the County of Nassau. "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti,* 941 F.2d at 123; *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *McAllister v. N.Y.C. Police Dep't,* 49 F.Supp.2d 688, 706 (S.D.N.Y.1999) (same); *Palmer v. City of Yonkers,* 22 F.Supp.2d 283, 290 (S.D.N.Y.1998) ("[T]he court will not infer the existence of a municipal policy from a single incident."). As discussed *supra,* " 'the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Zahra,* 48 F.3d at 685 (quoting *Dwares,* 985 F.2d at 100). [9]

9
Plaintiff contends that the persons who violated his constitutional rights were policymakers. (Opp. at 14 ("All of plaintiff's claims were made against the 'policy makers' and not against employees below the policy making level.").) First, as discussed *supra,* plaintiff's claims regarding alleged perjury, withholding of evidence, or falsely verified complaints relating to his trial are barred by *Heck.* In addition, however, plaintiff presents no evidence in support of this argument. Moreover, for purposes of plaintiff's causes of action regarding the failure to investigate his criminal complaints against those persons, plaintiff would need to allege that the persons who allegedly failed to investigate his accusations were policymakers. Plaintiff does not do so. Instead, he acknowledges that the policy maker is District Attorney Kathleen Rice, and the individuals who submitted the defendants' supporting affidavits-those who investigated plaintiff's allegations-are subordinates to the policy maker. (Opp. at 15.)

For the reasons contained in our earlier opinion, this Court declines to add District Attorney Rice as a defendant in this action. *See Jackson, 2009 WL 393640, at \*3-5.* In light of Jackson's repeated argument that the actions of the Nassau County District Attorney's Office's and Nassau County Police Department's actions were part of a policy, procedure, or custom, the Court interprets his complaint and opposition papers to argue municipal liability based only on a theory of municipal policy, procedure, or custom, and not on a theory of unconstitutional action by a policymaker.

**\*12** Plaintiff's complaint, statements at his deposition, and opposition papers to defendants' motion for summary judgment contain vague allegations regarding the existence of a policy or procedure by the County of Nassau of refusing to investigate criminal complaints of pretrial detainees and criminal defendants. (*E.g.,* Opp. at 5-6 ("Plaintiff also stated that he never received any response or letters of acknowledgment from either office though he wrote numerous letters inquiring about the status of his complaints and criminal charges."); Opp. at 6 ("The complaints were never investigated and plaintiff never received any response."); Opp. at 7 ("During the deposition plaintiff continuously testified to the fact that no one ever investigated nor responded to his complaints and grievances.").) These conclusory allegations as to the existence of a policy or custom are insufficient to withstand summary judgment. *See Bishop v. Toys "R" Us-NY, LLC, No. 04 Civ. 9403(PKC), 2009 WL 440434, at \*4 (S.D.N.Y. Feb. 19, 2009)* ("[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1995)*). Indeed, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Id* . (citing *Matsushita, 475 U.S. 574, 587 (1986)*); Order, *McCrary v. County of Nassau,* No. 06 CV 4982(SJF)(ARL) (E.D.N.Y. Sept. 22, 2008) ("Magistrate Judge Lindsay properly found that [p]laintiff had proffered no evidence to support his assertion that a custom, policy and/or practice, which precludes the consideration of criminal charges brought by an accused against police officers and assistant district attorneys, existed" when plaintiff merely asserted that a police officer was "aware of alleged police misconduct regarding Plaintiff's apprehension, [the] affidavits in support of County

Defendants' summary judgment motion were not sufficiently detailed, and that there was no record of any investigation having been conducted by [County Defendants] in regards to the [complaints]"). Plaintiff has presented no actual evidence of a policy or custom whereby the County would decline to review the criminal complaints of pretrial detainees or criminal defendants.

The County of Nassau, however, has put forward extensive evidence regarding the policies that it has in place to review criminal complaints filed by all citizens. In two separate affidavits, ADA Kornblau affirms that the County does investigate criminal complaints against police officers and ADAs-including those made by pretrial and criminal defendants: "[M]any of the [District Attorney's Public Corruptions Bureau's] cases are referred from members of the public, including direct complaints of police misconduct that the Bureau receives from defendants and/or their attorneys." (Defs.' Ex. X. ¶ 5.) Similarly, "[t]o facilitate the investigation into complaints by incarcerated individuals including pretrial detainees, the Public Corruption Bureau maintains a hotline in the Nassau County Correctional Center for the purpose of allowing inmates to file complaints directly with the Public Corruption Bureau, without having to have their complaints reviewed first by any other entity, agency, or person." (*Id.*) Moreover, ADA Kornblau's affidavit states that "[e]ach criminal complaint is afforded individual attention and investigation ... [and if] after investigation, it is determined that a complaint is supported by credible evidence, the Nassau County District Attorney's Public Corruption Bureau will recommend prosecution, after which those cases will be prosecuted in criminal court." (*Id.* ¶¶ 6-7).

**\*13** The County of Nassau has also submitted evidence that the system utilized by the Nassau County District Attorney's Office for examining criminal complaints filed by private citizens does not differentiate between complaints based on the individual who files the complaint. ADA Kornblau explains that:

> Complaints are retrieved from within the computerized complaint system in one of three ways: (1) a complainant's name; (2) a defendant's name; or, (3) a complaint number. Therefore, there is no way to retrieve criminal complaints made specifically by pretrial detainees from within the computer complaint

system since complaints are placed into the system without complainant classification (e.g., civilian, pretrial detainee, police officer, etc.).

(*Id.* ¶ 8; *see also* Defs.' 56.1 ¶ 47; Defs.' Ex. W ¶ 11.) In plaintiff's opposition papers, he stated that he did not dispute these facts. (Opp. at 12.)

The County of Nassau also submitted an affidavit from ADA Warren Thurer, the Bureau Chief of the Nassau County Criminal Complaint Unit. According to ADA Thurer, "[s]pecifically with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations will be individually investigated and if appropriate, will be forwarded to the Public Corruption Bureau of the Nassau County District Attorney's Office." (Defs.' Ex. W ¶ 10; *see also* Defs.' Ex. Q ¶ 10 ("There is no policy, practice, or custom within the Nassau County District Attorney's Office that precludes the consideration, investigation, and/or acceptance of criminal cross-complaints brought by an accused against police officers and/or assistant district attorneys based upon the status of the complainant as a pretrial detainee").) An affidavit provided by ADA Steven L. Schwartz, Bureau Chief of the District Court Trial Bureau in the Nassau County District Attorney's Office, states that:

> All proposed accusatory instruments are given individual attention and investigation. There is no distinction made for the status of the complainant and pretrial detainees are not treated any differently than other individuals proposing accusatory instruments to be filed. Each proposed accusatory instrument is investigated for possible criminalityand, if appropriate, any case may be forwarded and assigned to one of the investigative bureaus within the District Attorney's Office, or prosecuted within the District Attorney's District Court Bureau. If the allegations in a proposed accusatory instrument are determined to be unfounded, I send a letter to the Associate Court Clerk stating that the District Attorney's Office has declined

to prosecute the matter.... Specifically, with respect to allegations of an assistant district attorney's or police officer's criminal conduct, such allegations are individually investigated and if appropriate, are forwarded to the Nassau County District Attorney's Office Public Corruption Bureau.

**\*14** (Defs.' Ex. Q ¶¶ 7-8.) Plaintiff has presented no evidence to contradict the information contained in these affidavits or to suggest otherwise.

Nor has plaintiff presented evidence of a policy or custom of committing perjury, withholding evidence, or falsely verifying criminal complaints. Plaintiff has merely asserted that "he can testify based upon personal knowledge to the undisputed facts and that he has credible witnesses and documental evidence to support said factual claims." (Opp. at 11.) Plaintiff has not alleged with specificity other instances of perjury, withheld evidence, or falsified complaints, nor has he presented any other evidence of police officers' commission of perjury, withholding of evidence, or filing of falsely sworn complaints. The County of Nassau, by contrast, has put forward evidence regarding its arrest processing procedures and arrest records. (*See* Defs.' Ex. Z.) Nowhere in the County's arrest policies is false verification of criminal complaints, withholding of evidence, or perjury authorized. Furthermore, the "collective knowledge doctrine" or "fellow officer rule" permits arresting officers to rely upon other law enforcement officers' knowledge to justify probable cause to arrest. *See Savino v. City of New York,* 331 F.3d 63, 74 (2d Cir.2003) ( [F]or the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, ... the knowledge of one is presumed shared by all.' "); *Stokes v. City of New York,* No 05-CV-0007 (JFB) (MDG), 2007 U.S. Dist. LEXIS 32787, at \*17 (E.D.N.Y. May 3, 2007) ("[U]nder the collective knowledge doctrine, defendant Buskey is permitted to rely on knowledge obtained by any other officers during the investigation"); *Phelps v. City of New York,* No. 04 CIV. 8570(DLC), 2006 U.S. Dist. LEXIS 42926, at \*9-10 (S.D.N.Y. June 29, 2006) ("The rationale behind the [collective knowledge] doctrine is that in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on

facts known only to his superiors or associates. Although the doctrine is typically used to establish probable cause for the purpose of admitting evidence at trial, it is equally applicable here. As the Supreme Court has recognized, police officers called upon to aid other officers in making an arrest are entitled to assume that the officers requesting aid have acted properly." (internal quotations and citations omitted)). Accordingly, it is not improper for an officer to verify a criminal complaint based upon facts learned from another officer and plaintiff has put forth no evidence of a policy, practice, or custom of Nassau County police officers falsifying information in criminal complaints or committing perjury.

Moreover, the County of Nassau has put forward an affidavit from a former Nassau County ADA, who investigated and prosecuted a complaint against a Nassau County Police Officer in an unrelated matter that alleged that the officer had committed perjury by falsely testifying before the grand jury. (Defs.' Ex. Y ¶¶ 2-5.) That police officer was prosecuted and convicted of perjury in the third degree. (*Id.* ¶ 8.) In the face of this undisputed evidence of the County prosecuting perjury when it is uncovered, plaintiff has not identified any specific instances of police officers' commission of perjury that were not prosecuted.

**\*15** In sum, the undisputed facts demonstrate the following: (1) plaintiff's conviction prevents him from disputing any alleged constitutional violations relating to his trial; (2) defendants did investigate plaintiff's criminal complaints regarding Officer Hughes's and Detective Comiskey's alleged behavior; (3) defendants do have in place policies and procedures whereby criminal complaints filed by private citizens are investigated-even if those citizens are pretrial detainees or criminal defendants; and (4) the County of Nassau does not have a policy or procedure of permitting its employees to commit perjury, to falsely verify criminal complaints, or to withhold exculpatory evidence at trial. In short, plaintiff has failed to provide any factual support for his conclusory allegations that the defendants have engaged in unconstitutional policies or procedures. Accordingly, defendant's motion for summary judgment is granted.

### C. Motion for Sanctions

The Court has also reviewed plaintiff's motion for sanctions and, for the reasons stated throughout this opinion, finds plaintiff's claims to be without merit. Accordingly, plaintiff's motion for sanctions is also denied. *See S.E. C. v. Shainberg, 316 F. App'x 1, 2 (2d Cir.2008).*

### V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment in its entirety. Because the Court grants defendants' motion for summary judgment in its entirety, it also denies plaintiff's motion for sanctions against defendant.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).*

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 335581

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

*DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

**\*1** Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]    Incorrectly named in the Complaint as "R.J. Helliergrass." *See generally* Complaint (Dkt. No. 1).

[2]    Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Helliergrass and was

interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d

2009 WL 2868231

680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

#### b. Analysis

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.[3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]    Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

#### i. Town of Bethlehem Police Department

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the

department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

#### ii. Defendants Kraz and Helligrass

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at \*22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases).

"[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

### B. Plaintiff's Motion for Summary Judgment

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has not received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment

is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

### C. Amended Complaint

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

[4]    Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

2009 WL 2868231

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for City of Syracuse, Catherine Ena Carnrike, Esq., Assistant Corporation Counsel, of Counsel, Syracuse, NY, for Defendants.

***MEMORANDUM–DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka, Mr. Sands, John Doe, and Syracuse Police Department ("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, construed with the utmost of special liberality, Plaintiff's Complaint asserts three claims against Defendants arising from an investigatory stop in September 2010, in Syracuse, New York: (1) a claim that three Syracuse Police Officers unreasonably searched her in violation of the Fourth Amendment; (2) a claim that they unlawfully seized, and failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim that they subjected her to excessive force in violation of the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s Compl].)

Generally, in support of these claims, Plaintiff alleges as follows: (1) on the evening of September 9, 2010, she was stopped on Butternut Street in the City of Syracuse by two officers, who questioned her regarding a call they had received; (2) when she told the two police officers that she did not know what they were talking about and "attempted to go on about [her] business," the officers became "uptight, rude, [and] abnormal in their conversations [and] behavior," and threatened her; (3) the officers then proceeded to conduct a search of "all [of Plaintiff and her] personal property," and, in the process of doing so, twisted her arm and forced her onto the front of their police vehicle; (4) a third police officer arrived, and she was assaulted by all three officers (hereinafter "Defendants"), who hit her on the back and threw her onto the police vehicle; (5) following the deprivation on September 9, 2010, Defendants denied her a post-deprivation remedy through a combination of threats, intimidation and/ or nonresponsiveness; and (6) Defendants took these actions against her intentionally because they did not personally like her, given her previous interactions with the Syracuse Police Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident, she suffered various injuries and losses, including (1) a "tremendous setback in already trying to recover in an [sic] grave overall manner of my life [and] lifestyle involving officials internally [and] externally," (2) head and back pain, and mental suffering, (3) loss of personal property, and, (4) loss of employment. (*Id.*) As relief, Plaintiff requests an award of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting Plaintiff's three claims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*See generally* Dkt. No. 1.)

### B. Defendants' Motion

**\*2** On May 6, 2011, Defendants filed a motion to dismiss. (Dkt. No. 13, Attach 2.) Generally, in support of their motion, Defendants assert the following two arguments: (1) because the Complaint was not served within the time allowed by Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice for this Court, the Court lacks jurisdiction over Defendants in accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and

affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

[1] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and

2012 WL 4052286

citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]    See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]    See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5**  Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties),

(3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of

Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 44 of 123
2012 WL 4052286

a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior*." [4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy." [5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." [6]

[4] *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at \*5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior.*").

[5] *Powell,* 2005 WL 3244193, at \*5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under §

1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6] *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at \*12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." [7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). [8]

[7] *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8] *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*' s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d

Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

[9] *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10] *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her

Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8**    After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth

Amendments; and (3) a claim of excessive force under the Fourth Amendment.

### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13] Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14] Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been

identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]    In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

*10    For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized,

he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina,* *525 U.S. at 241.* Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

**6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive**

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became

necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]    More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]    More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that

granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case.[18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times.[19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint.[20] Plaintiff did not comply with the Court's order

to amend her complaint at all on four occasions.[21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile.[22]

18    *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

19    *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

20    *Id.*

21    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

22    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's*

*Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti– Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

23    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan.17, 2006); *Jenkins v. City*

*of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute.[24]

[24]   *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins*

*v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times.[25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department.[26]

[25]   *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]   *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket

so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is ***GRANTED* in part** and ***DENIED* in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally ***DISMISSED;*** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) (3), *that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Buck v. Rigdon,  S.D.Ill.,  June 17, 2024

2023 WL 5018490
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Quintin L. WILSON, Plaintiff,
v.
Sgt. Daniel FLANDERS, et al., Defendants.

3:23-cv-00263-DNH-TWD
|
Signed July 6, 2023

**Attorneys and Law Firms**

QUINTIN L. WILSON, Plaintiff, pro se, 225323, Broome County Correctional Facility, P.O. Box 2047, Binghamton, NY 13902-2047.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1** On February 28, 2023, Quinton L. Wilson ("Plaintiff") commenced this *pro se* action against Sgt. Daniel Flanders, Judge Dooley, Judge Joseph F. Cawley, Jr., Alexander Czebiniak, and Attorney Christopher D. Grace (collectively "Defendants") by filing a form-complaint pursuant 42 U.S.C. § 1983 along with an application to proceed *in forma pauperis* ("IFP"). (Dkt. Nos. 1, 4.) The complaint tenuously alleged Judge Dooley, Judge Cawley, Czebiniak, and Grace violated his due process, speedy trial, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment rights. (Dkt. No. 1 at 1-2; Dkt. No. 1-5 at 2-3.) Plaintiff also loosely alleged a Fourth Amendment excessive force claim against Sgt. Flanders. (Dkt. No. 1 at 1; Dkt. No. 1-5 at 2.)

By Order and Report-Recommendation issued May 4, 2023, (the "R&R"), the undersigned granted Plaintiff's IFP application for purposes of initial review, [1] reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B), and recommended Plaintiff's claims against Judge Dooley, Judge Cawley, and Czebiniak be dismissed with prejudice and without leave to amend and the remaining

claims against Sgt. Flanders and Grace be dismissed with leave to amend. (Dkt. No. 10.) On May 17, 2023, the Hon. David N. Hurd, United States District Court Judge, adopted the R&R in its entirety. (Dkt. No. 12.)

[1]     Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1). Additionally, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

On June 1, 2023, Plaintiff filed an amended complaint reasserting claims against Sgt. Flanders and Grace. (Dkt. No. 13.) For the reasons discussed below, the undersigned recommends the Court dismiss Plaintiff's Fourth Amendment claims brought pursuant to 42 U.S.C. § 1983 for unreasonable search and seizure, excessive force, false arrest, and false imprisonment against Sgt. Flanders with leave to amend. (*See* Dkt. No. 13.) The undersigned further recommends that the Court dismiss Plaintiff's claims against Grace without leave to amend. *See id.*

### II. SUFFICIENCY OF THE AMENDED COMPLAINT

#### A. Legal Standard

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Thus, it is the Court's responsibility to determine whether Plaintiff may properly maintain a complaint before permitting it to proceed further.

#### B. Summary of the Amended Complaint

**\*2** Plaintiff lists the following claims against Sgt. Flanders: "4th Amendment unreasonable searches and seizures," "Use of Excessive Force," and "Illegal Detainment." [2] (Dkt. No.

13 at 2.) He alleges on June 1, 2021, Sgt. Flanders and another officer arrived at Plaintiff's house in Binghamton, NY. *Id.* at 2. Plaintiff asked if they had a warrant to which they responded "no." *Id.* Plaintiff asked them to leave and get a warrant. *Id.* When he stood up to go into his house, Sgt. Flanders and his partner at the time "assaulted" Plaintiff. *Id.* Plaintiff claims this use of force "caused ankle to swell, and bruised wrist." *Id.* Further, when Plaintiff arrived at the police station, he "asked to see Probable Cause." *Id.* He was told "we don't have it the District Attorney has it." *Id.* He was released 90 days later on a N.Y. Crim. Proc. Law § 190.80 motion. *See* N.Y. Crim. Proc. Law § 190.80 (McKinney). [3] *Id.*

[2]    Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[3]    N.Y. Crim. Proc. Law § 190.80 provides "Upon application of a defendant who on the basis of a felony complaint has been held by a local criminal court for the action of a grand jury, and who, at the time of such order or subsequent thereto, has been committed to the custody of the sheriff pending such grand jury action, and who has been confined in such custody for a period of more than forty-five days, ... without the occurrence of any grand jury action or disposition pursuant to subdivision one, two or three of section 190.60, the superior court by which such grand jury was or is to be impaneled must release him on his own recognizance."

Plaintiff lists the following claims against Christopher D. Grace: "Ineffectiveness of Counsel," "Right to Due Process," "Speedy Trial," and "Bail – Punishment." *Id.* Plaintiff alleges since November 22, 2021, Grace has not represented Plaintiff "to the best of his ability." *Id.* Plaintiff has asked Grace to "File motions on [his] behalf VIA Letters, Text messages, and phone calls but all he would tell [Plaintiff] is that these things don't pertain to [Plaintiff]." *Id.* at 2-3. Plaintiff claims he tried to fire Grace but Judge Cawley "let him stay." *Id.* at 3. Plaintiff alleges he asked Grace to get him lower bail "but once again he refused." *Id.* Plaintiff asserts his speedy trial rights were violated while he awaited trial in Broome County Jail for over a year. *Id.* He brought up this concern to Grace but Plaintiff "was ignored." *Id.* Plaintiff's trial took place in March 2023. *Id.*

Previously, Grace had told Plaintiff about a plea deal he was offered, but Plaintiff "declined." *Id.* However, according to

Plaintiff, the plea deal "read for the record" was not the same plea deal Grace had conveyed to Plaintiff. *Id.* Plaintiff "was scared" the District Attorney "was still gonna try to give [him] the deal that was put on the record." *Id.* However, he "was never offered another plea and was Forced to trial." *Id.*

At Plaintiff's trial, "There was New Evidence that was told by a witness to the District Attorney who told Judge Cawley and Mr. Grace but he told [Plaintiff] and Failed to put it on the record and this peice of information could've made the Jury's decisions different From what it was." *Id.* Plaintiff also asked Mr. Grace to "ask certain questions" but Mr. Grace refused because "that would be badgering the victim." *Id.* Plaintiff claims "these are things that could've helped clear [his] name." *Id.* Plaintiff does not request any specific relief in his amended complaint. [4] (*See* Dkt. No. 13.)

[4]    In his original complaint, Plaintiff requested $1,000,000 in monetary damages. (Dkt. No. 1 at 2; Dkt. No. 1-1 at 1.)

**C. Analysis**

Plaintiff brings this action pursuant to § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States.' " *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

**\*3** To state a cognizable claim under § 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

**1. Claims Against Attorney Christopher D. Grace**

As previously discussed on review of the original complaint, "private individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5,

7 (2d Cir. 2013). Private conduct is simply beyond the reach of Section 1983 "no matter how discriminatory or wrongful that conduct may be." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (internal quotations and citations omitted). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same). Moreover, attorneys, whether court appointed or privately retained, are generally not state actors for purposes of Section 1983. *See, e.g.*, *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."); *see also* Dkt. No. 10 at 8-10.

Here, the amended complaint has not cured the deficiencies identified in the R&R. As such, Plaintiff's Section 1983 claims against Grace are inadequately pled because he has failed to allege Grace acted under color of state law.[5] *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. The undersigned accordingly recommends dismissing all of Plaintiff's Section 1983 claims against Grace without leave to amend on the grounds that they are inadequately pled and frivolous. *See* 28 U.S.C. § 1915(e)(2)(B), 1915A(b)(1); *see also Livingston*, 141 F.3d at 437; *Walker v. Rivera*, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022), *report and recommendation adopted*, No. 1:22-CV-560, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

[5]   Grace is a private individual who represented Plaintiff during state criminal proceedings.

## 2. Claims Against Sgt. Flanders

### i. Fourth Amendment Excessive Force

"The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police

officers in arresting suspects .... To establish a Fourth Amendment excessive force claim, Plaintiff must show that the force used by the officer was 'objectively unreasonable.' " *Correa v. McLeod*, No. 3:17CV1059 (VLB), 2017 WL 2962884, at *3 (D. Conn. July 11, 2017) (citations omitted). Determining whether the force is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). A court shall consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the [arrestee] poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* However, " '[n]ot every push or shove' amounts to a Fourth Amendment violation. Indeed, a '*de minimis* use of force will rarely suffice to state a Constitutional claim.' " *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 2005)).

**\*4** Moreover, a plaintiff must allege that he sustained an injury from the alleged excessive force. *Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011). "However, an individual does not need to sustain a severe injury to maintain a claim." *Id.* (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.")).

In the amended complaint, Plaintiff alleges only that Sgt. Flanders "assaulted" him resulting in a swollen ankle and bruised wrist. (Dkt. No. 13 at 2.) Rule 8 of the Federal Rules of Civil Procedure requires a " 'short and plain statement' " of a claim, showing that " 'the pleader is entitled to relief.' " *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be " 'simple, concise, and direct,' and must give 'fair notice of the claims asserted.' " *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* As it currently stands, Plaintiff's amended complaint does not describe the alleged use of excessive force with any sufficient detail beyond being "assaulted" by Sgt. Flanders. (*See* Dkt. No. 13 at 2.) Thus, the undersigned recommends dismissal for failure to state a claim. However, mindful of

the Second Circuit's direction to provide special solicitude to *pro se* plaintiffs, the Court recommends affording Plaintiff a final opportunity to amend this claim. *See Pearson v. Reid-Robinson*, 632 F. App'x 19, 19 (2d Cir. 2016). Should Plaintiff be permitted leave to amend, he must describe the alleged excessive force in greater detail.

### ii. Remaining Claims

Plaintiff's complaint loosely alleges Fourth Amendment claims for unreasonable search and seizure, false arrest, and false imprisonment against Sgt. Flanders. At this juncture, however, the Court is unable to determine whether these claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *Heck* provides when a claim under Section 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. 512 U.S. at 487. Although it is clear that Plaintiff is confined to Broome County Jail, he does not specify whether his current confinement is directly related to the underlying claim, nor the status of any relevant criminal proceeding. (Dkt. No. 13 at 3.) If any criminal action relative to Plaintiff's allegations has since terminated, in order to recover damages for the purported unreasonable search and seizure, false arrest, and false imprisonment claims, he must set forth that any convictions have been resolved in his favor. [6] Because Plaintiff has not alleged sufficient facts in this regard, the Court cannot determine whether these claims may survive initial review. Thus, these claims should be dismissed without prejudice, allowing Plaintiff the opportunity to plead the status of any related underlying criminal proceeding.

[6]    To state false arrest and false imprisonment claims under New York law, a plaintiff must allege that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (citations and quotations omitted).

**\*5** To the extent Plaintiff should amend his complaint to show that his claims are not barred by *Heck*, it remains incumbent on him to allege more detailed facts plausibly suggesting he was subject to unreasonable search and seizure, false arrest, and false imprisonment in violation of his constitutional rights. [7] *See* Fed. R. Civ. P. 8; *Whitfield*, 763 F. App'x at 107. Here, Plaintiff does not describe with any sufficient detail the circumstances leading to his purported arrest, the charges ultimately brought against him as a result of any arrest, or the status of his criminal proceedings. (*See* Dkt. No. 13.) Therefore, as it currently stands, Plaintiff's complaint fails to provide fair notice of the claims he attempts to assert and is replete with conclusory statements and "naked assertions devoid of further factual enhancement" with respect to his claims. *Iqbal*, 556 U.S. at 678 (internal citations and alterations omitted).

[7]    The Second Circuit has held that "*Heck* bars a § 1983 claim based on an extant conviction, but it has no apparent application to an anticipated future conviction." *Stegemann v. Rensselaer Cty. Sheriff's Off.*, 648 F. App'x 73, 76 (2d Cir. 2016) (finding that since plaintiff's criminal trial was still ongoing, civil relief was not categorically barred by the favorable termination rule of *Heck*). Thus, if Plaintiff's criminal action in this case is still pending, *Heck* would be inapplicable.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that all of Plaintiff's claims against Attorney Christopher D. Grace be **DISMISSED WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED** that Plaintiff's excessive force, unreasonable search and seizure, false arrest, and false imprisonment claims against Sgt. Flanders be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

8     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation

was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2023 WL 5018490

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Correa v. McLeod, Not Reported in Fed. Supp. (2017)**

2017 WL 2962884

2017 WL 2962884
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Jose CORREA, Plaintiff,
v.
MCLEOD, et al., Defendants.

No. 3:17cv1059 (VLB)
|
Signed 07/11/2017

INITIAL REVIEW ORDER

VANESSA L. BRYANT, UNITED STATES DISTRICT
JUDGE

 **\*1**  On June 29, 2017, the Plaintiff, Jose Correa, an inmate
currently confined at MacDougall-Walker Correctional
Institution in Suffield, Connecticut, filed a complaint pursuant
to 42 U.S.C. § 1983 against Correction Officer McLeod,
Lieutenant Lindsey, Correction Officer Ortyl, Correction
Officer Heinberg, Correction Officer Weir, Correction Officer
Daigle, Correction Officer Pinar, Correction Officer Beaulier,
Correction Officer Cassidy, Correction Officer Boudreau,
Correction Officer Carasquillo, Administrator Cournoyer, [1]
Deputy Warden Mulligan, Lieutenant Perylo, and Dr. Wright.
The Plaintiff is suing each defendant in his or her individual
and official capacities for violations of his Fourth, Fifth,
Eighth, and Fourteenth Amendment rights. He is seeking
declaratory, injunctive, and monetary relief. For the reasons
that follow, his complaint will be dismissed in part.

[1]    The ECF docketing system lists this defendant
as "Courneyer." Upon information and belief, the
correct spelling of this defendant's last name is
"Cournoyer."

I. Factual Allegations
On February 27, 2016, at approximately 4:00 p.m., the
Plaintiff was in the 3-East day room at Northern for
recreation, when correctional officers searched through his
cell and "wreck[ed]" his legal papers. Frustrated, the plaintiff
threw a plastic container at Correction Officer McLeod,
hitting him on the left side of his face. The Plaintiff
immediately lied face-down on the ground in submission.
Nevertheless, Correction Officer John Doe proceeded to

punch and kick the Plaintiff in the ribs. The Plaintiff
was then placed in restraints, and multiple John Doe officers
continuously beat the plaintiff and "bang[ed]" his head
against the concrete floor. Lieutenants Lindsey and Guimond
then sprayed a chemical agent in the Plaintiff's face.
Afterward, the Plaintiff was denied a shower to wash off the
chemical agent, and was also denied medical care and food.
Officers also continued to harass him.

At 4:45 p.m., Officer Boudreau "called in a false code,"
claiming that the Plaintiff was attempting to damage his
restraints, which prompted Lieutenant Perylo to deploy
another chemical agent on the Plaintiff and call him names.
Once again, the Plaintiff was denied a shower to wash off the
agent and was continuously harassed.

The Plaintiff wrote multiple inmate request forms and
grievances seeking medical attention, but no one responded.
The Plaintiff later learned that the correctional officers at
Northern were reading his legal mail and telling other inmates
his charges, which the Plaintiff believed put him in danger.

II. Standard of Law
Pursuant to 28 U.S.C. § 1915A, this Court must review
prisoner civil complaints and dismiss any portion of the
complaint that is frivolous or malicious, that fails to state
a claim upon which relief may be granted, or that seeks
monetary relief from a defendant who is immune from
such relief. Although detailed allegations are not required,
the complaint must include sufficient facts to afford the
defendants fair notice of the claims and the grounds upon
which they are based and to demonstrate a right to relief.
*Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).
Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009). The plaintiff must plead "enough
facts to state a claim to relief that is plausible on its face." *Bell
Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established
that "[p]ro se complaints 'must be construed liberally and
interpreted to raise the strongest arguments that they suggest.'
" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)
(quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,
474 (2d Cir. 2006)).

III. Analysis
 **\*2**  The Plaintiff claims that the officers and staff at Northern
violated his Fourth Amendment rights by unlawfully
searching his cell, reading his mail, and using excessive force
against him, violated his Eighth Amendment right against

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

cruel and unusual punishment by acting with deliberate indifference to his safety and medical needs and failing to protect him from harm, violated his Fifth Amendment rights, and unlawfully discriminating against him on the basis of his race.

A. Personal Involvement

"It is well settled ... that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of four ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; or (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). In addition, the plaintiff must allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

The only Defendants mentioned in the Plaintiff's statement of facts are Lieutenant Perylo, Lieutenant Guimond, Lieutenant Lindsey, Correction Officer McLeod, Correction Officer Boudreau, and several unnamed correction officers identified only as John Does. Thus, aside from these individuals, all claims against Defendants listed in this action are DISMISSED for lack of personal involvement.

Moreover, the Plaintiff does not explain how Officer McLeod was involved in the attack or denial of care thereafter. He only alleges that McLeod was hit in the face by the plastic container thrown by the Plaintiff. Therefore, the claims against Officer McLeod are also DISMISSED.

B. Claims Against Defendants in their Official Capacities

To the extent that the Plaintiff seeks money damages from the Defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

All such claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

C. Fourth Amendment Claims

The Plaintiff claims that the Defendants violated his Fourth Amendment rights in three ways: (1) searching his cell; (2) reading his mail; and (3) using excessive force against him. A prisoner has no reasonable expectation of privacy in his prison cell. *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *Smith v. Woods*, 219 Fed.Appx. 110, 111 (2d Cir. 2007). The interception of a prisoner's mail does not violate the Fourth Amendment where the officer(s) had "good" or "reasonable" cause to inspect it. *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998). Moreover, the Plaintiff has not specified which, if any, of the Defendants were involved in the interception of his mail. Therefore, his first two Fourth Amendment claims are DISMISSED for failure to state a claim.

**\*3** The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects. *Hemphill v. Schott*, 141 F.3d 412, 416-17 (2d Cir. 1998). To establish a Fourth Amendment excessive force claim, the Plaintiff must show that the force used by the officer was "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene (*id.* at 396) and "requires consideration of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill*, 141 F.3d at 417.

With respect to his third Fourth Amendment claim, the Plaintiff alleges that Lieutenant Lindsey, Lieutenant Guimond, Lieutenant Perylo, Officer Boudreau, and several John Doe corrections officers used excessive force on him after he threw a plastic container at Officer McLeod by physically assaulting him and spraying him with chemical agents despite his submission to their authority. Based on these allegations, the Plaintiff has stated a plausible excessive force claim against those Defendants. Thus, the Court will permit his Fourth Amendment claim to proceed against Lindsey, Guimond, Perylo, Boudreau, and the John Doe officers.

D. Fifth Amendment Claims

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 61 of 123

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

The Plaintiff claims that the defendants violated his Fifth Amendment rights but does not explain which specific right was violated or how, if at all, the Defendants violated that right. Therefore, his Fifth Amendment claim is DISMISSED for failure to state a claim.

E. Eighth Amendment Claims

The Plaintiff claims that the Defendants violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his safety and medical needs and failing to protect him from harm.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson*, 468 U.S. at 526-27. To state a claim for deliberate indifference to safety or failure to protect from harm, the plaintiff must show that the alleged conduct is sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999). The defendants must have been aware that the plaintiff faced an excessive risk to his health and safety and ignored that risk. *See Farmer*, 511 U.S. at 837. To determine whether the plaintiff faced an excessive risk of serious harm, the courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

"An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *West v. Atkins*, 487 U.S. 42, 54 (1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[T]he State has a constitutional obligation, under the Eighth Amendment, to those whom it has incarcerated." *West*, 487 U.S. at 54. To state a claim for deliberate indifference to a serious medical need, an inmate must show both that his medical need was serious and that the defendants acted or failed to provide adequate medical care with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation

marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280-81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983 (*see id.* at 280) nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 Fed.Appx. 1, 2-3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

**\*4** The Plaintiff's allegations that he was assaulted and sprayed with a chemical agent while he was submissive and not resisting the Defendant's authority state plausible Eighth Amendment claims against the remaining Defendants for deliberate indifference to his safety. Thus, his Eighth Amendment claims will proceed against defendants Lindsey, Guimond, Perylo, Boudreau, and the John Doe corrections officers.

The Plaintiff has not alleged which prison officials denied his repeated requests for showers to wash off the chemical agents, medical care and food. Thus, he has failed to state a claim for deliberate indifference based on the denial of those requests. Plaintiff's deliberate indifference to medical needs claim is DISMISSED for failure to allege sufficient personal involvement.

F. Fourteenth Amendment Claims

The Plaintiff claims the Defendants violated his Fourteenth Amendment rights but does not explain which specific right was violated or how, if at all, the Defendants violated that right. He that the Defendants discriminated against him on the basis of his race but does not support that claim with any facts. Therefore, the Plaintiff's Fourteenth Amendment claim is DISMISSED for failure to state a claim.

G. Request for Declaratory Relief

Declaratory relief is a vehicle for resolving the relative legal rights of parties to an actual controversy. "The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, 28 U.S.C.A. § 2201, styled 'creation of a remedy,' provides that in a case of actual controversy a competent court may declare the rights and other legal relations of a party whether or not further relief is, or could be, sought. This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Service Comm'n*

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 62 of 123

Correa v. McLeod, Not Reported in Fed. Supp. (2017)

2017 WL 2962884

*of Utah v. Wycoff Co.*, 344 U.S. 237, 239 (1952) (internal quotations omitted). It serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public Accountants*, 10 Civ. 2291, 2011 WL 4532132, at *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1988).

The plaintiff's legal rights, outlined above, are clear and well established. The questions presented here are not whether the plaintiff has certain rights, but rather whether those rights have been denied. Thus the plaintiff asks the court to apply the facts of this case to the law and not to determine the legal rights of the parties, and declaratory judgment is inappropriate.

Relatedly, Plaintiff's request for declaratory relief concerns only past actions. He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (holding that Eleventh Amendment bars declaration that State of Connecticut violated federal law in the past); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

Finally, declaratory judgment is a special proceeding which is available where other remedies do not exist. "A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case. *Public Service Comm'n of Utah*, 344 U.S. at 243 (discussing commentary to Fed. R. Civ. P. 57). In this case, 42 U.S.C. 1983 affords a remedy and thus a declaratory judgment is not authorized by statute. For the foregoing reasons, the request for declaratory relief is DISMISSED.

ORDERS

**\*5** (1) All claims against Defendants McLeod, Ortyl, Heinberg, Weir, Daigle, Pinar, Carrasquillo, Beaulier, Cassidy, Cournoyer, Mulligan, Perylo, and Wright are DISMISSED. All claims against Defendants in their official capacities for monetary damages are DISMISSED.

(2) Because the Plaintiff has not identified the John Doe correction officers by their true names, the Clerk is not able to serve a copy of the complaint on those Defendants in their individual capacities. The Plaintiff must, within ninety (90) days of the date of this order, conduct discovery and file a notice indicating the first and last name of those Defendants. If the Plaintiff files the notice, the Court will direct the Clerk to effect service of the complaint on those Defendants in their individual capacities. If the Plaintiff fails to identify those Defendants within the time specified, the claims against them will be dismissed pursuant to Fed. R. Civ. P. 4(m).

(3) The Plaintiff's Fourth Amendment excessive force claim may proceed against defendants Lindsey, Guimond, Perylo, Boudreau, and any John Doe officers properly and timely identified.

(4) The Plaintiff's Fifth Amendment claim is DIMISSED.

(5) The Plaintiff's Eighth Amendment claim for deliberate indifference to safety and/or failure to protect will proceed against Defendants Lindsey, Guimond, Perylo, Boudreau, and those John Doe officers properly and timely identified.

(6) The Plaintiff's Fourteenth Amendment claim is DISMISSED.

(7) The Plaintiff's request for declaratory relief is DISMISSED.

(8) Within twenty-one (21) days of this Order, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on Defendants Lindsey, Guimond, Perylo, Boudreau, and the John Doe officers in their official capacities by delivering one copy of the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(9) The Clerk shall verify the current work addresses for Defendants Lindsey, Guimond, Perylo, and Boudreau with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each Defendant at the confirmed address within twenty-one (21) days of this Order, and report to the Court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the

**Correa v. McLeod, Not Reported in Fed. Supp. (2017)**

2017 WL 2962884

Defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(10) The Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(11) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(12) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

 **\*6** SO ORDERED this 11th day of July, 2017 at Hartford, Connecticut.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2962884

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1506954

2012 WL 1506954
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Anthony ACOSTA, Plaintiff,

v.

CITY OF NEW YORK, Inspector Michael Harrington, in
his individual and professional capacity, Police Officers
Michael Mazzilli and Police Officers "John Does" in
their individual and professional capacities, Defendants.

No. 11 Civ. 856(KBF).
|
April 26, 2012.

MEMORANDUM & ORDER

KATHERINE B. FORREST, District Judge.

*1 Plaintiff Anthony Acosta, a self-described Hispanic male and former police officer with the New York City Police Department ("NYPD"), brings this action against defendants the City of New York (the "City"), Inspector Michael Harrington (in his individual and professional capacities), Police Officer Michael Mazzilli (in his individual and professional capacities), and an unspecified number of John Doe police officers. [1] Plaintiff alleges that as part of, and subsequent to, a 2008 altercation that occurred while plaintiff was off-duty, defendants engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law ("NYSHRL"), New York State Exec. Law § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Admin. Code § 8–107 et seq., the use of excessive force in violation of 42 U.S.C. § 1983, and were acting under color of state law pursuant to unlawful policies in violation of Monell v. Department of Social Services, 438 U.S. 658 (1978).

[1] Plaintiff lists certain "John Doe" police officer defendants in the caption of the Amended Complaint-and makes certain allegations against them. (See, e.g., Am. Compl. ¶ 14.) However, plaintiff has not identified those officers and there is no indication that plaintiff has attempted to ascertain their identities from the City. No service

has been effectuated on those John Does and thus, they are not properly before this Court. Accordingly, the Court only construes plaintiff s claims against those defendants who were properly served.

The City of New York along with defendants Harrington and Mazzilli have moved to dismiss plaintiff s Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is granted.

FACTUAL BACKGROUND [2]

[2] For purposes of deciding the instant motions, the Court accepts as true all well-pleaded allegations in plaintiff's Amended Complaint and draws all reasonable inferences in plaintiff's favor. See Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir.2001).

In connection with plaintiff's opposition to the motion, plaintiff submitted various documents not referenced in, or integral to, the Amended Complaint. (See Decl. of Rocco G. Avallone in Opp'n to Mot. to Dismiss (Dkt. No. 22) Exs. B–G.) Consideration of such documents is inappropriate on a motion to dismiss, see DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.2010), and the Court has not done so in connection with deciding the instant motion.

On December 17, 2008 at approximately 11:05 p.m., plaintiff, at that time a uniformed member of the NYPD with the rank of Sergeant, was exiting a restaurant and bar near 1490 First Avenue in New York City, while off duty. (Am. Compl.

(Dkt. No. 18) ¶¶ 15, 16, 18.) After plaintiff entered his own car, through his car window he witnessed a separate vehicle strike an individual. (Id. ¶ 18.) Plaintiff exited his car to investigate and, in the process of trying to protect an allegedly "dark skinned and possible [sic ] Hispanic" cab driver from "being attacked by several [intoxicated] off duty police officers from the 19th Precinct," was struck by a 2 x 4 piece of wood by a John Doe police officer. (Id.) Plaintiff then identified himself (presumably to the John Doe police officer) as a police officer. (Id. ¶ 18.)

Plaintiff alleges that Captain Pla from the 19th Precinct,[3] one of the NYPD officers at the scene of the incident, failed to take any action to protect either (a) plaintiff, who was attempting to take the 2 x 4 away from one of the John Doe off-duty police officers, or (b) the "dark skinned cab driver." (Am.Compl.¶ 19.) Plaintiff finally wrestled the 2 x 4 into his possession, after which an NYPD vehicle arrived at the scene. (*Id.* ¶ 21.) At that time, plaintiff purportedly identified himself as a police officer, and attempted to inform the "plain clothes" police officers about the car accident and altercation between the cab driver and the off-duty police officers. (*Id.*)

3    At all times relevant to the complaint, plaintiff was with the 30th Precinct. (Am.Compl.¶ 10.)

Plaintiff then purportedly approached Officer Mazzilli, identified himself as a police officer, and informed him of the altercation between the off-duty police officers and the cab driver-and pointed out the off-duty officers. (Am Compl. ¶ 23.) In response, defendant Mazzilli allegedly yelled at plaintiff to remove his hands from his pockets, grabbed plaintiff's wrist, pushed plaintiff s hands into his pockets, but then maneuvered plaintiff's elbow to try to remove plaintiff's hands from his pockets. (*Id.* ¶¶ 24–25.) At that time, plaintiff again informed defendant Mazzilli that he was an on-duty police officer,[4] to which Mazzilli responded that he did not care, punched plaintiff in the chest, threw plaintiff to the ground, and handcuffed plaintiff's left wrist. (*Id.* ¶¶ 25–26.)

4    Plaintiff alleges that he told defendant Mazzilli, "I'm a Sergeant. I'm on the job." (Am.Compl.¶ 25) despite the fact that plaintiff alleges earlier in the Amended Complaint that he was off-duty at the time of the alleged altercation (*id.* ¶ 18).

**\*2** Defendant Mazzilli then attempted to handcuff plaintiff's right arm behind his back but could not due to limited mobility resulting from a prior surgery. (Am.Compl.¶¶ 26–27.) Plaintiff allegedly pleaded with Mazzilli to stop, explained the problem with his right arm, and requested that two sets of handcuffs be used; Mazzilli obliged. (*Id.* ¶ 27.) A "plain clothes" John Doe police officer subsequently inquired if plaintiff was armed, and, upon learning he was not, removed both sets of handcuffs and placed plaintiff in an SUV. (*Id.* ¶ 29.) Thereafter, plaintiff was transported to the 19th Precinct for interrogation. (*Id.* ¶ 30 .)

Plaintiff alleges that defendant Inspector Michael Harrington approached him prior to his interrogation, informed him that

he was not a subject of the investigation of the assault against the cab driver, but that he should lie during questioning regarding both what had occurred between the John Doe officers and the cab driver and what had occurred between plaintiff and Officer Mazzilli. Harrington then allegedly provided plaintiff with the version of the story he should tell to protect the off-duty police officers. (Am.Compl.¶¶ 31, 34– 35.) According to plaintiff, Harrington provided his directives in front of two Sergeants–Mulvey and Cosmo-who allegedly were delegates from the Sergeants Benevolent Association. (*Id.* ¶¶ 32, 34.) Plaintiff informed Sergeants Mulvey and Cosmo of what had occurred, after which Mulvey informed plaintiff that it was inadvisable to go to the hospital for his purported injuries because the investigators "were looking to suspend Plaintiff" and a hospital visit would make plaintiff look "uncooperative and guarantee a suspension." (*Id.* ¶¶ 32, 33.) Based on that information, plaintiff allegedly did not seek medical attention subsequent to his interrogation. (*Id.* ¶ 33.)

Plaintiff, however, purportedly informed defendant Harrington that he would refuse to provide the story that Harrington had requested he give. (Am.Compl.¶ 31.) It is alleged, however, that "defendants" never interviewed the John Doe police officers who had seen the altercation between Mazzilli and plaintiff. (*Id.* ¶ 44.) Mulvey then spoke to Harrington and informed plaintiff that plaintiff was going to be placed on "Modified status;" he was placed on such status shortly thereafter. (*Id.* ¶ 36.) The Amended Complaint does not contain an explanation of the meaning of being placed on modified status.

Plaintiff alleges that he was also "issued Charges and Specifications" on August 18, 2009, and October 29, 2009, for failing to lie during his interrogation "to protect the white police officers" who were involved in the December 17, 2008 altercation with the cab driver. (*Id.* ¶ 38.) Plaintiff does not explain what charges or specifications were issued against him, or what it means to have charges and specifications issued. Then, on January 8, 2010, plaintiff alleges that he was placed in "Level II discipline monitoring" for approximately nine months. (*Id.* ¶ 39.) Again, plaintiff fails to explain what Level II discipline monitoring is or what precisely that meant in the context of plaintiff's job as an NYPD Sergeant.

**\*3** Plaintiff retired on October 2011—over two years later than he allegedly planned to retire. (Am.Compl.¶¶ 40, 41.) Plaintiff allegedly could not retire in March 2009 when planned because he purportedly could not obtain a "Good Guy" letter based on his placement on Level II status. (*Id.*

¶ 41.) Plaintiff also alleges that he had to forfeit a private security job, with a purported $140,000 annual salary, that he "had lined up" without the "Good guy" letter. (*Id.*) Plaintiff also alleges damages associated with failing to obtain overtime or special assignments based upon his modified and Level II statuses. (*Id.* ¶ 43.) It is further alleged that "defendants" continued their retaliation in unspecified ways through October 2011 because plaintiff would not accept a penalty for the charges. (*Id.* ¶ 45.)

PROCEDURAL HISTORY

Plaintiff commenced this action on November 23, 2011. (Dkt. No. 1.) On January 3, 2012, defendants requested a pre-motion conference related to an anticipated motion to dismiss plaintiff's original complaint, in response to which the Court set a briefing schedule. (Dkt. No. 10.) Defendants moved to dismiss the original complaint on January 18, 2012. (Dkt. No. 12.)

The Court held the initial pretrial conference in this matter on January 27, 2012. (*See* Dkt. No. 14.) At that conference, the Court informed plaintiff's counsel that plaintiff could withdraw his original complaint and file an amended complaint, taking into consideration defendants' motion to dismiss, or proceed on its original complaint and, if such complaint was found defective, any dismissal would be with prejudice. (*See id.*) In addition, the Court notified plaintiff's counsel at the conference that, given that plaintiff had been given notice of the defects in the original complaint from defendants' motion to dismiss the original complaint, plaintiff would be given a single chance to amend the complaint. In other words, the Court stated that if defects remained in any amended complaint, any dismissal would be with prejudice —*i.e.,* without leave to amend.

Plaintiff elected to amend his complaint (Dkt. No. 15), and filed the Amended Complaint on February 10, 2012 (*see* Dkt. No. 18). Plaintiff asserts claims under [42 U.S.C. § 1983](#) against the City and defendants Harrington and Mazzilli for racial discrimination, hostile work environment, and excessive force (Count One),[5] for violations of Title VII against the City (Count Two), New York State Human Rights Law, [N.Y. Exec. Law § 296, *et seq.*](#) against all defendants (Count Three), New York City Human Rights Law, N.Y. City Admin. Code § 8–107 *et seq.* against all defendants (Count Four), [42 U.S.C. § 1983](#) for violations of constitutional rights under *Monell v. Department of Social Services,* 438 U.S. 658

(1978), against the City (Count Five), and [42 U.S.C. § 1981](#) for discrimination and retaliation (Count Six).

5    Plaintiff's claims are asserted in conclusory fashion, bur defendants-and the Court-construed them as broadly as possible on this motion to ensure that all potential claims were encapsulated by this decision.

Defendants filed the instant motion to dismiss on March 1, 2012, plaintiff opposed the motion on March 21, 2012, and the motion was fully briefed as of March 28, 2012. (Dkt.Nos.19, 21, 23.)

DISCUSSION

I. LEGAL STANDARD

**\*4** To survive a [Rule 12(b)(6)](#) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *[ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,](#)* [493 F.3d 87, 98 (2d Cir.2007)](#) (quoting *[Bell Atl. Corp. v. Twombly,](#)* [550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)](#)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *[Starr v. Sony BMG Music Entm't,](#)* [592 F.3d 314, 321 (2d Cir.2010)](#) (quoting *[Twombly,](#)* [550 U.S. at 570](#)). *See also [Ashcroft v. Iqbal,](#)* [556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)](#) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *[Iqbal,](#)* [129 S.Ct. at 1949](#). In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id.* If the court can infer no more than "the mere possibility of misconduct" from the factual averments-in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. *[Twombly,](#)* [550 U.S. at 570](#); *[Starr,](#)* [592 F.3d at 321](#) (quoting *[Iqbal,](#)* [129 S.Ct. at 1950](#).)

As an initial matter, plaintiff's claims fail because they do not meet the standard promulgated by *Twombly* and *Iqbal.* In particular, plaintiff's Amended Complaint is, as Judge McMahon recently put it, "a recitation of a false syllogism: (1) I am (insert name of a protected class); (2) something bad

2012 WL 1506954

happened to me at work; (3) therefore, it happened because I am (insert name of protected class)," *Bermudez v. The City of* New York, 783 F.Supp.2d 560, 581 (S.D.N.Y.2011). But the *sine qua non* of a race-based discrimination or retaliation claim is that discrimination or retaliation was *because of race.* As discussed further below, plaintiff fails to connect the dots between the alleged adverse actions and his membership in a protected class. The Court will address each of plaintiff's claims, including his excessive force and *Monell* claims, *seriatim.*

## II. EMPLOYMENT DISCRIMINATION

A. CLAIMS UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1983, and NYSHL

Claims of employment discrimination brought pursuant to Title VII are analyzed under the familiar burden-shifting analysis set forth in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The same applies to claims of employment discrimination pursuant to 42 U.S.C. § 1983 and the NYSHL. *See Spiegel v. Schulmann,* 604 F.3d 72, 80 (2d Cir.2010) (N.Y.SHRL); *Boykin v. KeyCorp.,* 521 F.3d 202, 213 (2d Cir.2008) ( § 1983). Under that framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, and must demonstrate (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination. *Collins v.* New York City Transit Auth., 305 F.3d 113, 118 (2d Cir.2002); *Graham v.* Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000) ( § 1983).

**\*5** However, the *McDonnell–Douglas* test is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N .A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). An "employment discrimination plaintiff need not plead a prima facie case of discrimination" on this motion; instead, as long as the complaint gives the defendant "fair notice" of the plaintiff's claim, "the grounds upon which it rests" and "indicate[s] the possibility of discrimination and thus present[s] a plausible claim for disparate treatment," the complaint satisfies Rule 8 fa) of the Federal Rules of Civil Procedure. *Boykin,* 521 F.3d at 214–16. Of course, "[t]he *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards." *Jackson v. New York St. Dep't of Labor,* No. 09 Civ. 6608, 2012 WL 843631, at \*2 (S.D.N.Y. Mar.12, 2012) (quotation marks and citation omitted).

Although plaintiff does allege an "adverse" employment action—*i.e.,* that he was denied overtime and special assignments based on his Level II and modified status (Am.Compl.¶ 43)—he fails to raise a plausible inference that the action was taken on account of his race or national origin. Rather, plaintiff specifically alleges that the adverse employment action—being placed on modified status and Level II discipline monitoring—resulted from him refusing to "lie" when he was interrogated about the incident between the John Doe police officers and the cab driver. (*See* Am. Compl. ¶¶ 31, 35, 36, 38 ("In retaliation for failing to follow Defendant Harrington's unlawful directive regarding testifying falsely during Plaintiff's interrogation, ... Plaintiff was issued Charges and Specifications ...".) Plaintiff does not connect the fact that he is Hispanic to any of the alleged adverse actions taken against him other than alleging that the John Doe officers were white. (*See* Am. Compl. ¶ 38.) That is fatal to his discrimination claims. *See Int'l B'hood of Teamsters v. U.S.,* 431 U.S. 324, 335, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

Plaintiff attempts to show that he was treated differently than the John Doe officers by intimating that "defendants" did not question the John Doe officers about the altercation between plaintiff and Mazzilli. (*Id.* ¶ 44.) Plaintiff does not make any allegations about what the John Doe defendants were or were not told to say about the incident. Nor does plaintiff allege that the officers did *not* face disciplinary charges or changed "status" as a result of the incident between themselves and the cab driver. Indeed, plaintiff specifically alleges that he was told that if he did not lie, "some NYPD officers would get disciplined." (*Id.* ¶ 35.)

The Amended Complaint's allegations provide the distinct impression that plaintiff faced the alleged adverse action due to his purported failure to lie to protect other NYPD officers —not based upon his race. Even assuming the truth of those allegations, as the Court must on this motion, it does not provide any basis for the Title VII, sections 1983 and 1981, and NYSHRL claims asserted here. *See Iqbal,* 129 S.Ct. at 1949. In other words, the Amended Complaint fails to advance a plausible claim for disparate treatment under those statutes. Accordingly, those claims are dismissed.

B. NYCHRL

**\*6** Although employment discrimination claims under the NYCHRL are "to be evaluated separately from counterpart claims brought under Title VII," *Kolenovic v. ABM Indus. Inc.,* 361 Fed. Appx. 246, 248 (2d Cir.2010), to effectuate

the statute's "uniquely broad and remedial" purpose, *Kaur v. New York City Health & Hosp. Corp.,* 688 F.Supp.2d 317, 339 (S.D.N.Y.2010) (quotation marks omitted); *see also Price v. Cushman & Wakefield, Inc.,* 808 F.Supp.2d 670, 688 (S.D.N.Y.2011) ("Claims under the City HRL must be given an independent liberal construction." (quotation marks, citation, and alterations omitted)), claims of employment discrimination under the NYCHRL likewise are subject to the *McDonnell–Douglas* burden-shifting analysis, *see Spiegel,* 604 F.3d at 80; *Pilgram v. McGraw–Hill Cos.,* 599 F.Supp.2d 462, 468 (S.D.N.Y.2009) ("[T]he standard for all Title VII, section 1981, [NYSHRL] and [NY]CHRL employment discrimination claims is the same."); *Fowler v. Scores Holding Co., Inc.,* 677 F.Supp.2d 673, 682 (S.D.N.Y.2009). "[A]t a minimum, employment discrimination claims [under NYCHRL] must meet the standard of pleading set forth in *Twombly* and *Iqbal* ...." *Goodman v. Port Auth. of* New York & New Jersey, No. 10 Civ. 8352, 2012 WL 664531, at *16 (S.D.N.Y. Feb.29, 2012).

Plaintiff's NYCHRL employment discrimination claim fails under both *McDonnell–Douglas* and *Twombly/Iqbal* for the same reason as its federal and state counterparts-*i.e.,* the absence of allegations connecting the purported adverse employment actions to plaintiff's race. As discussed in connection with the Court's analysis of plaintiff's employment discrimination claims under federal and state law, there is no plausible inference that plaintiff's placement on modified status or Level II disciplinary monitoring resulted from his race. Rather, plaintiff's own allegations state that plaintiff was subjected to adverse actions because he failed to lie to protect other NYPD officers, as instructed by defendant Harrington. (*See, e.g.,* Am. Compl. ¶¶ 31, 35, 36, 38.) Accordingly, even under the NYCHRL's liberal construction, plaintiff's employment discrimination claim under NYCHRL is dismissed.

C. RACE DISCRIMINATION UNDER 42 U.S.C. § 1981
Section 1981 of chapter 42 of the United States Code provides,

> All persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security

of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981(a).

Claims of employment discrimination under section 1981 are analyzed under the same framework as discrimination claims under Title VII and section 1983. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004); *see also Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 69 (2d Cir.2000) (§ 1981); *Jermott v. Coughlin,* 85 F.3d 61, 67 (2d Cir.1996) ( § 1983).

*7 Where a defendant is a state actor, claims may only lie under 42 U.S.C. § 1983 for violations of rights under 42 U.S.C. § 1981. *Jett v.* Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Gladwin v. Possi,* 403 Fed. Appx. 603, 604–05 (2d Cir.2010) (the plaintiff's " § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983" (citing *Jett,* 491 U.S. at 735)).

Here, to the extent that plaintiff seeks to assert claims against defendants Harrington and Mazzilli in their official capacity or against the City, those claims are analyzed under section 1983 and are dismissed for the reasons set forth in Part II.A., *supra.* To the extent that plaintiff seeks to bring claims against them under section 1981, the claims are dismissed against the City and against Harrington and Mazzilli in their official capacity. *Bermudez,* 783 F.Supp.2d at 576.

## II. HOSTILE WORK ENVIRONMENT

A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL
Under federal and New York state law, a hostile work environment claim is sufficiently plead where the complaint alleges that the plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotation marks and citations omitted); *see also Patterson,* 375 F.3d at 227; *Kumaga v.* New York City Sch. Constr. Auth., 27 Misc.3d 1207(a), 2010 WL 1444513, at *8 (N.Y.Sup.Ct. Apr.2, 2010) (N.Y.SHRL). In looking at the totality of the circumsirancers, a court may also consider certain factors, among others, to determine whether

a work environment is "hostile"—*e.g.,* the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's "work performance." *Harris,* 510 U.S. at 23.

The question of "hostility" of a work environment is both subjective—*i.e.,* did the plaintiff find it hostile-and objective—*i.e.,* would a reasonable person have found it hostile. *Harris,* 510 U.S. at 21–22. The "hostility," however, must be borne of "animus towards [the plaintiff] as a result of [his] membership in a protected class." *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper,* 281 F.Supp.2d 689, 704 (S.D.N.Y.2003). Severity is a hallmark of a hostile work environment claim. Such claims "are not intended to promote or enforce civility, gentility or even decency." *Ennis v. Sonitrol Mgmt. Corp.,* No. 02–CV–9070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006).

The rubric just described applies similarly to hostile work environment claims under 42 U.S.C. §§ 1981 and 1983, and the NYSHRL. *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 § 2d Cir.2006); *Ferraro v. Kellwood Co.,* 440 F.3d 96, 99 (2d Cir.2006).

 **\*8**  As with plaintiff's employment discrimination claims, the hostile work environment claims under Title VII, 42 U.S.C. § 1983, and NYSHRL fail because there are no allegations that any animus subjective or objective stemmed from plaintiff's "membership in a protected class." Merely using the words "Hispanic" in reference to himself and "white" in reference to the John Doe police officers in his Amended Complaint does not create a plausible inference of hostility based upon race or national origin. *See Bermudez,* 783 F.Supp.2d at 581. There is simply nothing alleged to demonstrate that race factored into defendants' alleged actions. Thus, the hostile work environment claims under Title VII, 42 U.S.C. §§ 1981 & 1983, and the NYSHRL are dismissed.

  B. NYCHRL
The NYCHRL's "liberal construction" lowers the standard for a hostile work environment claim brought under its auspices. *Bermudez,* 783 F.Supp.2d at 579; *see also Farrugia v. N. Shore Univ. Hosp.,* 13 Misc.3d 740, 820 N.Y.S.2d 718, 724 (N.Y.Sup.Ct.2006) ("The New York City Human Rights Law was intended to be more protective than the state and federal counterpart."); *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir.2009) ("claims under the [NYCHRL] must be given an independent liberal

construction" (quotation marks omitted)). A "hostile work environment" for purposes of the NYCHRL is one where there is "differential treatment" period. *Williams v. New York City Housing Auth.,* 61 A.D.3d 62, 77, 872 N.Y.S.2d 27 (1st Dep't 2009). In other words, all that is required to sustain a NYCHRL "hostile work environment claim" is "unequal treatment" based upon membership in a protected class. *Id.* Questions of "severity" or "pervasiveness" go to damages only-not to liability. *Id.* at 76, 872 N.Y.S.2d 27.

As discussed above, plaintiff fails to allege that he was treated differently from the John Doe police officers. There are, as mentioned, no allegations that the John Doe police officers did not face disciplinary charges or were not placed on modified status. The Amended Complaint states in conclusory fashion only that plaintiff believed that the John Doe police officers were not questioned in connection with the altercation. (Am.Compl.¶ 44.) But there are no allegations that any questioning—or lack thereof—was based on race. Accordingly, the Amended Complaint fails to state a hostile work environment claim under the NYCHRL.

III. RETALIATION

  A. UNDER TITLE VII, 42 U.S.C. §§ 1981 & 1981, and NYSHRL
Plaintiff also asserts that defendants retaliated against him based upon his participation in a protected activity—*i.e.,* speaking the truth—in violation of Title VII, 42 U.S.C. §§ 1981 & 1983,[6] and the NYSHRL. Claims of retaliation "under those" statutes are generally analyzed in the same way, with the same standards of liability. *See Schiano,* 445 F.3d at 608 (Title VII & NYSHRL); *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107 (2d Cir.2004) (§ 1983); *Choudhury v. Polytechnic Institute of New York,* 735 F.2d 38 (2d Cir.1984) (§ 1981).

[6]    Because plaintiff has abandoned his First Amendment claim, the claim for retaliation under section 1983 may not lie concurrently with one under Title VII. *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993).

 **\*9**  A plaintiff adequately states a claim for deprivation of equal protection rights stemming from retaliation for complaining about discrimination pursuant section 1983 where the complaint alleges the plaintiff suffered a "materially adverse employment action," which was "causally connected" to the plaintiff's engaging in a

"protected activity." *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007); *Bermudez,* 783 F.Supp.2d at 575. A plaintiff engages in a protected activity when he "oppose [s] any practice made an unlawful employment practice by Title VII, or because [he] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Bermudez,* 783 F.Supp.2d at 575 (quotation marks and alterations omitted).

An adverse employment action is one that materially and adversely alters the terms and conditions of employment. *Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 446 (23 Cir.1999). A "materially adverse change is, for example, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.*

Here, plaintiff argues in his opposition to the motion to dismiss that the protected activity in which he engaged was "complaining to the uniformed officers at the scene and at 19th Precinct regarding the actions of Harrington, Mazzilli, and P.O. John Does regarding his unequal and discriminatory treatment on account of his race, national origin...." (Mem. Of Law in Opp'n to Defs.' Mot. To Dismiss the Am. Compl. (Dkt. No. 21) at 18.) However, no such allegation appears in the Amended Complaint. It is axiomatic that a complaint cannot be amended by assertions made in an opposition brief. *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F.Supp.2d 371, 432 (S.D.N.Y.2001). Thus, plaintiff's assertion in his opposition cannot form the basis for any allegations of protected activity. And without any alleged protected activity, the claims under Title VII, 42 U.S.C §§ 1981 and 1983, and the NYSHRL must fail. *See Patane,* 508 F.3d at 112.

The only protected activity alleged in the complaint is plaintiff's filing of charges with the EEOC. (*See* Am. Compl. ¶ 6.)[7] That filing occurred on January 22, 2010.(*Id.*) The closest in time "adverse action" taken against plaintiff-*i.e.,* the January 8, 2010 placement of plaintiff on Level II discipline monitoring-occurred *prior* to the EEOC filing, though. (*Id.* ¶ 39.)[8] The Level II discipline monitoring thus cannot be "causally connected" to the filing of the EEOC charges such that there is a basis for a retaliation claim. *Cf. Butts v. New York City Dep't of Housing Preservation & Dev.,* 307 Fed. Appx. 596, 599 (2d Cir.2009) ("The plaintiff can establish the causal connection indirectly by showing that the protected

activity was closely *followed* by discrimination ..." (emphasis added)).

[7]    Plaintiff's refusal to "lie" to "protect" other NYPD officers does not constitute a "protected activity" for purposes of a retaliation claim. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000) ( "The term 'protected activity' refers to actions taken to protest or oppose statutorily prohibited discrimination.").

[8]    Plaintiff asserts in wholly conclusory fashion that "[d]efendants continued to retaliate against [him] up until his retirement in October 2011...." (Am.Compl.¶ 45.) That allegation does not come close to meeting the standard set forth in *Twombly* or *Iqbal* and thus, the Court will not credit it on this motion.

**\*10**    Accordingly, without any allegations in the Amended Complaint supporting a protected activity and an adverse employment action, plaintiff's retaliation claims fail under Title VII, 42 U.S.C. §§ 1981 & 1983, and the NYSHRL. *See Desir v. City of* New York, 453 Fed. Appx. 30, 35 (2d Cir.2011).

**B. NYCHRL**
As with discrimination and hostile work environment claims under the NYCHRL, claims of retaliation under the NYCHRL must be evaluated separately from its federal and state counterparts to effectuate the statute's "uniquely broad and remedial purpose." *See Loeffler,* 582 F.3d at 278; *accord Melie v. EVCI/TCI College Admin.,* 374 Fed. Appx. 150, 153–54 (2d Cir.2010). The same analysis employed for retaliation claims under Title VII and NYSHRL applies to retaliation claims under the NYCHRL. *Anderson v. Davis Polk & Wardwell LLP,* —— F.Supp.2d ——, 2012 WL 734120, at *13 (S.D.N.Y. Mar.6, 2012). Even though the standard for a NYCHRL retaliation claim is "broader" or "lower" than the same claim under its federal or state counterparts, plaintiff's failure to establish a causal connection between any protected activity and an adverse employment action likewise dooms plaintiff's retaliation claim under the NYCHRL. *See Dixon v. Int'l Federation of Accountants,* 416 Fed. Appx. 107, 110 n. 1 (S.D.N.Y.2011).

**IV. EXCESSIVE FORCE IN VIOLATION OF** 42 U.S.C. § 1983

2012 WL 1506954

Plaintiff asserts that defendant Mazzilli used excessive force against him in violation of his constitutional rights pursuant to 42 U.S.C. § 1983. A claim for excessive force in violation of the Fourth Amendment is analyzed with objective reasonableness. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Stephenson v. Doe,* 332 F.3d 68, 77 (2d Cir.2003). That standard

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham,* 490 U.S. at 396. "Not every push or shove" amounts to a Fourth Amendment violation. *Id.* Indeed, a "de minimus use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth,* 998 F.2d 101 105 (2d Cir.2005). Further, a plaintiff must allege that he sustained an injury to maintain an excessive force claim. *Wims v. N.Y.C. Police Dep't,* No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011). Such injury need not be severe, however. *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Plaintiff alleges that Officer Mazzilli pushed his wrist into his pocket, punched him in the chest, threw him to the ground face first, forcibly handcuffed his left arm, and attempted to manipulate his right arm into handcuffs as well. (Am.Compl.¶¶ 25–26.) It is further alleged that after plaintiff informed defendant Mazzilli of a prior surgery which rendered plaintiff's right arm unable to be fully brought behind his back, Mazzilli used a second set of handcuffs "so that [plaintiff's] right arm would not have to be pulled back." (*Id.* ¶ 27.)

**\*11** As an initial matter, the handcuffing itself cannot support plaintiff's excessive force claim. *Wims,* 2011 WL 2946369, at *5 ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim."). More importantly, plaintiff does not allege "any specific or identifiable physical or mental harm beyond [ ] conclusory assertion[s] which, standing alone, [are] insufficient under

*Twombly* and *Iqbal*." *Id.* (*See* Am. Compl. ¶¶ 32 (plaintiff informed Sergeants Mulvey and Cosmo that he "was injured and wanted medical attention"), 33 ("Plaintiff chose to wait until after being interrogated to seek medical attention"), 46 (plaintiff "suffered emotional and physical damages" "[a]s a result of these incidents").) That failure dooms plaintiff's excessive force claim. Accordingly, it must be dismissed.[9]

9    In *Wims,* the court dismissed the excessive force claim despite the "liberal construction" accorded to complaints filed by *pro se* plaintiffs. 2011 WL 2946369, at *1, 5. The failure to allege a specific and identifiable injury is more egregious here where plaintiff is represented by counsel, where plaintiff was "on notice" of the deficiency related to the failure to allege a specific and identifiable injury (*see* Mem. Of Law in Support of Defs. Mot. To Dismiss Compl. (Dkt. No. 13) at 22), and where the complaint has been amended once at plaintiff's own election subsequent to that "notice."

## V. *MONELL* CLAIM

To state a claim for municipal liability under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a plaintiff must allege that " 'policies or customs that [were] sanctioned by the municipality led to the alleged constitutional violation.' " *Missel v. Ctny. of Monroe,* 351 Fed. Appx. 543, 545 (2d Cir.2009) (quoting *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006)). A *Monell* claim can survive a motion to dismiss where the plaintiff

> make[s] factual allegations that support a plausible inference that the constitutional violation took place pursuant to either a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality.

*Id.*

Plaintiff has failed to set forth factual allegations that would support a plausible inference that the City's "policies" or "customs" caused Harrington's—or even Mazzilli's-alleged

violations of plaintiff's rights. The complaint is similarly devoid of allegations regarding any policy promulgated by the City requiring NYPD police officers to "lie" to "protect" other NYPD officers when they commit constitutional or NYPD-regulations violations.

Plaintiff alleges that the "City of New York failed to train its police officers as to display a deliberate indifference to the constitutional rights [of] those within the City of New York." (Am.Compl.¶ 71.) But that allegation standing alone does not create a plausible inference that any of Harrington's and Mazzilli's complained-of violations-regardless of whether those violations relate to plaintiff's claim for disparate treatment, hostile work environment, or retaliation were made pursuant to any City-mandated policy. That allegation is merely a recitation of the element of the cause of action-something the Court cannot credit on this motion. *Iqbal,* 129 S.Ct. at 1949. Accordingly, the *Monell* claim must be dismissed.

CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss is GRANTED.

**\*12** Because plaintiff elected to amend the complaint in response to defendants' motion to dismiss the original complaint where nearly identical arguments to those raised on this motion, having the benefit of the Court's explicit admonition that any pleading deficiencies would be deemed with prejudice on a subsequent motion to dismiss, plaintiff's request for leave to amend is DENIED. Accordingly, the dismissal of the Amended Complaint is with prejudice.

The Clerk of Court is directed to terminate any pending motions and terminate this action. Judgment is to be entered for defendants the City of New York, Michael Harrington, and Michael Mazzilli.

SO ORDERED:

IN RE ADULT FILM COPYRIGHT INFRINGEMENT LITIGATION

This Document Relates to:

11 Civ. 7564(KBF)

11 Civ. 7999(KBF)

11 Civ. 8172(KBF)

11 Civ. 9550(KBF)

11 Civ. 9618(KBF)

11 Civ. 9688(KBF)

11 Civ. 9689(KBF)

11 Civ. 9703(KBF)

11 Civ. 9705(KBF)

11 Civ. 9706(KBF)

11 Civ. 0129(KBF)

11 Civ. 1077(KBF)

11 Civ. 1169(KBF)

Master Case No. 11 Civ. 7564

*MEMORANDUM & ORDER*

On March 13, 2012, this Court issued an order stating, in part, that plaintiffs shall identify Doe defendants, who have requested to proceed anonymously, by IP address and Doe number only—*i.e.,* plaintiffs must not reveal the identity of these Doe defendants in public filings. On April 18, 2012, in contravention of this order, plaintiff in Member Case No. 11 Civ. 9706 named a Doe defendant-who had submitted a request to proceed anonymously that was received by plaintiff-in a public filing. [1] This document has been removed by the Court.

[1] Counsel shall broadly construe filings by *pro se* plaintiffs and err on the side of interpreting filings as requests to proceed anonymously when there is any indication that they might be such requests.

Should counsel for plaintiffs again disobey a Court order in this consolidated action, plaintiffs may be subject to sanctions including dismissal of their actions pursuant to Federal Rule of Civil Procedure 41(b).

Plaintiff is directed to mail this Order to the Doe defendant named in plaintiff's filing.

2012 WL 1506954

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1506954

---

                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                                      10

Wims v. New York City Police Dept., Not Reported in F.Supp.2d (2011)

2011 WL 2946369

KeyCite Yellow Flag - Negative Treatment
Distinguished by  Alvarez v. County of Orange, N.Y.,  S.D.N.Y.,  March 25, 2015

2011 WL 2946369
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Michael WIMS, Plaintiff,
v.
The NEW YORK CITY POLICE
DEPARTMENT, 52ND Precinct Bronx Narcotics
Division, Detective D. Roberts, Sergeant E.
Beckel, Sergeant A. Capato, Defendants.

No. 10 Civ. 6128(PKC).
|
July 20, 2011.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Michael Wims, proceeding *pro se,* brings this action against the New York City Police Department ("NYPD"), the 52nd Precinct Bronx Narcotics Division ("PBND"), Detective David Roberts, Sergeant E. Beckel and Sergeant A, Capato pursuant to 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, excessive force and violations of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, arising out of his arrest on December 10, 2009. Defendants have moved to dismiss the Complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion to dismiss is granted.

BACKGROUND

Plaintiff filed the Complaint on August 17, 2010. (Docket # 1.) He alleges that at approximately 10:00 a.m. on December 10, 2009, he was leaving his residence at 1880 Valentine Avenue Bronx, New York, when he was confronted by several detectives. (Compl.¶ 7.) According to the Complaint, the detectives physically and mentally "brutalized" him, "antagonize[d]" him and "[taunted] [him] with firearms and harsh yet vulgar language and racial slurs." (*Id.*) Plaintiff asserts that he was not shown a search

warrant. (Compl.¶ 7.) Plaintiff also claims that the detectives "physical[ly] brutalized [him] through harsh and racially motivated [g]estures and comments." (*Id.* at p. 4.) Lastly, plaintiff asserts that the detectives did not read him his *Miranda* rights. (*Id.* at 3.)

The detectives searched plaintiff's apartment and found in the apartment two loaded firearms and a controlled substance. (*See* Francolla Decl., "B.") Plaintiff was subsequently arrested and charged with Criminal Possession of a Weapon in the Second Degree and Criminal Possession in the Fifth Degree With Intent to Sell. (*Id.*) On December 21, 2009, plaintiff entered a plea of guilty to Attempted Criminal Possession of a Weapon in the Second Degree. (*See* Francolla Decl., "C.")

DISCUSSION

I. *Motion to Dismiss Pursuant to* Rule 12(b)(6)
A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). A plaintiff's *pro se* pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.' " Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)).

Rule 8(a) (2), Fed.R.Civ.P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (ellipsis in original). To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P ., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting Twombly, 550 U.S. at 555).

**\*2** The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal

conclusion couched as a factual allegation. *Id.* Second, a court must then consider whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. *See Int'l Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 72 (2d Cir.1995). Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," including arrest reports, criminal complaints, indictments and criminal disposition data. *Vasquez v. City of New York,* 99 Civ. 4606, 2000 WL 869492, at *1 n. 1 (S.D.N.Y. June 29, 2000) (citations omitted); *see Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

Defendants move to dismiss plaintiff's claims under Rule 12(b) (6), arguing that plaintiff's guilty plea precludes his claims for false arrest and malicious prosecution, that he has failed to state a claim for excessive force, that two of the defendants are non-suable entities and that the defendant officers are entitled to qualified immunity. (Def.Mem.1–2.)

In opposition to defendant's motion, plaintiff has not submitted any legal arguments, but instead has set forth additional facts not alleged in the Complaint.[1] A court may not consider the contents of these documents without converting defendants' motion to dismiss into one for summary judgment. *See, e.g., Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000) ("a district court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (internal quotation marks, citations and alteration omitted). However, even if this Court were to generously read the facts set forth in plaintiff's opposition papers as being raised in his Complaint, plaintiff has still failed to state a claim upon which relief can be granted.

[1]     Local Rule 7.1 requires "all motions and all oppositions thereto ... [to] be supported by memorandum of law.... Failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." Here, the plaintiff did not submit a memorandum of law in opposition to defendants' motion to dismiss; rather plaintiff submitted a statement of facts. While the Court notes the

deficiency in the form of plaintiff's opposition, this Court has "broad discretion to determine whether to overlook a party's failure to comply with local rules ... and [n]othing in ... the Civil Rules of the Southern District requires a court to punish a party for noncompliance." *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 108 n. 2 (2d Cir.2006) (internal quotation marks omitted) (citations omitted).

## II. *Plaintiff's Section 1983 Claims*

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived him of a right guaranteed to him by the Constitution or federal law. 42 U.S.C. § 1983; *see Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Here, plaintiff's claims are predicated on allegations that he was falsely arrested, maliciously prosecuted, subjected to excessive force and deprived of rights, privileges and immunities guaranteed by the Fourth, Fifth, Sixth and Fourteenth Amendments. The Court will examine each of these claims in turn.

### A. *False Arrest*

**\*3**  Plaintiff's section 1983 claim for unconstitutional false arrest fails because plaintiff pled guilty to one of the crimes for which he was arrested.[2] *Cameron v. Fogarty,* 806 F.2d 380, 386–87 (2d Cir.1986) (holding that "a person who has been convicted of the crime for which he was arrested is barred from recovering" under section 1983 for a claim for false imprisonment or malicious prosecution, "sometimes colloquially called an action for 'false arrest' "). "Since a guilty plea is the equivalent of a conviction, a guilty plea will also bar a § 1983 false arrest claim." *Hernandez v. City of New York,* No. 00 Civ. 9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004).

[2]     The state prosecution of an individual is a matter of public record, of which a court may take judicial notice. *Shmueli v. City of New York,* 424 F.3d 231, 233 (2d Cir.2005). This Court takes judicial notice of plaintiff's conviction by guilty plea.

Here, plaintiff was arrested for, and initially charged with, Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Controlled Substance in the Fifth Degree With Intent to Sell. (*See* Francolla Decl., Exhibit "B."). He pled guilty to Attempted Criminal Possession of a Weapon in the Second Degree, in satisfaction of all

charges against him. That plaintiff pled guilty to only one of the two initial charges—and to a lesser charged offense—nevertheless precludes recovery under section 1983 for false arrest. *See, e.g., Allison v. Farrell,* No. 97 Civ. 2247, 2002 WL 88380, at \*4 (S.D.N.Y. Jan. 22, 2002) ("[I]t is of no moment that [plaintiff] pled guilty to a lesser charge arising out of the events that took place on the day of his arrest.") (citations omitted); *Papeskov v. Brown,* No. 97 Civ. 5351, 1998 WL 299892, at \*5 (S.D.N.Y. June 8, 1998) ("[A] plea of guilty, even to a charge lesser than that for which the plaintiff was arrested, bars a § 1983 action.") (citations omitted).

Plaintiff has not shown that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). Under *Heck,* a plaintiff is barred from recovering damages under section 1983 if the award would imply the invalidity of plaintiff's conviction. *See Younger v. City of New York,* 480 F.Supp.2d 723, 730 (S.D.N.Y.2007) (dismissing plaintiff's claims for false arrest, false imprisonment and malicious prosecution because, if successful, they would render plaintiff's conviction invalid). Thus, his "guilty plea establishes that there was probable cause for his arrest" and "stands as a complete bar to any claims of false arrest ... and malicious prosecution under Section 1983." *Smith v. P.O. Canine Dog Chas,* No. 036240 KMW DF, 2004 WL 2202564, at \*6 (S.D.N.Y. Sept. 28, 2004).

Accordingly, defendants' motion to dismiss plaintiff's claim for false arrest is granted.

### B. *Malicious Prosecution*

Plaintiff's guilty plea negates a required element of his malicious prosecution claim: a showing that the underlying proceeding terminated in his favor. A claim for malicious prosecution brought under section 1983 to vindicate plaintiff's Fourth and Fourteenth Amendment right to be free from unreasonable seizure is "substantially the same" as a claim for malicious prosecution under state law. *See Heck,* 512 U.S. at 486–87; *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003). To state a claim for malicious prosecution under New York law plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 136 (internal

quotation marks omitted). "Favorable termination is not so much an element of a malicious prosecution claim as it is a prerequisite to commencement of the action." *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989). When a charge is dismissed as part of a plea bargain, the dropped charge is not a favorable termination sufficient to support a malicious prosecution claim. *See Posr v. Court Officer Shield # 207,* 180 F.3d 409, 418 (2d Cir.1999) ("[I]f the outcome was the result of a compromise to which the accused agreed ... it is not a termination in favor of the accused for purposes of a malicious prosecution claim." (internal quotation marks and citation omitted)). Therefore, plaintiff's guilty plea for Attempted Criminal Possession of a Weapon in the Second Degree in satisfaction of all charges is not a favorable termination on the charge dismissed as part of the plea deal.

**\*4** Based on plaintiff's conviction and failure to show a favorable termination, defendants' motion to dismiss plaintiff's claim for malicious prosecution is granted.

### C. *Excessive Force*

A claim that excessive force was used "in the course of an arrest, investigatory stop or other 'seizure' of a free citizen [is] most properly characterized as invoking the protections of the Fourth Amendment." *Graham v. Connor,* 490 U.S. 386, 387 (1989). Accordingly, plaintiff's excessive force claim will be analyzed under Fourth Amendment principles.[3]

> [3]
>
> In addition to listing a Fourth Amendment violation in his complaint, plaintiff also asserts that the defendants violated the prohibition against the infliction of cruel and "inhumane" punishment, which implicates the Eighth Amendment. (Compl.¶ 5.) Reading the complaint liberally and because he was not then incarcerated pursuant to a judgment of conviction, plaintiff's claim of use of excessive force during his arrest will be deemed to have been asserted under the Fourth and Fourteenth Amendments.

When excessive force is alleged, a court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight." *Id.* at 396. Because the standard is objective reasonableness, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment." *Id.* at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

A "de minimis use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993); *see also Rincon v. City of New York,* No. 03 Civ. 8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (rejecting claim of excessive force where plaintiff alleged that the officer threw her to the ground, causing her stitches to open and was treated for a swollen leg and wrist, because the force was de minimis). Further, "it is clear that some type of injury is required to prevail on a § 1983 excessive force claim." *Castro v.. County of Nassau,* 739 F.Supp.2d 153, 177 n. 16 (E.D.N.Y.2010). However, an individual does not need to sustain a severe injury to maintain a claim. *See Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

Plaintiff states in his Complaint that he was "[taunted] [ ] with firearms and harsh yet vulgar language and racial slurs." (Compl.¶ 7.) He also asserts the "officers physical[ly] brutalized me through harsh and racially motivated [g]estures and comments." (Compl. p. 4.) No other facts showing injury are set forth in the Complaint. In plaintiff's Affirmation in Opposition to Motion to Dismiss, he claims the officers surrounded his vehicle with "weapons drawn ... [and] were very loud and using profanity." (Docket # 12.) He also asserts he was pulled out of his car and "thrown flat on [his] face unto the filthy ground." (*Id.*)

**\*5** These allegations do not rise to the level of force that is more than de minimis. Merely placing tight handcuffs on a suspect is not enough for an excessive force claim. *See Grant v. City of New York,* 500 F.Supp.2d 211, 217 (S.D.N.Y.2007) ("Frequently, a reasonable arrest involves handcuffing the suspect and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out."). Similarly, the verbal abuse, on its own, is not actionable. *See Miro v. City of New York,* No. 95 Civ. 4331, 2002 WL 1163580, at *5 (S.D.N.Y. June 3, 2002) ("[A]n arresting officer's use of racial epithets does not constitute a basis for a § 1983 claim."). Further, it is not excessive for the officers

to draw their guns during the arrest. *See Bolden v. Vill. Of Monticello,* 344 F.Supp.2d 407, 419 (S.D.N.Y 2004) ("[In] executing a search warrant for drugs ... it is reasonable for police officers to enter a residence with guns draw to secure the area and prevent harm to themselves or others.") (citing *Speights v. City of New York,* No. 98 Civ. 4635(NG), 2001 WL 797812 (E.D.N.Y. June 18, 2001)). There is no assertion that having been "thrown flat on [his] face unto the filthy ground" resulted in any specific or identifiable physical or mental injury and harm beyond a conclusory assertion which, standing alone, is insufficient under *Twombly* and *Iqbal. See Castro,* 739 F.Supp.2d at 177.

Therefore, defendants' motion to dismiss plaintiff's claim for excessive force is granted.

### D. *Deprivation of Federal Civil Rights*

Plaintiff also alleges that the defendants violated his Fifth and Sixth Amendment Rights. (Compl.¶ 5.) The Court will examine these remaining claims in turn.

#### 1. *Fifth Amendment*

Plaintiff claims that his Due Process rights were violated because he was not read his *Miranda* rights, and he did not have an attorney during custodial interrogation. The Supreme Court has repeatedly held that *Miranda* warnings and right to counsel are not themselves required by the Constitution but are rather procedural safeguards to insure that a suspect's Fifth Amendment rights are not violated. *See, e.g., J.D.B. v. North Carolina,* 131 S.Ct. 2394, 2401 (2011). The appropriate remedy for the failure to read a suspect his *Miranda* warnings is the exclusion of any self-incriminating evidence, not liability under section 1983. *Neighbour v. Covert,* 68 F.3d 1508, 1510 (2d Cir.1995). Thus, the officers' failure to inform plaintiff of his rights under *Miranda* does not, without more, result in section 1983 liability.

#### II. *Sixth Amendment*

Plaintiff claims that he was subjected to "cruel and inhumane" punishment because the detectives' conduct "was in conflict of departmental procedures." (Compl. p. 4.) Although plaintiff lists this as a Sixth Amendment violation, it appears he intended to assert a violation of the Eighth Amendment. The Sixth Amendment right to counsel would not attach until the Government commits itself to prosecution by initiating adversary judicial proceedings, *Moran v. Burbine,* 475 U.S.

412, 321 (1986). However, plaintiff's complaint alleges only a lack of representation during his initial interrogation before arraignment. (Compl. p. 3.) Similarly, the Eighth Amendment does not attach until after conviction and sentencing, as "it was designed to protect those convicted of crimes." *Ingraham v. Wright,* 430 U.S. 651, 664 (1977). Because these claims concern actions prior to his conviction, plaintiff's Eighth Amendment and Sixth Amendment claims are dismissed.

### III. *The NYPD and PBND Are Not Suable Entities*

**\*6** The NYPD and PBND move to dismiss on the grounds that neither is a suable entity. An entity's capacity to be sued is determined by state law. Fed.R.Civ.P. 17(b). Chapter 17, section 396 of the New York City Charter provides that "all actions and proceedings for the recovery of penalties for violation of any law shall be brought in the name of the city of New York and not that of any agency except where otherwise provided by law." As agencies of the City of New York, therefore, the NYPD and the PBND are non-suable entities. *See Ximines v. George Wingate High* Sch., 516 F.3d 156, 160 (2d Cir.2008) ( "Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."); *East Coast Novelty Co. v.. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992) (finding that Police Department, as an agency of the City, and Property Clerk, as a subdivision of the Police Department, are not suable entities).

### IV. *Municipal Liability*

Construing the claims against the NYPD and PBND as having been asserted against the City of New York under 42 U.S.C. § 1983, plaintiff has still failed to state a claim for municipal liability. *"Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) (emphasis in original) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). Because plaintiffs potential claims against the City of New York depend upon the existence of an independent constitutional violation and as this Court has found that none have been stated, plaintiff's *Monell* claims will be dismissed.

CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are GRANTED. The Clerk of the Court shall enter judgment in favor of the defendants.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2946369

---

Solano v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 4134793

2021 WL 4134793
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rafael SOLANO, Plaintiff,

v.

The State of NEW YORK; the Warden of Clinton
Correctional Facility; Correction Officer A. Aubin;
Correction Officer Bezio; Correction Officer Taft;
and Correction Officers "John Doe I-V", Defendants.

9:20-cv-01378 (BKS/ML)
|
Signed 09/10/2021

**Attorneys and Law Firms**

For Plaintiff: John K. Kouroupas, Greenberg & Stein, P.C.,
360 Lexington Avenue, Suite 1501, New York, New York
10017.

For Defendants: Letitia James, Attorney General of the State
of New York, William E. Arnold, IV, Assistant Attorney
General, 300 South State St., Suite 300, Syracuse, New York
13202.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

 **\*1** Plaintiff Rafael Solano brings this action under 42 U.S.C.
§ 1983 and state law against Defendants New York State,
the "Warden of Clinton Correctional Facility," Correction
Officers A. Aubin, Bezio, Taft, and "John Doe I-V," asserting
violations stemming from an alleged incident of excessive
force on November 9, 2017 when Plaintiff was incarcerated
at Clinton Correctional Facility ("Clinton"). (*See generally*
Dkt. No. 1). The Complaint contains twelve cause of action:
(1) unlawful search and seizure in violation of the Fourth
Amendment and New York State Constitution (First Cause of
Action); (2) false arrest and false imprisonment in violation
of the Fourth and Fourteenth Amendments (Second Cause
of Action); (3) assault and battery in violation of state law
(Third Cause of Action); (4) excessive force in violation of
the Fourth and Fourteenth Amendments (Fourth Cause of
Action); (5) malicious prosecution in violation of the Fourth
and Fourteenth Amendments (Fifth Cause of Action); (6)

denial of the right to a fair trial in violation of the New
York State Constitution and New York Civil Rights Law
(Sixth Cause of Action); (7) denial of the right to a fair
trial in violation of the Sixth and Fourteenth Amendments
(Seventh Cause of Action); (8) failure to intervene in violation
of the Fourth and Fourteenth Amendments (Eighth Cause
of Action); (9) malicious abuse of process (Ninth Cause
of Action); (10) negligent hiring, retention, and supervision
in violation of New York law (Tenth Cause of Action);
(11) municipal liability under *Monell* [1] (Eleventh Cause of
Action); and (12) deliberate indifference to safety and failure
to protect in violation of the Fourth, Sixth, Eighth, and
Fourteenth Amendments as well as 42 U.S.C. §§ 1981, 1985,
1986, and 1988 (Twelfth Cause of Action). (*Id.*). Plaintiff
sues Defendants in their individual and official capacities
and seeks compensatory and punitive damages, as well as an
award of costs and attorneys' fees. (*Id.*). Presently before the
Court is Defendants' motion to dismiss under Rule 12(b)(6)
of the Federal Rules of Civil Procedure. (Dkt. No. 6, at 1).
Plaintiff opposes Defendants' motion. (Dkt. No. 15, at 1). For
the reasons discussed below, Defendants' motion is granted
in part and denied in part.

1       *Monell v. New York City Dep't of Social Servs.*, 436
        U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**II. RELEVANT FACTS** [2]

2       The facts are drawn from Plaintiff's Complaint.
        All facts in the Complaint are assumed to be true,
        and all reasonable inferences have been drawn in
        Plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d
        247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns,
        Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
        2007)).

From August until November of 2017, "correction officers" at
Clinton Correctional Facility threatened Plaintiff, who was an
inmate at Clinton, "with violence." (Dkt. No. 1, ¶ 38). Plaintiff
"was in great fear and contacted family members and friends
who informed the New York State Department of Corrections
in Albany of said threats." (*Id.* ¶ 39). "Correction Officers"
at Clinton "then conspired to hurt the Plaintiff in order to
retaliate against him for these complaints," which led to an
attack on November 9, 2017. (*Id.* ¶ 41).

 **\*2** On November 9, 2017, Plaintiff was in the library;
at approximately 11:10 a.m., "library staff made an
announcement to all ... inmates in the general library that
it was time for them to go back to their cells." (*Id.* ¶¶ 42–

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 80 of 123

Solano v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 4134793

43). "The library announcement was followed by an alarm indicating an incident had occurred." (*Id.* ¶ 44). Defendant correction officer A. Aubin directed the inmates in the library to move to the hallway. (*Id.* ¶¶ 43–45). He then told the inmates to sit down on a bench. (*Id.* ¶ 45). Aubin knew that Plaintiff had injured his back, and that this injury made it difficult for him to sit and stand quickly. (*Id.* ¶ 46). Plaintiff complied with the order and sat down on the bench. (*Id.*). Aubin directed the inmates to stand and re-enter the library, and Plaintiff complied. (*Id.* at 7).

Aubin then told Plaintiff to leave the library alone. (*Id.* ¶ 48). Aubin "escorted [Plaintiff] to the hallway to an elevator and instructed [Plaintiff] to put his hands against the wall." (*Id.* ¶ 49). Plaintiff "complied with said orders." (*Id.*). Aubin then punched Plaintiff in the head and stated: "Fuck your back, when I tell you to sit down, you sit down as fast as I tell you to sit down," and struck Plaintiff "in the face multiple times." (*Id.* ¶ 51). Aubin "and another Officer, whose identity is unknown ... then threw Plaintiff onto the floor" and subjected him to "multiple assault and batteries to his back by kick[ing]" him. (*Id.* ¶ 52).

Following this incident, based on the "false, misleading or incomplete statements" of Defendant Correction Officers Aubin, Bezio, and Taft, who, along with the John Doe Defendants, "signed incident reports and Use of Force Reports ... falsely accusing [Plaintiff] of false charges," Plaintiff was charged with Violent Behavior, Creating a Disturbance, Assault on Staff, Interference with Employee, and Refusing a Direct Order. (Dkt. No. 1, ¶ 53). Aubin, Bezio, and Taft "arrested," and "illegally searched" Plaintiff. (*Id.* ¶ 57). The Warden, Aubin, Bezio, Taft, and the John Doe Defendants falsely accused Plaintiff of false charges and "conveyed the aforementioned false, misleading and incomplete information ... to have Plaintiff[ ] prosecuted." (*Id.* ¶¶ 60, 65). Plaintiff appeared at a Superintendent Hearing on November 17, 2017 to dispute the charges against him. (*Id.* ¶ 2). Plaintiff filed a grievance on December 19, 2017. (*Id.* ¶ 8).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) *(quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the

cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.' " *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140 (S.D.N.Y. Sept. 22, 2017) *(quoting Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) *(citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d at 98). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## IV. DISCUSSION

Defendants argue that Plaintiff's complaint should be dismissed in its entirety, because 1) the Eleventh Amendment bars claims against the State of New York and individual defendants in their official capacities; 2) Plaintiff failed to exhaust his administrative remedies; 3) the Complaint fails to allege the personal involvement of each Defendant in the alleged constitutional violations; 4) the claims for unlawful search and seizure, false arrest, false imprisonment, malicious prosecution, excessive force, denial of the right to a fair trial, and malicious abuse of process all fail to state a plausible claim for relief; and 5) New York Correction Law § 24 bars Plaintiff's state law claims against correction officers. (*See generally* Dkt. 6-3).

### A. Materials Outside the Complaint

 **\*3**  Defendants have submitted a copy of "Plaintiff's grievance packet (SUL-23889-17), filed on December 19, 2017," in support of their motion to dismiss. (Dkt. Nos. 6-1, 6-2). Defendants argue that the grievance packet demonstrates that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") by failing to mention the involvement of any other correction officers in the alleged excessive force incident. (Dkt. No. 6-3, at 8–11); 42 U.S.C. § 1997e. The grievance packet is not attached as an exhibit to the Complaint; thus, as a preliminary matter, the Court must decide whether to consider it in resolving this motion.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint

Solano v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 4134793

"is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)).

Even where a document is deemed " 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (quoting *DiFolco*, 622 F.3d at 111). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134). "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* Thus, "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.' " *Id.* (quoting Fed. R. Civ. P. 12(d)).

Here, the Complaint states, without elaboration, that Plaintiff "filed a grievance on December 19, 2017." (*See* Dkt. No. 1, at 2). Courts have found grievance documents to be incorporated by reference or integral to a complaint that alleges having filed a grievance. *See, e.g., Gunn v. Annucci*, No. 20-cv-02004, 2021 WL 1699949, at *3 (S.D.N.Y. April 29, 2021) ("[T]he Court may consider the documents concerning Plaintiff's exhaustion of administrative remedies because he pled affirmatively that he tried to grieve his exposure to cold temperatures from April 15, 2017 to May 15, 2017 and that he appealed the denial of the grievance ... Documents associated with that grievance are, therefore, integral to and referenced in the Complaint."); *Sanchez v. Velez*, No. 08-cv-1519, 2009 WL 2252319, at *1 n.1, 2009 U.S. Dist. LEXIS 64744 (S.D.N.Y. July 23, 2009) ("Because plaintiff's grievances are referenced in the complaint, the grievance documents are incorporated by reference and properly considered on a motion to dismiss.") (citing *Sloane v. Mazzuca*, No. 04-cv-8266, 2006 WL 3096031, at *2 n.9, 2006 U.S. Dist. LEXIS 79817, at *7 n.9 (S.D.N.Y. Oct. 31, 2006)) ("Plaintiff's misbehavior reports, grievances, and grievance appeals are all

either incorporated by reference or attached as supplemental exhibits to the Amended Complaint.").

**\*4** Furthermore, Plaintiff does not object to the inclusion of the grievance packet or contest its authenticity. Plaintiff's counsel submitted an affirmation stating that the grievance records were attached to Defendants' motion, and Plaintiff cited to, and relied on the grievance in his opposition to the motion to dismiss. (Dkt. No. 15, at 1; Dkt. No. 15-1, at 10, 12). Plaintiff argued that he filed two previous grievances "concerning the matter" both of which were unaddressed, in support of his claim that the grievance process was unavailable. (Dkt. No. 15-1, at 10, 12; Dkt. No. 6-2, at 6). In light of the reference made to the grievance in Plaintiff's complaint, applicable case law, the acquiescence of both parties to the consideration of the grievance packet, and Plaintiff's reliance on the packet in his opposition, the Court will consider the grievance packet in resolving the present motion.

## B. Exhaustion of Administrative Remedies

Defendants argue that, except for the excessive force claim as it relates to Defendant Aubin, each of Plaintiff's federal claims should be dismissed because he failed to exhaust the administrative remedies available to him through grievance procedures before filing his complaint. (Dkt. No. 6-3, at 8–11). Plaintiff responds that to the extent he did not exhaust his administrative remedies, it is because the grievance process was unavailable to him. (Dkt. No. 15-1, at 9–13).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules.[3] *Jones v. Bock*, 549 U.S. 199, 218–19, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The PLRA contains one "textual exception to mandatory exhaustion." *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). "Under § 1997e(a), the

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 82 of 123

Solano v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 4134793

exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Second Circuit has explained that "an administrative remedy may be unavailable when": (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859–60).

3    "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The grievance procedure in New York is a three-tiered process. The prisoner must first file a grievance with the IGRC. *See* 7 N.Y.C.R.R. § 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the superintendent of the facility. *Id.* § 701.5(c). Adverse decisions at the superintendent's level may be appealed to CORC. *Id.* § 701.5(d).

Because "[f]ailure to exhaust administrative remedies is an affirmative defense," it is "not a pleading requirement." *Id.* at 122, 126 S.Ct. 2378. Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* (quoting *Jones*, 549 U.S. at 216, 127 S.Ct. 910). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.*

**\*5** Here, while the December 19, 2017 grievance only complains of an assault by Defendant Aubin, it does refer to two prior grievances that Plaintiff filed, but were never responded to by Clinton. (Dkt. No. 6-2, at 6). Plaintiff argues that the grievance process was unavailable because his first two grievances went unanswered. (Dkt. No. 15-1, at 12-13). While Defendants note that Plaintiff's December 19, 2017 grievance was acted upon, and that the December 19 grievance is described as a "*refil[ing]* of [Plaintiff's] grievance in this matter," (Dkt. No. 6-2, at 6), there is nothing in this record reflecting the substance of Plaintiff's first two grievances. Based upon the limited record before the Court, i.e., the face of the Complaint and the grievance packet incorporated by reference, it is not clear that Plaintiff filed

to satisfy the PLRA exhaustion requirement. Defendants' motion to dismiss Plaintiff's federal claims for failure to exhaust administrative remedies at this stage of the proceedings is therefore denied. The Court expresses no opinion on the viability of a motion to dismiss for failure to exhaust following discovery on that issue.

### C. Eleventh Amendment Immunity

#### 1. The State of New York

In their motion to dismiss, Defendants argue that "any claim asserted against the State of New York ... must be dismissed on the basis of sovereign immunity under the Eleventh Amendment." (Dkt. No. 6-3, at 7). In his response, Plaintiff "agrees that the State of New York is not a proper defendant pursuant to the Eleventh Amendment." (Dkt. No. 15-1, at 8).

Sovereign immunity bars a suit in federal court against a state, absent the state's consent to suit or congressional abrogation of immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir. 1997). "New York has not waived its immunity, nor has Congress abrogated it." *Jackson v. Ramirez*, 691 F. App'x 45, 46 (2d Cir. 2017) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39 (2d Cir. 2017)); *see also Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 246 (S.D.N.Y. 2020) ("Congress did not abrogate the States' sovereign immunity when it enacted §§ 1983 and 1985, and New York has not waived its immunity." (citing *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010))). Thus, the causes of action brought against New York State must be dismissed.

#### 2. Individual Defendants

In his Complaint, Plaintiff sues Warden of Clinton Correctional Facility, and correction officers Aubin, Bezio, Taft, "individually and in their capacities as officers." (Dkt. No. 1, at 1). In their motion to dismiss, Defendants argue that "any claim asserted against ... any of the individual Defendants in their official capacities must be dismissed on the basis of sovereign immunity." (Dkt. No. 6-3, at 7). In his response, Plaintiff agrees that "the Eleventh Amendment bars claims against the defendants in their official capacities." (Dkt. No. 15-1, at 8).

Solano v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 4134793

The Eleventh Amendment divests federal courts of subject matter jurisdiction over claims for damages against state officials in their official capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 552, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Thus, any claim against Defendants Warden of Clinton Correctional Facility, or correction officers Aubin, Taft, or Bezio in their official capacities, must be dismissed.

**D. Group Pleading and Personal Involvement**

Defendants argue that the Complaint is largely comprised of impermissible "group pleading," and that each cause of action except the excessive force claim against Aubin should thus be dismissed. (Dkt. No. 6-3, at 12–13). Defendants Warden, Aubin, Bezio, and Taft argue that the Complaint fails to allege their personal involvement as to the unlawful search and seizure, false arrest and imprisonment, malicious prosecution, right to fair trial, failure to intervene, malicious abuse of process, and deliberate indifference to safety. (Dkt. No. 6-3, at 11–13). Defendants Warden, Bezio and Taft further argue that the Complaint fails to allege their personal involvement with respect to the alleged use of excessive force. (*Id.*).

 **\*6** Group pleading is generally impermissible as a violation of Federal Rules of Civil Procedure ("FRCP") notice requirements. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. Mar. 31, 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); *see also Holmes v. Allstate Corp.*, No. 11-cv-1543, 2012 WL 627238, at *7, *22, 2012 U.S. Dist. LEXIS 24883 (S.D.N.Y. Jan. 27, 2012) ("[FRCP] 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."), *report-recommendation adopted*, 2012 WL 626262, 2012 U.S. Dist. LEXIS 24903 (S.D.N.Y. Feb. 27, 2012); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (explaining that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails to satisfy minimum "fair notice" standard of FRCP Rule 8).

Furthermore, "the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983.' " *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)); *see also Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016); *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). The Second Circuit recently clarified that "there is no special rule for supervisory liability" and explained that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937). As discussed below, with the exception of the excessive force claim against Aubin, the Complaint not only fails to distinguish the conduct of the individual Defendants but fails to allege their personal involvement in the alleged constitutional violations.

**1. Defendant Warden**

According to the Complaint, "Warden was the highest-ranking NYSDOC employee at the Clinton Correctional Facility, and was responsible for the supervision, oversight, and discipline of the uniformed staff in Clinton" as well as for "the care, custody, and control of all individuals incarcerated in Clinton." (Dkt. No. 1, ¶ 16). The Complaint's remaining allegations list the Warden as one of the "Defendants," who committed various acts, thus failing to provide fair notice of any claim against the Warden or any act the Warden personally did. Moreover, the alleged conduct is vague and conclusory; Plaintiff asserts legal conclusions without supporting facts. The Complaint alleges, for example, that "Defendants," including the Warden and seven other Defendants, were "fully aware" Plaintiff committed no crimes or violations but fabricated an observation to justify Plaintiff's conviction; signed an incident and use of force report falsely accusing Plaintiff; conveyed false information, "suppressed evidence," fabricated evidence, and engaged in fraud and perjury; "failed to intervene" when he observed others using excessive force." (*Id.* ¶¶ 59–60, 64–69). [4]

[4]      The Court notes that an allegation that a defendant signed false incident and use of force reports, without more, is insufficient to state a cause of action. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 84 of 123

Solano v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 4134793

constitutional right to be free from being falsely accused in a misbehavior report.").

**\*7** "In addressing the sufficiency of a complaint[, the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013); *see Iqbal*, 556 U.S. at 678, 129, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As the Complaint alleges no facts regarding any action the Warden took in connection with the alleged use of force on November 9, 2017, or the subsequent charges, it fails to allege a plausible § 1983 claim against the Warden. Plaintiff's argument that Complaint "alleges a degree of involvement beyond ... merely being in the chain of command," is without merit. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim.") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Plaintiff has therefore failed to plausibly plead the Warden's personal involvement in any alleged infringement of his constitutional rights.

**2. Defendants Bezio and Taft**

The allegations against Defendants Bezio and Taft are similarly defective. The Complaint alleges that "Defendants, including Aubin, Bezio, and Taft, provided false, misleading or incomplete statements concerning their observations of the [excessive force] incident with plaintiff" in support of the charges of violent behavior, creating a disturbance, assault on staff, interference with employee, and refusing a direct order. (Dkt. No. 1, ¶ 53). Bezio and Taft were among the approximately seven Defendants who, inter alia, allegedly signed "incident reports and a Use of Force Report ... knowingly and falsely accusing [Plaintiff] of false charges" and "illegally searched" Plaintiff. (Dkt. No. 1, ¶¶ 57–58, 60). For the same reasons set forth above regarding the Warden, Plaintiff has failed to plausibly plead that Bezio and Taft "through the[ir] ... own individual actions," violated the Constitution. *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937)).

**3. Defendant Aubin**

Defendants argue that "with the exception of the Fourth Cause of Action against Defendant Aubin," the Complaint fails to allege the personal involvement of each Defendant. (Dkt. No. 6-3 at 13). Although the "Factual Charges" section of the Complaint does outline how Aubin was involved in the excessive force incident with Plaintiff, the causes of action contain allegations against Defendant Aubin that are identical to those against Defendants Bezio and Taft and fail for the same reasons. (Dkt. No. 1 at 6–7, 14–20). Therefore, the Court finds that the Complaint fails to allege facts from which to infer Defendant Aubin's personal involvement in all but the excessive force claim. Accordingly, with the exception of the excessive force claim against Defendant Aubin, all § 1983 claims are dismissed. [5]

[5]    In addition to the failure to allege personal involvement, there are no facts from which it could be inferred that any of the individual Defendants was in a position where he could have intervened to prevent the alleged assault. *See Henry v. Dinelle*, No. 10-cv-456, 2011 WL 5975027, at *4, 2011 U.S. Dist. LEXIS 136583 (N.D.N.Y. Nov. 29, 2011) (explaining that failure to intervene claim requires a showing that the defendant had "a realistic opportunity to intervene and prevent the harm"). Nor are there facts from which it could be plausibly inferred that any Defendant acted with "deliberate indifference to a substantial risk of serious harm to an inmate." *Leath v. County of Orange*, No. 18-cv-7318, 2021 WL 3271852, at *4, 2021 U.S. Dist. LEXIS 142716 (S.D.N.Y. July 30, 2021). In addition, Plaintiff's § 1983 search and seizure, false arrest and imprisonment, malicious prosecution, right to a fair trial, and malicious abuse of process claims suffer from substantive deficiencies and are subject to dismissal for failure to state a claim. Plaintiff's claim that Defendants violated Plaintiff's Fourth Amendment "right to be free from unreasonable searches and seizures," (Dkt. No. 1, ¶ 86), fails. While "inmates retain a limited right to bodily privacy under the Fourth Amendment," in considering an isolated claim that this right was violated, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Harris v. Miller*, 818 F.3d 49, 57-58 (2d Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. at 520, 559, 99 S.Ct. 1861 (1979)); *see also Flood v. Cappelli*, No. 18-

Solano v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 4134793

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 85 of 123

cv-3897, 2019 WL 3778736, at *9, 2019 U.S. Dist. LEXIS 135330 (S.D.N.Y. Aug. 12, 2019) (granting motion to dismiss Fourth Amendment unreasonable search claim, explaining that the "Plaintiff has not pled any facts to suggest that the alleged search was unreasonable or unrelated to legitimate penological interests").

Plaintiff's false arrest and malicious prosecution claims are likewise deficient as there are no allegations that his "period of incarceration was lengthened as a result of new charges brought against him while he was in custody." *Parker v. City of New York*, No. 05-cv-1803, 2008 WL 110904, at *9, 2008 U.S. Dist. LEXIS 791 (S.D.N.Y. Jan. 7, 2008) (granting summary judgment explaining that "[a] plaintiff does not have a claim for false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests").

Plaintiff's Sixth Amendment fair trial claim fails as it appears to center on internal prison disciplinary charges, (*see, e.g.*, Dkt. No. 1, ¶ 64 (outlining charges against Plaintiff including, "Assault on Staff" and "Refusing a Direct Order")), and the Complaint contains no allegations of criminal proceedings. *See Sash v. Zenk*, 439 F.3d 61, 63 (2d Cir. 2006) (Sotomayor, J.) ("[P]rison disciplinary hearings are not treated as "criminal" for purposes of the Sixth Amendment.").

As the Complaint fails to allege "any collateral *objectives* beyond the typical disciplinary objectives of prison sanctions, Plaintiff fails to state a claim for abuse of process." *Fusco v. County of Putnam, New York*, No. 15-8132, 2018 WL 1889070, at *12, 2018 U.S. Dist. LEXIS 65444 (S.D.N.Y. 2018).

Finally, the Court notes that Plaintiff failed to respond to Defendant's motion to dismiss his malicious prosecution, denial of fair trial, and deliberate indifference to safety claims and thus appears to have abandoned these claims. *See, e.g., In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 181 n.15 (S.D.N.Y. 2014) (deeming two claims waived where the plaintiffs, in their opposition, did not contest motion to dismiss those particular claims).

**E. First Amendment Retaliation**

**\*8** In his response to Defendants' motion to dismiss, Plaintiff asserts that, in his Complaint, he "sufficiently state[d] a 1983 retaliation cause of action." (Dkt. No. 15-1, at 19). Defendants counter in their Reply that, because Plaintiff did not list retaliation as a cause of action in his Complaint, he cannot then raise this claim in his Response. (Dkt. No. 16, at 9) ("Plaintiff appears to assert a new First Amendment retaliation claim in Point VIII of his opposition.... Once again, a First Amendment retaliation claim is not asserted in the Complaint."). They argue that "a represented party may not amend his/her pleadings and/or assert new claims through opposition briefs to a dispositive motion," and therefore, "Plaintiff's attempts to do so in this action must be rejected." (*Id.* at 9–10).

In *Quinones v. City of Binghamton*, the Second Circuit found that a District Court committed reversible error when it "declined to consider [Plaintiff's] discrimination claim because it was not 'enumerated' in the complaint" where the complaint's factual allegations "sufficiently 'informed [Defendants] of the factual basis for' a discrimination claim despite [Plaintiff's] failure to enumerate it as a separate cause of action." 997 F.3d 461, 468–69 (2d Cir. 2021). Here, while Plaintiff does not allege a cause of action for retaliation, Plaintiff stated on the first page of his Complaint that "defendants ... committed multiple assault and batteries to plaintiff's person *in retaliation for* complaints plaintiff made to The New York State Department of Corrections." (Dkt. No. 1, at ¶ 2) (emphasis added); *see also* Dkt. No. 1, at ¶ 41 ("Corrections Officers ... conspired to hurt plaintiff in retaliation for his complaints, which led to the instant attack on plaintiff.").

Plaintiff, however, has failed to plausibly allege a retaliation claim. In addition to the group pleading problem, and Plaintiff's failure to identify any individual Defendant who is personally responsible, Plaintiff has not pled facts from which it could be plausibly inferred that the excessive force incident was in retaliation for his complaints. Plaintiff alleged that he was "threatened with violence" by *unidentified* corrections officers, from August 2017 to November 2017; that his family made complaints to DOCCS; and that *unidentified* "Correction Officers at CCF then conspired to hurt plaintiff in retaliation for his complaints," leading to the November 9, 2017 incident. (*Id.* at ¶ 41). There are no facts from which it could be plausibly inferred that any Defendant was aware of Plaintiff's complaints or that the complaints played a substantial part in the assault. *See Gilmore v. Karandy*, No. 20-cv-542, 2020 WL 4673896, at *4, 2020 U.S. Dist. LEXIS

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 86 of 123

Solano v. New York, Not Reported in Fed. Supp. (2021)
2021 WL 4134793

144834 (N.D.N.Y. Aug. 12, 2020); *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003). Accordingly, the claim for retaliation is dismissed.

### F. Fourth Amendment Excessive Force

Defendants seek dismissal of Plaintiff's Fourth Amendment excessive force claim on the ground that Plaintiff is a post-conviction prison inmate and any claim of excessive force must be brought under the Eighth Amendment. (Dkt. No. 6-3, at 19). Plaintiff appears to acknowledge that any excessive force claim must be brought under the Eighth Amendment, but argues that this "inartful[ ]" pleading does not provide a basis for dismissal. (Dkt. No. 15-1, at 15). The Court agrees. As the Supreme Court has explained: "Federal pleading rules ... do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014) (stating "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim") (citations omitted). Accordingly, the Court construes Plaintiff's § 1983 excessive force claim as a claim under the Eighth Amendment, and Defendants' motion to dismiss that claim as to Defendant Aubin is denied.

### G. State Law Claims - New York Correction Law § 24

**\*9** The individual Defendants seek dismissal of Plaintiff's state law assault and battery claim as well as claims Plaintiff brings under New York Civil Rights Law and New York State Constitution on the ground that New York Correction Law § 24 precludes state law claims against them in their personal capacities. (Dkt. No. 6-3, at 16–19). Plaintiff has not responded to this argument.

New York Corrections Law § 24(1) provides in pertinent part:

> No civil action shall be brought in any court of the state ... against any officer or employee of the department ... in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

These provisions have been held to preclude claims against correction officers in their personal capacities in any court "arising out of the discharge of their duties," and mandate that any "claim for damages ... in the discharge of the duties of any officer or employee [of DOCCS], shall be brought and maintained in the court of claims as a claim against the state." *Crump v. Ekpe*, No. 07-cv-1331, 2010 WL 502762, at *18, 2010 U.S. Dist. LEXIS 10799 (N.D.N.Y. Feb. 8, 2010) (citing *Baker v. Coughlin*, 77 F.3d 12, 14–15 (2d Cir. 1996)).

Under New York law, an employee's act is within the scope of employment if "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278, 1281 (N.Y. 1979)). Among the factors the court must consider are "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Id.* (citing *Riviello*, 418 N.Y.S.2d 300, 391 N.E.2d at 1281).

Here, the Complaint alleges the Defendant Warden and Correction Officers worked at Clinton and were on duty at the time of the alleged violations, all of which are alleged to have occurred inside the Clinton facility and as part of the Clinton disciplinary process. (Dkt. No. 1, ¶ 16 (alleging Warden "was responsible for the supervision ... of the uniformed staff in Clinton" and was acting as Warden "[w]hile carrying out the [acts] and omissions alleged herein"), ¶ 24 (alleging Defendant Correction Officers were acting in their capacities as Correction Officers "at all times"), ¶¶ 51–52 (alleging that assault occurred in a hallway outside Clinton's general library), ¶¶ 55, 59, 63 (alleging that the individual Defendants signed false incident and use of force reports leading to the allegedly false charges and "Superintendent Hearing")). As alleged, these actions "are generally foreseeable in the execution of Defendant Correction Officers' duties." *Ames v. New York Dep't of Corr. & Cmty. Supervision*, No. 12-cv-01487, 2015 WL 4126326, at *14, 2015 U.S. Dist. LEXIS 91698 (N.D.N.Y. Mar. 24, 2015) (citing *Riviello*, 47 N.Y.2d at 304, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (stating that where the tortious conduct is a natural incident of employment, it can be generally foreseeable)). Indeed, there are no allegations that would allow a plausible inference that

**Solano v. New York, Not Reported in Fed. Supp. (2021)**

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 87 of 123

2021 WL 4134793

the individual Defendants were acting outside the scope of their employment at the time of the alleged conduct.

 **\*10**  Courts have routinely found that the use of excessive force against an inmate does not render the conduct outside of the scope of employment, unless the force was for purely personal reasons and a "substantial departure from the normal methods of performing his duties." *See Gore v. Kuhlman*, 217 A.D.2d 890, 630 N.Y.S.2d 141, 142 (3d Dep't 1995) ("It is well settled that conduct which occurs during the course of employment will not be considered to have occurred within the scope of employment if, for purely personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties"); *see also Ierardi*, 119 F.3d at 188 (distinguishing this case from others in which "the officers involved were endeavoring to do their job—perhaps poorly—at the time of the charged transgressions," and were therefore acting within the scope of their employment); *Ames*, 2015 WL 4126326, at \*14, 2015 U.S. Dist. LEXIS 91698 (dismissing state law claims against the defendant correction officers on the ground that they were barred by New York Correction Law § 24, finding that the alleged inappropriate filing of misconduct reports and excessive use of force are "not departures great enough to remove [defendants'] actions from within the scope of their employment"). Accordingly, Plaintiff's state law claims against the individual Defendants are dismissed. [6]

6      Defendants also point out that Plaintiff fails to respond to their arguments to dismiss several causes of action. Specifically, Plaintiff fails to respond to the causes of action for assault and battery under New York State Law, malicious prosecution under 42 U.S.C. § 1983, denial of the right to a fair trial under New York State Law, denial of the right to a fair trial under 42 U.S.C. § 1983, and deliberate indifference to safety and failure to protect. As noted in note 3, *supra*, Plaintiff appears to have abandoned these claims.

 **H. Leave to Amend**
Plaintiff has not sought leave to amend or provided a basis to believe that there is a viable basis to amend. His claims against

the State of New York and the individual Defendants in their official capacities cannot be cured with better pleading and his state law claims against the individual Defendants must be dismissed under N.Y. Correct. Law § 24. The Court therefore denies leave to amend those claims. However, to the extent Plaintiff may be able to cure the above-described defects as to the § 1983 claims against Defendants Aubin, Bezio, and Taft in their personal capacities with better pleading, the Court has provided Plaintiffs with an opportunity to seek leave to file a motion to amend the complaint.

 **V. CONCLUSION**
For these reasons, it is hereby

 **ORDERED** that that Defendants' motion to dismiss (Dkt. No. 6) is **DENIED** as to the § 1983 excessive force claim (Fourth Cause of Action) against Defendant Aubin in his personal capacity, and is otherwise **GRANTED** in its entirety; and it is further

 **ORDERED** that if Plaintiff seeks leave to amend the § 1983 claims against Defendants Aubin, Bezio, or Taft, he must meet and confer with Defense counsel regarding any proposed amendment, and submit a status report by October 1, 2021. In this report, Plaintiff must indicate defense counsel's position and submit a proposed amended complaint. Defendant may file a status report in response by October 15, 2021. The Court will, if necessary, schedule a telephone conference to discuss these issues and/or set a briefing schedule once the parties have filed their status reports; and it is further

 **ORDERED** that if Plaintiff does not file a status report seeking leave to amend by October 1, 2021, all of the named Defendants other than Aubin will be terminated and Plaintiff's claim against Defendant Aubin under 42 U.S.C. § 1983, for excessive force in violation of the Eighth Amendment will proceed.

 **IT IS SO ORDERED.**

 **All Citations**

Not Reported in Fed. Supp., 2021 WL 4134793

---

                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Kolbe & Kolbe Millwork, Co., Inc. v. Manson Ins. Agency, Inc., W.D.Wis., October 25, 2013

2012 WL 627238

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Tyrone HOLMES and Samuel's Temple

Church of God in Christ, Inc., Plaintiffs,

v.

The ALLSTATE CORPORATION, Bryan M. Harris,

a.k.a. Bryan Michael Harris, Bluebox Entertainment,

Inc., Harris Financial Inc., Harris Financial Insurance

Inc., Associate Management LLC, B.M. Harris Inc.,

First One Distributors, Inc., I Am Global Ent. LLC,

Harris Financial Insurance Services, Defendants.

No. 11 Civ. 1543(LTS)(DF).

|

Jan. 27, 2012.

### REPORT AND RECOMMENDATION

DEBRA FREEMAN, United States Magistrate Judge.

**\*1 TO THE HONORABLE LAURA T. SWAIN, U.S.D.J.:**

In this diversity action, plaintiffs Tyrone Holmes ("Holmes") and the church of which he has claimed to be the Executive Pastor, Samuel's Temple Church of God in Christ, Inc. (the "Church" or "Samuel's Temple") (collectively, "Plaintiffs") have asserted a variety of state-law claims against defendants the Allstate Corporation ("Allstate"), Bryan M. Harris ("Harris"), and a number of corporate entities of which Harris is purportedly the principal (the "Harris Entities"[1]) (collectively, "Defendants"), essentially alleging that Defendants mismanaged or stole more than half a million dollars that Plaintiffs had entrusted to Defendants for investment or other purposes.

[1] The Harris Entities include: Bluebox Entertainment, Inc. ("Bluebox"), Harris Financial, Inc. ("HF"), Harris Financial Insurance, Inc. ("HFI"), B.M. Harris, Inc. ("BMH"), First One

Distributors, Inc. ("First"), Associate Management LLC ("Associate"), I Am Global Ent. LLC, a/k/a Attracknaphobia, LLC ("IAGE"), and Harris Financial Insurance Services, Inc. ("HFIS").

Currently pending before the Court for a report and recommendation are five separate motions:

(1) a motion by Allstate to dismiss Plaintiffs' Amended Complaint, as against Allstate (Dkt.18);

(2) a cross-motion by Plaintiffs for leave to file a Second Amended Complaint (Dkt.33);

(3) a motion by Allstate against Plaintiffs for Rule 11 sanctions for bringing a frivolous lawsuit against Allstate (Dkt.27);

(4) a motion by Plaintiffs against Allstate for Rule 11 sanctions, for making purportedly false and unsupported statements to the Court in motion papers (Dkt.51); and

(5) a motion by Harris and the Harris Entities (collectively, the "Harris Defendants") to dismiss Plaintiffs' Amended Complaint as against them (see Dkt. 55).[2]

[2] The Harris Defendants never actually filed a "motion" to dismiss the Amended Complaint; rather, they only filed a memorandum, with two attached declarations, in support of such a motion. The Court's Docket Clerk advised counsel that a memorandum and declarations in support of a motion should not be filed until a formal "motion" had been filed (see Docket entries following Dkt. 56), but it does not appear that counsel ever complied with the Court's rules. Nonetheless, given the nature of the arguments raised by the Harris Defendants in their submission, which relate to the adequacy of Plaintiffs' pleading, this Court has determined that it would be in the interest of effective case management to deem that submission a motion and to consider it as such.

For the reasons set forth below, I respectfully recommend that Allstate's motion to dismiss (Dkt.18) be granted and that Plaintiffs' claims against Allstate be dismissed with prejudice. I further recommend that Plaintiffs' cross-motion to amend (Dkt.33) be denied, as nothing in Plaintiffs' proposed amended pleading would cure the defects in the Amended Complaint. As for the pending sanctions motions, I recommend that Allstate's motion against Plaintiffs (Dkt.27)

2012 WL 627238

be granted and that Plaintiffs' motion against Allstate (Dkt 51) be denied, as Plaintiffs' claims against Allstate are patently frivolous and Plaintiffs' sanctions motion against Allstate is procedurally defective and meritless. On these motions, I recommend that Plaintiffs' counsel be ordered to pay to Allstate certain costs it has incurred, as set forth below. Finally, I recommend that the motion by the Harris Defendants to dismiss Plaintiffs' claims against them (Dkt.55) be granted, without prejudice to Plaintiffs' filing a Second Amended Complaint that satisfies the requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure, with respect to Plaintiffs' claims against these defendants.

## BACKGROUND

### A. *The Amended Complaint*

Initially proceeding *pro se,* Holmes filed the initial Complaint in this matter on his own behalf. (*See* Complaint, dated Mar. 7, 2011 (Dkt.1).) Holmes then retained as counsel Eric Suffin, Esq. ("Suffin"), of the Law Firm of Eric Andrew Suffin, and, on June 1, 2011, Suffin filed an Amended Complaint, on behalf of both Holmes and the Church. (*See* Amended Complaint, dated May 17, 2011 ("Am.Compl") (Dkt.17).)

### 1. *Factual Allegations*

**\*2**  At its core, the Amended Complaint alleges that Holmes and the Church entrusted Harris with more than half a million dollars, that Harris promised to make certain investments and purchases with the funds and also promised certain benefits to Holmes and his family, and that Harris broke these various promises. The Amended Complaint alleges the following facts, which are accepted as true for purposes of the motions to dismiss:

Plaintiff Samuel's Temple is a non-profit religious organization that formerly owned a church in East Harlem, New York. (*Id.* at ¶¶ 6, 7.) According to the Amended Complaint, Holmes is the Executive Pastor and Music Director of Samuel's Temple. (*Id.* at ¶ 3.) Defendant Harris is an Allstate agent and franchisee (*id.* at ¶ 10), who also operates defendant HFIS (*id.* at ¶ 13). The Amended Complaint does not describe the nature of HFIS or the other Harris Entities, other than to allege that they are all "alter egos" of one another. (*Id.* at ¶¶ 15–22.)

In 2006, Plaintiffs received $1 million from a developer (*id.* at ¶ 27), and Defendants suggested that Plaintiffs' capital

be invested with them (*id.* at ¶ 32).[3] Defendants promised Plaintiffs at least a 15–20% profit within two years of their investment. (*Id.* at ¶ 33.) Harris was to serve as Plaintiffs' investment advisor and business manager for their capital investments, and Defendants proposed investments in real estate, insurance, an entertainment company (defendant Bluebox), and various securities and derivatives. (*Id.* at ¶¶ 34, 37, 49.) In connection with their proposal, Defendants also allegedly promised many personal benefits for Holmes, including housing for him and his family in Georgia, insurance for him and his family, and appointments to several executive positions at Bluebox. (*Id.* at ¶¶ 38, 47, 49.)

[3]   The Amended Complaint predominately refers to "plaintiffs," without distinguishing between Samuel's Temple and Holmes. (*See generally* Am. Compl.) Similarly, throughout the Amended Complaint, Plaintiffs refer generally to actions of the "defendants," without differentiating among Allstate, Harris, or any of the Harris Entities. (*See generally id.*)

On the basis of these representations, Plaintiffs allegedly invested approximately $513,000.[4] (*Id.* at ¶ 53.) More specifically, Plaintiffs made a series of wire transfers to Bluebox, from August 2006 through February 2007, in amounts that totaled approximately $500,000.[5] (*Id.* at ¶¶ 56–58, 60.) Plaintiffs also invested approximately $15,000 in cash with Defendants, and made a $28,000 down payment for a piece of real estate. (*Id.* at ¶¶ 55, 61.) Defendants sent Plaintiffs promissory notes regarding amounts of $320,000 and $50,000, promising repayment of these principal amounts, together with interest, at a rate of 8.5% per annum on the unpaid balance, and promising balloon payments in the form of cashier's checks. (*Id.* at ¶ 59.) Despite demand, Plaintiffs allege that they have not received any money back from their investments with Defendants, nor have they received an accounting regarding their investments. (*Id.* at ¶¶ 69–72.) As described more specifically below, Plaintiffs also allege that Defendants did not follow through on their various alleged promises.

[4]   Plaintiffs generally allege that they invested approximately $513,000 with Defendants (*id.* at 53), but the more specific allegations concerning Plaintiffs' investments suggest a total of $543,000 (*see id.* at ¶¶ 56–58, 60 (alleging various wire transfers to Bluebox in amounts totaling $500,000);

Holmes v. Allstate Corp., Not Reported in F.Supp.2d (2012)
Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 90 of 123
2012 WL 627238

¶ 61 (alleging cash investment of $15,000); ¶ 55 (alleging downpayment of $28,000 for real estate).

5     On or about August 17, 2006, Plaintiffs transferred approximately $80,000 to Bluebox; on or about August 21, 2006, Plaintiffs transferred approximately $50,000 to Bluebox; on or about September 12, 2006, plaintiffs transferred approximately $320,000 to Bluebox; and on or about February 3, 2007, Plaintiffs transferred approximately $50,000 to Bluebox. (*See id.* at ¶¶ 56–58, 60.)

### a. *Blue Box*

**\*3** Holmes alleges that, as part of the alleged investment deal, he was promised stock and a number of positions at the entertainment company Bluebox. (*Id.* at ¶ 47.) Holmes was allegedly to become the Chief Executive Officer of Bluebox, as well as its Director of Music Production and Video Production. (*Id.*) Holmes was also to be appointed as Musician, Webmaster, Digital Music Engineer, and Songwriter for Bluebox. (*Id.*) Holmes and Samuel's Temple, together, were to become 51% stockholders of Bluebox. (*Id.*) Harris agreed to reduce his own stock holdings in Bluebox to only 49%, although he promised to serve as Bluebox's Chief Financial Officer and Business Manager. (*Id.* at ¶ 48.) Finally, Defendants promised to file "any required annual tax documents relating to Bluebox, and plaintiff Holmes's personal income taxes as a salaried corporate officer and employee of Bluebox ." (*Id.* at ¶ 44.)

According to the Amended Complaint, Defendants have admitted to omitting Plaintiffs' names from documents regarding control of Bluebox. (*Id.* at ¶ 76.)

### b. *Real Estate*

#### i. *921 Moreland Avenue*

According to Plaintiffs, part of their money was supposed to be used to buy a house that, at the time, belonged to Harris, and Holmes and his family were to live in it. (*Id.* at ¶¶ 47, 55 .) Under the agreement, Samuel's Temple would become the titleholder of the property, which was located at 921 Moreland Avenue, in Atlanta, Georgia. (*Id.* at ¶¶ 47, 55.) Defendants allegedly represented that they would secure a purchase mortgage for Plaintiffs and make mortgage payments with Plaintiffs' capital investment. (*Id.* at ¶ 77.) Plaintiffs allege that on or around March 16, 2006, Plaintiffs

gave Defendants $28,000 as a down payment on this house. (*Id.* at ¶ 55.)

On or around December 28, 2007, Harris sent Plaintiffs an email indicating that the Moreland Avenue property, which Holmes and his family were by then occupying, was in danger of being foreclosed. (*Id.* at ¶ 79.)

Then, at some point in 2008, while Holmes was in New York, Harris allegedly entered the Moreland Avenue property, which Holmes was still using as a residence, and removed personal property belonging to Holmes, including a rifle, hard drives, two speakers, video footage, sound tools, documents, video masters, and music masters. (*Id.* at ¶ 80.) A person believed to be an agent of the City of Atlanta Police Department allegedly stood outside of the Moreland Avenue property while Harris entered the home and left with Holmes' personal property. (*Id.* at ¶ 80.)

At a later point in 2008, the house at 921 Moreland Avenue was foreclosed and Plaintiffs were evicted. (*Id.* at ¶ 81.) Plaintiffs allege that, despite the representations made by Defendants, Defendants never obtained a purchase mortgage for Plaintiffs for the Moreland Avenue property, and Defendants failed to use Plaintiffs' capital investment to make mortgage payments on that property. (*Id.* at ¶ 77.)

#### ii. *Other Allegations Regarding Real Estate*

**\*4** HFIS and Harris, as an agent of Allstate, had an office at 1133 Forest Parkway, in Forest Park, Georgia. (*Id.* at ¶ 14.) In April of 2007, Defendants told Plaintiffs that Defendants had sold the mall that contained this office. (*Id.* at ¶ 67.) The Court is unclear as to whether Plaintiffs are claiming any interest in this mall.

Plaintiffs also allege that "[i]n or about 2008, defendants represented to plaintiffs that defendants bought a parcel and properties for the benefit of plaintiffs and lost the parcel and properties." (*Id.* at ¶ 68.) It is not clear to the Court whether this allegation refers to the property at 921 Moreland Avenue, discussed above, or to another piece of property.

### c. *Insurance*

Plaintiffs allege that Defendants said that they would purchase and maintain life insurance for Holmes and his family. (*Id.* at ¶¶ 49, 39.) Although Defendants later represented that they had purchased a $5,000 life insurance policy, this policy allegedly lapsed in November of 2010. (*Id.* at ¶¶ 62, 63, 82.)

According to Plaintiffs, Defendants also represented that they had purchased "business insurance policies" for the benefit of Plaintiffs (*id.* at ¶ 62), but the Amended Complaint does not indicate whether Defendants actually made such purchases, or, if so, whether these insurance policies also lapsed.

### d. *Loans to an Elected Representative*

Plaintiffs allege that Defendants loaned $20,000 to Ron Sailor Jr. (identified in the Amended Complaint as a Georgia Congressman) [6] from Plaintiffs' capital investment. (*Id.* at ¶ 64.) Plaintiffs do not indicate whether this loan was authorized by Plaintiffs or whether the loan was repaid.

[6]     The Court takes judicial notice of the fact that Walter Ronnie Sailor, Jr., was a Georgia state assemblyman (not a member of the U.S. Congress), who left office after pleading guilty to federal wire fraud and money laundering charges. *See* http://www.justice . gov/usao/gan/press/2008/06–17–08.pdf

### e. *Documents*

At some point, Defendants allegedly sent Plaintiffs a large collection of Allstate documents containing personal information of thousands of Allstate policyholders and other policyholders. (*Id.* at ¶ 29.) Plaintiffs assert that they stored these documents for nine years, without compensation, incurring approximately $10,080 in storage costs. (*Id.* at ¶ 30.) [7]

[7]     At the initial case conference before this Court on July 26, 2011, the parties informed the Court that Holmes was in possession of certain Allstate documents, which contained confidential information related to Allstate's current or former policyholders (the "Allstate Documents"). According to Holmes' counsel, these documents had been given to Holmes, years ago, by Harris. (*See* July 26, 2011 Rule 16 Conference Transcript, at 12, Ex. D to Declaration of Elizabeth D. Schrero in Opposition to Plaintiffs' Motion for Sanctions Under Rule 11, dated Oct. 17, 2011 ("10/17/11 Schrero Decl.") (Dkt.57).) The Court directed Holmes to transfer the Allstate Documents to Allstate's counsel, and directed Allstate to maintain these documents in its possession and to preserve them for use as potential evidence in this case. (*See*

Scheduling Order, dated Aug. 4, 2011 (Dkt.30).) At the following case conference on November 1, 2011, the document transfer having been made, Allstate's counsel informed the Court that, among the transferred documents were certain documents in which Allstate claimed no interest, and which appeared, on their face, to be documents, such as ledgers, related to the operations of Harris's business(es). This Court directed Allstate to return that subset of the transferred documents (the "Harris Documents") to counsel for Holmes, and directed counsel for Holmes to maintain the Harris Documents as "Attorneys Eyes Only." This Court further directed counsel for Holmes either to deliver copies of the Harris Documents to counsel for Harris or to make the documents available to Harris's counsel for inspection and copying. (*See* Scheduling Order, dated Nov. 4, 2011 (Dkt.61).)

### 2. *Legal Claims and Alleged Damages*

Plaintiffs assert nine claims against Defendants. One of these claims—for *prima facie* tort—is asserted solely against Harris. The eight remaining claims are brought against all Defendants. These claims include: (1) conversion; (2) fraud; (3) violation of New York Debtor and Creditor Law § 276; (4) negligent misrepresentation; (5) promissory estoppel; (6) unjust enrichment; (7) breach of contract; and (8) negligent infliction of emotional distress.

Plaintiffs demand $10 million in damages for the death of a Samuel's Temple member (whose death was allegedly "[d]irectly related to the conduct of defendants"), loss of business opportunities, loss of the ability to operate a school, harm to reputation, financial distress, harm to familial relations, and loss of employment at Bluebox. (Am. Compl. at ¶¶ 15, 86, 87, 88, 89, 94.)

### B. *Motions before the Court*

### 1. *Allstate's Motions To Dismiss and for Sanctions*

**\*5** On June 28, 2011, Allstate moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Notice of Motion To Dismiss Plaintiffs' Amended Complaint as Against Defendant the Allstate Corporation ("Allstate Mtn. To Dismiss"), dated June 28, 2011 (Dkt.18).) Allstate seeks dismissal on the grounds that the Amended Complaint consists of improper "group" allegations against "defendants," that it alleges no direct action by Allstate and no conduct by Allstate that could make

it liable for the actions of any of the other defendants, and that each individual claim fails for additional and independent reasons. (*See generally* Allstate Mtn. To Dismiss.)

Allstate has also filed a motion for sanctions against Plaintiffs, as well as their counsel, under Rule 11 of the Federal Rules of Civil Procedure and based on the Court's inherent authority. (*See* Notice of Motion For Sanctions Under Rule 11 ("Allstate's Sanctions Mtn."), dated July 29, 2011 (Dkt.27).) In its sanctions motion, Allstate contends that, as against Allstate, the Amended Complaint is frivolous and without any factual or legal basis. (*Id.*)

### 2. *Plaintiffs' Motions for Leave To Amend and for Sanctions*

On August 5, 2011, Plaintiffs opposed Allstate's motion to dismiss and filed a cross-motion for leave to file a Second Amended Complaint. (Notice of Cross–Motion, dated Aug. 5, 2011 (Dkt.33).) Plaintiffs argue that, because Harris was an agent and franchisee of Allstate, Allstate is liable for the acts alleged in the Amended Complaint. (Plaintiff's Memorandum of Law in Opposition to Defendant the Allstate Corporation's Motion To Dismiss Plaintiff's Amended Complaint and in Support of Plaintiff s Cross–Motion for Leave To File a Second Amended Complaint ("Pl. Opp. Mem. to Allstate Mtn."), dated Aug. 5 (Dkt.34 [8] ), at 4.) Primarily on this basis, Plaintiffs contend that each of their eight claims against Allstate is well-founded. (*Id.* at 6–11.) Nonetheless, Plaintiffs also request leave of Court to file the proposed Second Amended Complaint that they submit with their cross-motion. (*Id.* at 11.)

[8]     Through an apparent filing error, Plaintiffs' opposition memorandum was filed, in various parts, as Docket entries 34, 36 and 38.

On September 30, 2011, Plaintiffs filed a motion for sanctions against Allstate. (Notice of Motion, dated Sept. 30, 2011 (Dkt.51) .) Plaintiffs allege that certain statements contained in Allstate's memoranda in support of its two motions, and in a Declaration supporting Allstate's motion to dismiss and opposing Plaintiffs' cross-motion for leave to amend, are without evidentiary support. (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Rule 11 Sanctions, dated Sept. 30, 2011 ("Pl. Sanctions Mem.") (Dkt.53), at 2.)

### 3. *Motions of the Harris Defendants*

On October 11, 2011, the Harris Defendants filed their own motion to dismiss the Amended Complaint. (*See* Memorandum of Law in Support of the Motion of Defendants, Bryan M. Harris a/k/a Bryan Michael Harris, Bluebox Entertainment, Inc., Harris Financial Insurance Services, Inc., Harris Financial, Inc., Harris Financial Insurance, In. Associate Management LLC, B.M. Harris Inc., First One Distributors, Inc., I Am Global Ent. LLC a/k/a Attracknaphobia, LLC To Dismiss The Amended Complaint ("Harris Mtn. To Dismiss"), dated Oct. 9, 2011 (Dkt.55).) The Harris Defendants contend that Plaintiffs have no standing to bring their claims; that, as a general matter, the Amended Complaint is inadequately pleaded; and that the nine claims also fail for independent reasons. (*See id.*)

**\*6**  In opposition to the Harris Defendants' motion, Plaintiffs argue that each of their claims against these defendants is sufficient as pleaded, and Plaintiffs also submit additional documents related to the issue of standing and ask for leave to file an "Alternative Second Amended Complaint," which they submit with their opposition papers. (*See* Plaintiffs' Memorandum of Law in Opposition to Harris Defendants' Motion To Dismiss ("Pl. Opp. Mem. to Harris Mtn."), dated Nov. 10, 2011 (Dkt.64); *see also* Affidavit of Tyrone Holmes, dated Nov. 7, 2011 (Dkt.65); *see also* Declaration of Eric Andrew Suffin in Opposition to Harris Defendants' Motion To Dismiss, dated Nov. 10, 2011 ("11/10/11 Suffin Decl.") (Dkt.66).)

### *DISCUSSION*

### I. *ALLSTATE'S MOTION TO DISMISS AND PLAINTIFFS' CROSS–MOTION TO AMEND*

### A. *Applicable Legal Standards*

#### 1. *Rule 12(b)(6)*

A case is subject to dismissal under Rule 12(b)(6) where the complaint is not legally sufficient to state a claim upon which relief can be granted. *See Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007) (citation omitted); *accord Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). A court should grant dismissal where, after considering the plaintiff's allegations in this generous light, "it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir.2006) (citation omitted). Rather, in order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### 2. *Rule 15(a)*

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of complaints and provides that the court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). A motion to amend should be denied, however, "if there is an 'apparent or declared reason—such as undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.' " *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

**\*7** An amendment is considered futile when the proposed new claim would not withstand a motion to dismiss, either for failure to state a cause of action, or on another ground. *See Milanese v. Rust-oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001). Thus, if a proposed amendment would be subject to "immediate dismissal" on some ground, the Court will not permit the amendment. *See Jones v. NY. State Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999). If, on the other hand, the party seeking to amend "has at least colorable grounds for relief, justice ... require[s] that its motion be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 783 (2d Cir.1984) (citation omitted).

### B. *Adequacy of Plaintiffs' Allegations Against Allstate*

Allstate makes a number of arguments for dismissing the claims against it. As an initial matter, Allstate argues that

in order to state a claim against it, Plaintiffs would have to proceed under a theory that Harris had apparent authority to act on Allstate's behalf, but that Plaintiffs have not pleaded any facts sufficient to support the conclusion that Harris had such authority. Allstate also argues that the Amended Complaint fails to satisfy Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. Finally, Allstate advances arguments for dismissing each of the eight individual claims against it on independent grounds. As this Court agrees that Plaintiffs have not pleaded facts sufficient to support any claim based on apparent authority, on which all of Plaintiffs' claims necessarily rest, I recommend that Allstate's motion to dismiss be granted on that ground, without regard to Allstate's other arguments.

### 1. *Lack of Allegations of Apparent Authority*

The Amended Complaint contains few allegations that relate, in particular, to Allstate. Instead, as noted above (*see* n. 3, *supra* ), Plaintiffs claim that "defendants" made and broke a range of promises. At best, Plaintiffs' use of the term "defendants" throughout the Amended Complaint is vague. At other times, Plaintiffs' method of group pleading is incoherent or illogical.[9] Given that Plaintiffs do not allege that Allstate itself engaged in any activity that would give rise to independent liability, Allstate argues that Plaintiff's theory of liability must be premised on Harris's actions and the doctrine of apparent authority. Under this doctrine, as explained by the New York Court of Appeals,[10] liability against a principal may arise if the principal's affirmative conduct causes a third party reasonably to believe that an agent has authority to act on behalf of the principal:

[9]  
For example, the Amended Complaint alleges that "Plaintiffs and defendants agreed that plaintiff Holmes would be Chief Executive Officer, Director of Music Production and Video Production, Musician, Webmaster, Digital Music Engineer and Songwriter, of, for and with defendant Bluebox, while living in real estate purchased with plaintiffs' capital ... plaintiff Church to benefit from potential profits of defendant Bluebox, plaintiffs to be 51% stockholders of defendant Bluebox." (*Id.* at ¶ 47.) It is difficult to understand how defendant Allstate could have made such promises. As another example, Plaintiffs allege that "[i]n or about April, 2007 defendants told plaintiffs that defendants sold the mall that defendants' Forest Park, Georgia office was located in ." (*Id.* at ¶ 67.) Construing

the term "defendants" to include all of the Harris Entities, as well as Allstate, would make little sense in this instance because defendants Bluebox, HF, HFI, BMH, First, Associate, and IAGE are not alleged to have had any connection to an office in Forest Park, Georgia, nor does it seem likely that these defendants or Allstate would have been involved in the alleged sale of the mall that contained this office. (*See id.* ¶¶ 12–14.)

10    In this diversity action, plaintiff Holmes alleges that he is a New York resident, and Samuel's Temple also appears to be located in New York. (*See* Am. Compl. at ¶¶ 2, 6, 7.) Defendant Harris is alleged to be a resident of Georgia, and the Harris Entities allegedly have principal places of business, or are incorporated, in Georgia. (*See id.* at ¶¶ 11, 12, 14, 23.) Defendant Allstate is alleged to have its principal place of business in Illinois. (*See id.* at ¶ 9.) The subject matter of the alleged contract(s) at issue was located in Georgia, and the alleged promises seem to have been made while Harris was in his Georgia office. (*See id.* at ¶¶ 37, 38, 54, 79.) Although this could potentially raise choice of law issues, the parties' submissions all cite New York case law. Such "implied consent ... is sufficient to establish choice of law." *Khubani v. Ionic White, Inc.,* No. 05 Civ. 3706(DC), 2008 U.S. Dist. LEXIS 30610, at *3 (S.D.N.Y. Apr. 3, 2008) (citing *In re Tehran–Berkeley Civil & Environmental Engineers,* 888 F.2d 239, 242 (2d Cir.1989)); *see also Global Switching Inc. v. Kasper,* No. CV–06–412 (CPS), 2006 U.S. Dist. LEXIS 44450, at *32 n. 10 (E.D.N.Y. June 29, 2006) ("In any event, where, as here, the parties are silent about the choice of law question, the Court may apply the law of the forum .") (citing *Michele Pommier Models v. Men Women N.Y. Model Mgmt.,* 14 F.Supp.2d 331, 336 (S.D.N.Y.1998)).

Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority. Rather, the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal-not the

agent. Moreover, a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable.

**\*8** *Hallock v. State of New York,* 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984) (internal quotations and citations omitted); *see also Ford v. Unity Hospital,* 32 N.Y.2d 464, 472–73, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973) ("The apparent authority for which the principal may be held liable must be traceable to him; it cannot be established by the unauthorized acts, representations or conduct of the agent"). Here, Allstate argues that Plaintiffs have not sufficiently alleged any facts that could support a finding that Harris was authorized by Allstate to make the promises or engage in the transactions that form the basis of Plaintiffs' claims.

Plaintiffs do not deny that they are proceeding against Allstate on a theory of apparent authority (*see* Pl. Opp. Mem. to Allstate Mtn. at 4), but they maintain that their allegations are sufficient to implicate Allstate under that theory. Specifically, the Amended Complaint contains the following allegations regarding the nature of Allstate's business, its relationship with Harris, and the role that Plaintiffs were supposedly led to believe that Allstate would take with respect to Plaintiffs' money and investments:

- Allstate "is purportedly an insurance, retirement, investment, and banking company, purporting to offer Asset Protection, Wealth Transfer, Family Protection Insurance, Financial Products, Asset Management and Accumulation, and Asset Management Short-term Financial Objectives." (Am. Compl. at ¶ 8.)

- Harris "was and is an Agent and Franchisee with, of and for defendant Allstate." (*Id.* at ¶ 10, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

- "[A]s an Agent of defendant Allstate[,] defendant Harris offered Allstate financial services, while simultaneously operating under the corporate name of defendant Harris Financial Insurance Services, Inc." (*Id.* at ¶ 13, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

- "At the time the plaintiffs received one million dollars in or about 2006 plaintiff Holmes believed that defendant Harris operated the most successful Allstate operation/ business in the southeast region of the United States of America for the previous ten years, pursuant to representations to that effect by defendants." (*Id.* at ¶ 31, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

• "Defendants represented to plaintiffs that capital invested by plaintiffs with defendants would be invested with defendant Allstate in the name of plaintiff Church." (*Id.* at ¶ 36, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

• "Defendants Harris, HFIS, Bluebox, HF, HFI, BMH, First, Associate, and IAGE used the Allstate name and logo to convince plaintiffs to invest with defendants, assuring plaintiffs that the investments were to be with Allstate."(*Id.* at ¶ 46, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

• "Defendants represented that plaintiffs' capital investment would be maintained and supervised by Allstate." (*Id.* at ¶ 52, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

• "On the basis of the representations made to plaintiffs by defendants, and relying upon defendants' advice and representation that Allstate was exercising certain controls and safeguards upon defendant Harris, plaintiffs invested approximately five hundred and thirteen thousand dollars with defendants." (*Id.* at ¶ 53, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

**\*9** • Harris "openly conducted plaintiffs' business and discussed plaintiffs' financial transactions during business hours while in Allstate offices, acting as an Agent of Allstate." (*Id.* at ¶ 54, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

• "Defendants represented to plaintiffs that defendant Allstate was the entity that sold certain securities and derivatives, life insurance policies and business insurance policies to plaintiffs." (*Id.* at ¶ 65, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

Plaintiffs also generally allege that each defendant is an "alter ego" of the other defendants. (*Id.* at ¶¶ 15–22, 346 N.Y.S.2d 238, 299 N.E.2d 659.)

Yet, while these allegations may suggest that Harris, holding himself out as an Allstate agent, made certain representations to Plaintiffs regarding Allstate's involvement in the planned investment transactions, missing from the Amended Complaint is any allegation that Allstate *itself* engaged in any affirmative conduct that could have caused Plaintiffs reasonably to believe that Harris had the authority to bind Allstate to promises regarding how Plaintiffs' money would be spent or invested. *See Imburgio v. Toby,* 82 A.D.3d 653, 920 N.Y.S.2d 43, 43 (1st Dep't 2011) (granting

motion to dismiss where plaintiffs failed to allege facts that would impute liability to defendant, holding that, "[w]hile plaintiffs asserted that defendant's employee was vested with apparent authority based upon the employee's representations concerning the transactions at issue, such authority may arise only from the conduct of the principal, not the agent").

Despite its repeated references to actions undertaken by "defendants," the Amended Complaint implies that Harris made the promises and engaged or failed to engage in the conduct that underlies this action. (*See* Am. Compl. at ¶ 54 ("Defendant Harris openly conducted plaintiffs' business and discussed plaintiffs' financial transactions during business hours while in Allstate offices, acting as an Agent of Allstate.").) Indeed, even Plaintiffs' allegations that refer generally to the conduct of "defendants" suggest, in context, that Harris was the actor. For example, when Plaintiffs allege that they made wire transfers to Bluebox, a Harris company, "relying upon defendants' advice and representation that Allstate was exercising certain controls and safeguards" (*id.* at ¶¶ 56–58), Plaintiffs identify no action or words *by Allstate* regarding its involvement with Bluebox, much less any action or words by Allstate that could have led Plaintiffs to have the reasonable belief that Allstate was exercising any such "controls and safeguards." In short, the Amended Complaint contains no allegations that Allstate did anything to make Plaintiffs believe that Harris had the authority to bind Allstate to any promises or that Harris's promises were being made on Allstate's behalf. In fact, neither the Amended Complaint nor common sense suggest any basis on which a reasonable person could have believed that Harris had the authority to bind Allstate to the types of promises alleged. [11]

[11]    For example, it is nearly inconceivable that Allstate would have authorized the transfer to Holmes of a large volume of Allstate documents containing confidential information of other policyholders, or that Allstate would—or even could—have authorized the loan of Plaintiffs' funds to a state legislator or the promise of Holmes' employment with Harris's entertainment company.

**\*10** In opposition to Allstate's motion to dismiss, Plaintiffs rely on *Kirschner v. KPMG LLC,* 15 N.Y.3d 446, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010), for the proposition that "[a] corporation must ... be responsible for the acts of its authorized agents even if particular acts were unauthorized." *Id.* at 465, 912 N.Y.S.2d 508, 938 N.E.2d 941 (cited in Pl. Opp. Mem., at 4.) Plaintiffs' reliance on *Kirschner* is

misplaced, as, even assuming that Plaintiffs have adequately pleaded, or can plead, that Harris was an authorized Allstate *insurance agent,* "[t]he mere creation of an agency for some purpose does not automatically invest the agent with 'apparent authority' to bind the principal without limitation." *Ford v. Unity Hospital,* 32 N.Y.2d 464, 472–73, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973). Rather,

> [a]n agent's power to bind his principal is coextensive with the principal's grant of authority. One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority. Upon failure to properly determine the scope of authority, and in the face of damages resulting from an agent's misrepresentations, 'apparent authority' is not automatically available to the injured third party to bind the principal ... The very basis of the doctrine of apparent authority indicates that the principal can be held liable under the doctrine only where he was responsible for the appearance of authority in the agent to conduct *the transaction in question.*

*Id.* (internal citations and quotations omitted) (emphasis added). Here, other than stating, in general terms, that Allstate, as a company, offers a number of financial services (Am. Compl. at ¶ 8), Plaintiffs have made no factual allegations to support their claim that Allstate ever authorized Harris to act as its agent for any purpose other than, perhaps, the placement of insurance. Plaintiffs' bare allegation that Harris was an "agent" of Allstate is simply insufficient to plead liability by Allstate, under the doctrine of apparent authority, for the wide variety of claims Plaintiffs assert.

Finally, although Plaintiffs allege that Harris was supposed to provide insurance policies for them through Allstate, the Amended Complaint does not allege any failure by Allstate to provide insurance [12] or to honor any insurance obligations. Nor do Plaintiffs allege that Allstate made any false statements regarding the terms of any policy issued to them or regarding whether such a policy had been renewed. Rather, to the extent any insurance policy is even implicated in the Amended Complaint, Plaintiffs merely appear to complain that Harris failed to use Plaintiffs' funds to make regular payments of policy premiums, after promising that he would. Again, this does not suggest any culpable conduct by Allstate.

[12]    The Amended Complaint alleges, in fact, that a life insurance policy for Holmes and his children was issued (*id.* at ¶ 82), although Plaintiffs do not make clear whether this policy was issued by Allstate or by another carrier.

In sum, the Amended Complaint fails to allege *any* factual basis for Plaintiffs' position that Harris had apparent authority to bind Allstate with respect to any of the many investment schemes alleged in this case. It also fails to allege *any* conduct, whatsoever, by Allstate that could have induced reliance on the part of Plaintiffs. While Plaintiffs allege that "defendants" failed to keep numerous promises, Plaintiffs do not specify that a single promise was ever made or sanctioned by Allstate. For these reasons, Plaintiffs' claims against Allstate cannot stand, and the Amended Complaint should be dismissed, as against Allstate, under Rule 12(b) (6), for failure to state a claim. [13]

[13]    As the Amended Complaint is defective for the reasons stated herein, the Court need not address Allstate's alternative arguments for dismissal.

### 2. Futility of Plaintiffs' Proposed Second Amended Complaint

**\*11**  In response to Allstate's motion to dismiss, Plaintiffs seek leave to file a Second Amended Complaint, presumably in an attempt to cure any pleading defect. Plaintiffs, however, have actually submitted three different versions of a proposed Second Amended Complaint to the Court. Through what the Court assumes was attorney error, Plaintiffs filed one version of a proposed amended pleading on the Court's Electronic Case Filing ("ECF") system, but apparently served on Allstate (and submitted to this Court as a "courtesy copy") a nonconforming version. (*See* Second Amended Complaint ("2d Am. Compl."), Ex. A to Declaration of Eric Andrew Suffin, dated Aug. 5, 2011 ("8/5/11 Suffin Decl.") (Dkt.35); *see also* Service Copy of Second Amended Complaint ("Served 2d Am. Compl."), Ex. A to 8/5/11 Suffin Decl.) Then, later, in response to the Harris Defendants' separate motion to dismiss, Plaintiffs filed yet a third version, styled as an "Alternative Second Amended Complaint." (*See* Alternative Second Amended Complaint

("Alt.2d Am.Compl."), Ex. A to 11/10/11 Suffin Decl.) With regard to allegations concerning Allstate, all three versions differ only slightly from the Amended Complaint, and none of the versions cure the defects discussed above, as none allege facts sufficient to show that Harris had apparent authority to bind Allstate to any of the alleged promises.

In their proposed amended pleadings, Plaintiffs first add an allegation that, outside Harris's Forest Park office, there were signs that displayed (1) the Allstate logo, (2) a telephone number for "Forest Park Allstate," and (3) the names of both Harris and defendant HFIS. (*See* 2d Am. Compl. at ¶ 51; Alt.2d Am. Compl. at ¶ 59; *see also* Served 2d Am. Compl. at ¶ 48.) Plaintiffs also add a number of allegations about information available on Allstate's corporate website, as follows:

- "Defendant Allstate maintains and at other relevant times maintained an internet website address accessible to the public @ www.allstate.com." (2d Am. Compl. at ¶ 10; Alt.2d Am. Compl. at ¶ 16; *see also* Served 2d Am. Compl. at ¶ 10.)

- "At defendant Allstate's website and at other websites advertising defendant Allstate[,] defendant Allstate represents to the public that defendant Allstate offers 'financial' 'products' or 'services.' " (2d Am. Compl. at ¶ 52; Alt.2d Am. Compl. at ¶ 60; *see also* Served 2d Am. Compl. at ¶ 49 (same, except for omission of reference to "services").)

- "Initially in 2004 or 2005, in 2006 and in 2007 before investing with defendants plaintiffs visited www.allstate.com and observed that defendant Allstate does stocks and investor relations." (2d Am. Compl. at ¶ 59; Alt.2d Am. Compl. at ¶ 67; *see also* Served 2d Am. Compl. at ¶ 56 (same except for omission of reference to dates).)

- "Between 2005 and 2011 plaintiffs have visited the www.allstate.com website many times since first observing that defendant Allstate does stocks and investor relations." (2d Am. Compl. at ¶ 60; Alt.2d Am. Compl. at ¶ 68; *see also* Served 2d Am. Compl. at ¶ 57 (same except for omission of reference to dates).)

**\*12**  Lastly, Plaintiffs add an allegation that their claims "may be supported by documents, including but not limited to documents attached as Exhibits A, B, C and D." (2d Am. Compl. at ¶ 121; Alt.2d Am. Compl. at ¶ 129; *see also* Served

2d Am. Compl. at ¶ 118.) The four referenced exhibits are attached to all three versions of Plaintiffs' proposed Second Amended Complaint. Exhibit A is a photograph of a block of signs. There is a sign for Allstate at the top of the block, and underneath the Allstate sign is a sign that reads "Harris Financial Insurance Services, Inc.," with a phone number. (Ex. A to 2d Am. Compl., Alt.2d Am. Compl.; Served 2d Am. Compl.) At the lower right of the block, another sign reads "Allstate Bryan Harris." (*Id.*)

Exhibit B appears to be a series of screen prints of web pages. (Ex. B to 2d Am. Compl., Alt.2d Am. Compl., Served 2d Am. Compl.) The first page, which appears to have been taken from an Allstate website, lists services offered by Allstate. (*Id.*) The next two pages seem to be results from some type of Internet search involving Harris and Allstate. (*See id.*) None of the listed search results are Allstate websites. (*Id.*) The next several pages include, *inter alia,* a screen print apparently taken from another Allstate web page, referring to Harris and stating, in part: "Bryan Harris is licensed to sell Allstate insurance products only in the state(s) of Georgia. If you do not reside in the state(s) of Georgia or you're not insuring property located in the state(s) of Georgia, please go to the *Find an Agent* section on allstate.com to search for another agent." (*Id.*) Also included are a number of web pages taken from non-Allstate websites, such as superpages.com, insiderpages.com, and citysearch.com, which refer in some way to Allstate or Harris. (*Id* ) The exhibit also includes what appears to be a screen print of a webpage from a Bluebox Entertainment website, listing Harris as the CEO and Director of Operations. (*Id.*) The last page of the exhibit appears to be a screen print of an Allstate web page that refers to an individual named Sam Noah, identified on the page as a Personal Financial Representative in New York; this individual is nowhere mentioned in Plaintiffs' Amended Complaint or memoranda. (*See id.*)

Exhibit C is comprised of several email messages, together with two unsigned promissory notes and certain other documents, which seem to have been email attachments. (*See* Ex. C to 2d Am. Compl ., Alt.2d Am. Compl., Served 2d Am. Compl.) The promissory notes, which are the first documents appearing in this exhibit, do not bear Allstate's name or logo, and, while they identify "Samuel's Temple" as the lender, they do not identify the borrower or the guarantor. (*See id.*) At least some of the emails contained in the exhibit seem to be correspondence between Holmes and Harris, and relate to a variety of topics, including "Blue Box Wiring Information," "Life Insurance," "Bishop Long," and "Tax ID Info." (*See id.*)

In certain of the emails, Harris is identified as "Director of Operations" of Bluebox. (*See id.*) The entire exhibit seems disjointed, as the pages do not appear to be in any sort of order, and the pages are variously forwards, backwards, right-side-up, and upside-down. (*See id.*) The meaning of the emails themselves is far from clear, [14] and is not explained anywhere by Plaintiffs. [15]

[14]      For example, an email dated October 18, 2006, from Shane Moody, of Clayton Signs Inc., to "Ty" (presumably Holmes), states, in part, "Here is the contract for the Allstate location." (*Id.*) Yet Plaintiffs do not identify Clayton Signs Inc., attach the referenced contract, or explain what it is. Another email, dated January 16, 2007, from Harris to "Ty Maximus" (presumably Holmes), states, "U are spending it before we make it you just have to stop taking 25 to 30,000 a month out of the account and you can keep your inheritance! [Y]ou need to stop and think! I will send over the reports!" (*Id.*) Yet another email, from "Ty Maximus," to Harris, which is embedded in an email dated June 12, 2008, states, "Hey Bryan, We are days away from ending this nightmare ... We now have Jews involved in the purchase of the 125 st property ... Br[y]a[ ]n, I need $150.00 to get my Son back home. They are stuck in Columbia SC, with my over due serviced benz ..." (*Id.*)

[15]      The Court also notes that some of the documents in both Exhibits C and D appear to contain personal identifying information, including financial account numbers and at least one taxpayer identification number. It thus appears that Plaintiffs' counsel has violated Rule 5.2(a) of the Federal Rules of Civil Procedure by filing these exhibits publicly, without appropriate redaction. By separate Order of January 23, 2011, this Court has directed that these exhibits be placed under seal, pending their appropriate re-submission by Plaintiffs, in accordance with the requirements of Rule 5.2.

**\*13** Exhibit D contains an assortment of unrelated documents. It includes a copy of a fund transfer application and some documents related to a wire transfer. (Ex. C to 2d Am. Compl., Alt.2d Am. Compl., Served 2d Am. Compl.) None of these documents bear Allstate's name or logo. (*Id.*) Also included in Exhibit D is a single document that

appears to be from Allstate, but nearly all of the identifying information is redacted. (*See id.*) This document may be an example of the type of documents regarding other Allstate policyholders that Harris allegedly transferred to Holmes and that Holmes then stored (*see id., see also supra* at 8 and n. 7), as the document does not appear to relate to Holmes or to any member of his family. Also included in Exhibit D are documents related to a criminal case against former Georgia state representative Walter Ronnie Sailor, Jr. (*Id.; see also supra* at 8, and nn. 6, 11.) Exhibit D also includes documents that appear to have been printed from the Georgia Secretary of State's website and contain corporate information regarding the Harris Defendants. (*Id.*) Finally, Exhibit D contains what appears to be a screen print of a page from a Bluebox website. (*Id.*)

Finally, the version of the proposed Second Amended Complaint that Plaintiffs served, but did not file, contains an Exhibit E, which is comprised of a series of photographs, the subjects of which are barely discernable and are not identified in any way. (Ex. E to Served 2d Am. Compl.)

Nothing contained in any of Plaintiffs' proposed new allegations, or in any of the above-described proposed exhibits, can render Plaintiffs' claims against Allstate viable. If anything, the new allegations detract from, rather than support, Plaintiffs' arguments regarding the potential liability of Allstate in this case. Citing general statements on Allstate's website regarding the nature of its financial services business cannot substitute for pleading affirmative conduct by Allstate that could have led Plaintiffs to believe that Allstate had authorized *Harris* to act as an investment counselor or to plan investments for clients. In fact, to the extent Plaintiffs' proposed exhibits suggest that Allstate, on its website, ever made any mention of Harris, those exhibits suggest only that Harris was licensed by Allstate to sell insurance in the State of Georgia, not to engage in any other business in Allstate's name or on its behalf. Nor can the necessary authority be reasonably inferred from the fact that Harris, who is claimed to have been an Allstate insurance agent, had an "Allstate" sign outside his office. Nor do Plaintiffs' jumbled array of email messages aid them, as none appear to have been sent from any Allstate account; in fact, all of the emails authored by Harris appear to have been sent from his private email accounts, where he identified himself solely as the Director of Operations of Bluebox.

As nothing contained in any version of Plaintiffs' proposed Second Amended Complaint would cure the defects in

Plaintiffs' claims against Allstate, I recommend that Plaintiffs' cross-motion for leave to amend, as against Allstate, [16] be denied as futile. Further, as Plaintiffs are apparently unable to plead any factual foundation, whatsoever, for their claim that Harris had apparent authority to act for Allstate, I recommend that Plaintiffs' claims against Allstate be dismissed with prejudice.

[16]    To the extent Plaintiffs seek to amend their claims against the Harris Defendants, Plaintiffs' application is addressed below.

## II. *ALLSTATE'S AND PLAINTIFFS' SANCTIONS MOTIONS*

### A. *Applicable Legal Standards*

**1.** *Rule 11*

**\*14** Under Rule 11 of the Federal Rules of Civil Procedure, when an attorney files a complaint, motion, or other written paper, he or she is representing to the Court that, "to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose," Fed.R.Civ.P. 11(b)(1), and that the claims, defenses, and other legal contentions therein "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed.R.Civ.P. 11(b)(2). Further, in signing the submission, the attorney is representing that, after reasonable inquiry, he or she believes that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3).

A party that believes Rule 11 has been violated may move for sanctions. Fed.R.Civ.P. 11(c)(2). Rule 11, however, provides a "safe harbor": the sanctions motion may not be filed with the Court if, within 21 days of service of the motion, the offending party withdraws the challenged claim or appropriately corrects it. *Id.* Thus, the motion—which "must describe the specific conduct" that allegedly violates the Rule—must be served, but not filed until at least 21 days after service. *Id.* It has been noted that this provision of the Rule, which, in "plain language[,] ... expressly requir[es] the serving of a formal motion," exists for "good reason," *Lancaster v. Zufle,* 170 F.R.D. 7, 7 (S.D.N.Y.1996), as it places the movant's adversary on notice of the motion it will face if the matter is not remedied, *see id.* The Rule 11

"safe harbor" requirement is "strictly construed," *Banfield v. UHS Home Attendants, Inc.,* No. 96 Civ. 4850, 1997 WL 342422, at \*2 (S.D.N.Y. June 23, 1997) (JFK) (citing *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995)), and has even been described as "jurisdictional in nature," *R.B. Ventures, Ltd. v. Shane,* No. 91 Civ. 5678(CSH), 2000 WL 1010400, at \*2 (S.D.N.Y. July 20, 2000); *see also ESI, Inc. v. Coastal Corp. .,* 61 F.Supp.2d 35, 68 (S.D.N.Y.1999) (where movant had not complied with mandatory "safe harbor" requirement, sanctions motion "must be denied without a discussion of the merits of the motion"). It is an abuse of a court's discretion to impose sanctions under Rule 11, where the Rule's "safe harbor" requirement has not been met. *See Hadges,* 48 F.3d at 1328.

In determining whether a plaintiff has engaged in conduct violating Rule 11's requirements, courts apply an objective standard of reasonableness, and look to see whether the attorney's conduct was objectively reasonable at the time the pleading was signed. *See Morley v. Ciba–Geigy Corp.,* 66 F.3d 21, 25 (2d Cir.1995); *Greenberg v. Chrust,* 297 F.Supp.2d 699, 703 (S.D.N.Y.2004). Where a court finds that claims or defenses have been asserted for the sake or harassment or some other improper purpose, or that they lack any evidentiary support, a court has the discretionary authority under Rule 11(c) to impose monetary sanctions on either the offending party or its counsel, or both. *Morley v. Ciba–Geigy Corp.,* 66 F.3d 21, 24 (2nd Cir.1995). Where the violation is the assertion of an unwarranted legal claim or defense, however, a court may only impose monetary sanctions against counsel, not the represented party. Fed.R.Civ.P. 11(c)(5)(A). A court may also "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion," Fed.R.Civ.P. 11(c) (2); such an award may be made against either a party or its counsel, *see*Fed.R.Civ.P. 11(c)(5); *see also Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1474 (2d Cir.1988) (holding that Rule 11 sanctions may be imposed upon a represented party when the party "had actual knowledge that filing the paper constituted wrongful conduct, *e.g.* the paper made false statements or was filed for an improper purpose."), *rev 'd on other grounds by Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

**\*15** The 1993 Advisory Committee Note to Rule 11 sets forth certain factors that may be considered by the court when deciding whether to impose sanctions or what sanctions are appropriate in the given circumstances. Those factors include: (1) "[w]hether the improper conduct was willful,

2012 WL 627238

or negligent"; (2) "whether it was part of a pattern or activity, or an isolated event"; (3) "whether it infected the entire pleading, or only one particular count or defense"; (4) "whether the person has engaged in similar conduct in other litigation"; (5) "whether it was intended to injure"; (6) "what effect it had on the litigation process in time or expense"; (7) "whether the responsible person is trained in the law"; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case"; and (8) "what amount is needed to deter similar activity by other litigants." Fed.R.Civ.P. 11 advisory committee note to 1993 amendments; *see also, e.g., Kochisarli v. Tenoso,* No. 02 Civ. 4320, 2006 WL 721509, at *8 (E.D.N.Y. Mar.21, 2006) (applying factors, and citing *Simpson v. Putnam County Nat. Bank of Carmel,* 112 F.Supp.2d 284, 291–92 (S.D.N.Y.2000)).

### 2. *The Court's Inherent Authority*

A court's inherent authority to award attorneys' fees and costs derives from "a court's need to manage its affairs so as to achieve an orderly and expeditious resolution of cases." *Bowler v. U.S. Immigration and Naturalization Service,* 901 F.Supp. 597, 605 (S.D.N.Y.1995). Attorneys' fees may be imposed if a party has continued an action "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal citations omitted). The Second Circuit has reasoned that sanctions under the court's inherent authority should be based on findings that the offending party has asserted colorless claims and has acted in bad faith. *See Eisemann v. Green,* 204 F.3d at 396. [17]

[17]   "To ensure ... that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts." *Eisemann v. Green,* 204 F.3d at 396 (quoting *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir.1986) (emphasis added) (internal citations, quotation marks, and brackets omitted).

### B. *Allstate's Motion for Sanctions*

Allstate's motion for Rule 11 sanctions against Plaintiffs and their counsel, Suffin, was properly made and demonstrates that sanctions are warranted, as against Suffin.

### 1. *Plaintiffs' Failure To Take Advantage of Rule 11's "Safe Harbor"*

As a preliminary matter, Allstate complied with the procedural requirements of Rule 11(a). On June 14, 2011, Allstate sent Suffin a letter, which outlined Plaintiffs' pleading deficiencies in detail, and requested that Plaintiffs voluntarily withdraw the Amended Complaint. (Letter from Allstate to Suffin, dated June 14, 2011, Ex. C to Declaration of Elizabeth D. Schrero in Support of Motion of Defendant the Allstate Corporation for Sanctions Under Rule 11, dated July 29, 2011 ("29/11 Schrero Decl.") (Dkt.28).) Counsel for Allstate and Suffin then participated in a telephone conference on June 16, 2011, during which Allstate's counsel reiterated her request for Plaintiffs to withdraw the Amended Complaint. (*See* Memorandum of Law in Support of the Motion of Defendant the Allstate Corporation for Sanctions under Rule 11, dated July 29, 2011 ("Allstate's Sanctions Mem."), (Dkt.29) at 3.) In response, Suffin apparently requested that Allstate consent to an amendment of Plaintiffs' pleadings. (*Id.*) Counsel for Allstate refused to consent without first being presented with any evidence that supported Plaintiffs' claims against Allstate, but told Suffin that, before proceeding with motion practice, she would consider any evidence he could show her that could support Plaintiffs' claims. As AUstate's counsel describes their conversation, she asked Suffin to "come forward with *any* support/evidence of a factual basis for an allegation that Allstate made representations to Plaintiffs concerning Harris' scope of authority in connection with the funds Plaintiffs allegedly sent to Harris and Harris' alleged investment schemes." (*Id.*) (emphasis in original). AUstate's counsel also sent Suffin a letter memorializing their June 16, 2011 telephone conference. (*Id.* at 4.)

**\*16** When Plaintiffs neither withdrew the Amended Complaint nor came forward with any support for their allegations against Allstate, Allstate filed its motion to dismiss on June 28, 2011. (*Id.*) Allstate also prepared a motion for sanctions, which, in accordance with Rule 11(c)(1)(A), it served on Plaintiffs on July 6, 2011 (together with a "safe harbor" letter), but did not file. (*See* Letter from Allstate to Holmes, dated July 6, 2011, Ex. F to July 29 Schrero Decl.) When Plaintiffs did not withdraw their claims within 21 days, Allstate proceeded to file its sanctions motion with the Court. (*See* Allstate's Sanctions Motion.) Accordingly, Allstate's sanctions motion is properly before the Court, and

Case 8:24-cv-00889-MAD-MJK Document 9 Filed 09/06/24 Page 101 of 123
Holmes v. Allstate Corp., Not Reported in F.Supp.2d (2012)
2012 WL 627238

the Court must now determine whether sanctions are justified, and, if so, whether sanctions should be imposed against Plaintiffs, Suffin, or both.

#### 2. *The Relevant Factors Weigh in Favor of Sanctioning Plaintiffs' Counsel.*

On balance, the relevant factors suggest that the imposition of sanctions against Suffin (although not Plaintiffs) would be appropriate in this case. In this regard, the Court notes that the core deficiency in the Amended Complaint is the assertion of claims against Allstate that are not warranted based on the law, a matter that falls under Rule 11(b)(2). Under this section, as noted above, Rule 11 sanctions against a party may not be imposed; such sanctions, where warranted, may only be imposed on counsel. *See Morley,* 66 F.3d at 24.

This case actually began with the filing of a *pro se* Complaint by Holmes. When Suffin then appeared on behalf of Holmes and the Church, Suffin proceeded to file an Amended Complaint. Instead of substantively revising Holmes' pleading, though, Suffin signed and filed an amended pleading that adopted the same flawed theory as Holmes' original *pro se* pleading, as to the claimed liability of Allstate. In other words, in his role as counsel, Suffin appears to have done nothing to disabuse Holmes of the notion that he had viable claims against Allstate for, *inter alia,* conversion and fraud, based solely on Harris's conduct and alleged representations; rather Suffin simply filed a revamped version of the same flawed allegations against Allstate. In fact, the Amended Complaint increased the damages originally claimed by Holmes from $3 million to $10 million (sought "jointly and severally" from each defendant), with an unspecified part of that sum purportedly representing damages for the death of a Church member. (Am. Compl. at ¶ 94.) Nowhere does the Amended Complaint explain how Holmes and the Church could have standing to seek damages for a congregant's death, much less how Allstate could possibly be responsible for that death.

While this Court cannot conclude that Suffin filed the Amended Complaint in bad faith, *i.e.,* with the deliberate intent to harass Allstate or to cause it harm, it appears that, at a minimum, he failed to give adequate counsel to his clients. Further, even if not "willful," Suffin's decision to adhere to his client's former position (and even to expand it) in the face of Allstate's repeated efforts to point out the obvious legal flaws in those claims was at least reckless. While this litigation is still in an early stage, it is also worth emphasizing that Suffin not only filed an Amended Complaint

that contained no allegations capable of supporting Plaintiffs' claims against Allstate, but also submitted three versions of a proposed Second Amended Complaint that are equally deficient. As discussed below, Suffin also met Allstate's sanctions motion by filing a procedurally defective and utterly baseless sanctions motion of his own, against Allstate. (*See* discussion *infra,* at 34–39.) This is sufficient to show a pattern of frivolous filings. *See Kochisarli v. Tenoso,* No. 02 Civ. 4320(DRH)(MLO), 2006 WL 721509, at *8 (E.D.N.Y. Mar. 21, 2006) (imposing sanctions under Rule 11 for, *inter alia,* "submitting essentially the same indecipherable set of counterclaims for a third time").

**\*17** Moreover, this is not the first time that Suffin has been criticized by the Court for filing a frivolous pleading. In *Bibb v. New York City Housing Authority,* 09 Civ. 9956(NRB), 2010 WL 3958646 (S.D.N.Y. Sept. 30, 2010), as Allstate points out (*see* Allstate's Sanctions Mtn. at n. 5.), Suffin received a warning from the Honorable Naomi Reice Buchwald, U.S.D.J., for filing a complaint that the Court found "wholly lacking in merit, even if every fact in the complaint and supporting affidavit [were] accepted as true." (*Id.* at *6.) Judge Buchwald acknowledged that the defendant's Rule 11 motion—brought against Suffin, his law firm, and plaintiff for filing "baseless and frivolous" claims— was "not unwarranted," but "given Suffin's recent admission to the bar," she "hope[d] a word of caution [would] be sufficient to encourage him to be more circumspect before commencing other actions." (*Id.* at *6–7.) She cautioned:

> We wish to stress to Suffin that it is part of his function as an attorney, when appropriate, to explain to his client that she does not have a legitimate legal claim. Such action may assist the client in appreciating the situation in which she finds herself ... We are hopeful that Suffin will use better judgment in the future.

(*Id.* at *7.) [18] It does not appear that Suffin took the Court's "word of caution" to heart, in this case. Further, while Judge Buchwald noted, in her 2010 opinion, that Suffin was "recently admitted to the bar," he now holds himself out as having been in practice for four years and as having handled matters in a wide range of practice areas. [19] At this point,

there is less reason to be forgiving of Suffin's unwillingness or inability to educate and guide his clients when they lack a legitimate claim.

18    Allstate also points out the Court has previously sanctioned Suffin for violating its rules. *See Dvorkin v. New York–Presbyterian Hospital,* 10 Civ. 3680(GBD)(AJP), 2011 WL 280801, at \*4 (S.D.N.Y. Jan. 19, 2011) (affirming, although modifying, sanction imposed by magistrate judge for counsel's failure to bring his client to a settlement conference, as directed by the Court) (cited in Allstate Mem., at n. 5).

19    *See* http://lawyers .law.cornell.edu/lawyer/eric–andrew–suffin–1327035.

In addition, the pleading defect at issue here—the lack of any allegations capable of supporting a legal claim against Allstate—infected Plaintiffs' entire pleading, as to Allstate. Suffin's filing of a deficient pleading, and equally deficient proposed amended pleadings has also slowed the litigation and necessitated the expenditure of both time and money by Allstate to move against Plaintiffs' claims and to oppose his futile cross-motion to amend.

All of these factors suggest that, while (in the absence of a showing of bad faith) the Court should not exercise its inherent authority to sanction Suffin, at least some Rule 11 sanction would be warranted here. The Court notes, however, that Suffin is a solo practitioner, who may not have significant resources to pay a substantial sanctions award. It is difficult for the Court to determine, without additional information, the amount of a sanctions award that would be needed to deter Suffin from further Rule 11 violations, or, by extension, to deter similar activity by others. This Court will return to this question after first addressing the merits of Plaintiffs' sanctions motion against Allstate, given that Allstate is not only seeking sanctions on its own motion, but is also seeking sanctions for having to oppose Plaintiffs' motion.

### C. *Plaintiffs' Sanctions Motion Against Allstate*
**\*18**  After Allstate moved for Rule 11 sanctions against Plaintiffs and their counsel, Plaintiffs filed a Rule 11 motion against Allstate. Unlike Allstate's motion, however, Plaintiffs' motion was not properly made, and should not be considered by the Court because of its procedural defects. In any event, even if the Court were to consider the motion, it should be

denied as wholly lacking in merit. Indeed, Plaintiffs' sanctions motion is itself frivolous.

### 1. *Plaintiffs' Failure To Satisfy the Procedural Requirements of Rule 11*
On August 22, 2011, Plaintiffs sent a letter to Jay Cho, Esq. ("Cho"), counsel for Allstate, stating that Allstate had violated Rule 11(b)(b)(3). (*See* Letter from Suffin to Cho, dated Aug. 22, 2011 ("8/22/11 Suffin Ltr."), Ex. A to Declaration of Eric Andrew Suffin in Support of Plaintiffs' Motion for Rule 11 Sanctions, dated Sept. 30, 2011 ("9/30/11 Suffin Decl.") (Dkt.52) .) This is the provision of Rule 11 under which an attorney is supposed to certify to his or her reasonable, informed belief that "the factual contentions [made in a pleading or other written submission] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). Here, Suffin's August 22 letter listed certain statements from submissions made by Allstate and, without any elaboration or explanation, merely claimed that the statements were false and without evidentiary support. The letter only stated that, "[p]ursuant to Fed.R.Civ.P. 11(c) and for the specific reasons described below, we request that the parts of the memos and Declaration in violation of Fed.R.Civ.P. 11(b)(3) be withdrawn or appropriately corrected within 21 days or within some other time set by the court." (8/22/11 Suffin Ltr., at 1–2.) The letter did not explicitly state that Plaintiffs were going to file a sanctions motion, and it did not enclose a copy of any sanctions motion.

On August 30, 2011, Suffin wrote another letter to Cho. (Letter from Suffin to Cho, dated Aug. 30, 2011 ("8/30/11 Suffin Ltr."), Ex. B to 11/30/11 Suffin Decl.) The language of the August 30 letter mirrored the language of the August 22 letter, but also complained of additional statements by Allstate. (*See* 8/30/11 Suffin Ltr., at 2.) Like the earlier letter, the August 30 letter did not explicitly state that Plaintiffs were going to file a sanctions motion and it did not include a copy of the sanctions motion that was eventually filed by Plaintiffs. (*Id.*) As explanation for the request to withdraw the listed statements, Suffin merely wrote that they did "not have evidentiary support as required by Fed.R.Civ.P. 11(b)(3) and were false." (*Id.*)

Plaintiffs then went ahead and filed their Rule 11 motion on September 30, 2011, in disregard of the "safe harbor" procedural requirements set out in the Rule. Although Plaintiffs now ask the Court to "treat the August 22, 2011 and

August 30, 2011 letters ... as fulfilling Plaintiffs' requirement to serve the Rule 11 Motion twenty one (21) days before presenting it to the Court" (Plaintiffs' Memorandum of Law in Further Support of Plaintiff's Motion for Rule 11 Sanctions, dated Oct. 24, 2011 ("Pl. Reply to Pl. Sanctions Mtn.") (Dkt.59), at 2), this Court has repeatedly refused to impose sanctions based on mere warning letters, even where the challenged conduct was sanctionable. *See Gamla Enterprises North America, Inc. v. Lunor–Brillen Design U. Vertriebs GMBH,* No. 98 Civ. 992, 2000 WL 193120, at *3 (S.D.N.Y. Feb.17, 2000) (denying meritorious Rule 11 motion where warning to offending party was given by letter alone, even where warning letter "conformed to the spirit of the rule"); *see also Diamonds.net LLC v. Idex Online, Ltd.,* 254 F.R.D. 475, 476–77 (S.D.N.Y.2008) (finding that a warning letter does not satisfy the Rule 11 requirement of serving a formal motion); *Weeks Stevedoring Co. Inc. v. Raymond Int'l Builders, Inc.,* 174 F.R.D. 301, 305 (S.D.N.Y.1997 (same); *Bellistri v. US,* No. 94 Civ. 3768(KMW), 1997 WL 115545, at *3 (S.D.N.Y. Mar.14, 1997) (same); *Gal v. Viacom International, Inc.,* 403 F.Supp.2d 294, 309 (S.D.N.Y.2005) (same); *Schweizer v. Mulvehill,* 93 F.Supp.2d 376, 413 (S.D.N.Y.2000) (same). [20]

[20]  *But see Jeffreys v. Rossi,* 275 F.Supp.2d 463, 480 (S.D.N.Y.2003) (finding that movant substantially complied with Rule 11 procedural requirements by serving a "detailed letter," with attached evidentiary support).

**\*19**  Accordingly, based on the express language of Rule 11 and this Court's precedent, Plaintiffs' sanctions motion should be denied as procedurally defective.

### 2. *Plaintiffs' Motion Is Also Meritless*

In any event, even if Rule 11's procedural requirements could be deemed satisfied by the service of Suffin's warning letters, Plaintiffs' sanctions motion would completely fail on its merits, as it does nothing more than catalog five statements made at various points, by Allstate or its counsel, and assert—without any explanation-that these statements lack evidentiary support. (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Rule 11 Sanctions, dated Sept. 30, 2011, ("Pl. Sanctions Mem.") (Dkt.53), at 2.) The challenged Allstate statements are as follows:

(1) "... Holmes is claiming to be in wrongful possession of confidential documents belonging to Allstate (which, if true, would have been taken without Allstate's authorization), the reference to those documents can

have no purpose other than to attempt to prompt a settlement offer from Allstate." (Memorandum of Law in Support of the Motion of Defendant the Allstate Corporation To Dismiss the Amended Complaint as Against the Allstate Corporation, dated June 28, 2011 ("Allstate Mtn.–To–Dismiss Mem.") (Dkt.20), at 22, n. 7.)

(2) "... where, as here, the Plaintiff's attorney: (1) has advanced meritless factual allegations that have no evidentiary support; and (2) has failed to investigate the law before bringing an action and filing and serving a complaint that fails woefully to comply with the well established pleading requirements of the FRCP, Allstate must turn to Rule 11 for legal recourse." (Allstate Sanctions Mem. at 1.)

(3) "... there is no good faith basis for Plaintiffs to proceed with the instant action against Allstate." (*Id.*)

(4) "The obvious frivolity of the Complaint ..." (*Id.*)

(5) "A copy of a black-lined version of the Proposed Second Amended Complaint showing a comparison against the Complaint, dated August 3, 2011, is attached hereto as Exhibit 'A.' " (Declaration of Elizabeth D. Schrero in Further Support of Motion of Defendant the Allstate Corporation To Dismiss the Amended Complaint and in Opposition to Plaintiffs' Cross–Motion for Leave To Amend Their Amended Complaint, dated Aug. 19, 2011 (Dkt.45), ¶ 2.)

(*Id.* at 2–3.)

Most of these statements-including statements that Plaintiffs' counsel failed to comply with pleading requirements, lacked good faith in proceeding with unsupported claims against Allstate, and filed an obviously frivolous pleading—are in the nature of arguments advanced on Allstate's motions to dismiss and for sanctions. As they are not "factual contentions," these statements are not even not covered by the provision of Rule 11 on which Plaintiffs rely for their sanctions motion. (*See* Plaintiffs' Sanctions Mem. at 2 (citing Fed.R.Civ.P. 11(b) (3).) Moreover, for the reasons discussed above, this Court generally agrees that Plaintiffs' claims against Allstate *were* unsupported and frivolous.

**\*20**  To the extent Plaintiffs complain about Allstate's supposition that Plaintiffs may have been attempting to exact a settlement from Allstate by referring to Holmes' cache of confidential Allstate documents, this Court also agrees

that this is how Plaintiffs' conduct appeared; indeed, on this subject, Plaintiffs' counsel himself made statements to the Court that lend credence to Allstate's stated concerns. During a case management conference on July 26, 2011, Allstate's counsel told the Court that she had spoken with Suffin about the confidential documents, and that Suffin had demanded $30,000 for the transfer of the documents to Allstate. (July 26, 2011 Rule 16 Conference Transcript, at 10, Ex. D to 10/17/11 Schrero Decl.) Suffin said that counsel had misunderstood his statements, and that he had only "discussed that there may be a dollar amount that would be involved in the transfer." (*Id.* at 12.) Nonetheless, Suffin did not deny that he had mentioned the $30,000 figure to Allstate's counsel in their conversation (*see id* . at 13), and when asked by the Court why Holmes even had possession of Allstate documents bearing confidential, personal information of policyholders, Suffin repeatedly expressed his understanding that Holmes believed the documents were "collateral" for his investments. (*See id.* at 12, 13, 14.) Under the circumstances, Allstate's suggestion that Holmes may have been trying to "prompt a settlement offer" is hardly unsupported.

Finally, the Court could not even discern what Plaintiffs were complaining about, with regard to Allstate's proffered black-lined version of the proposed Second Amended Complaint until Plaintiffs argued, on reply, that Allstate's black-lining did not incorporate the exhibits attached to the proposed amended pleading. (*See* Pl. Reply to Pl. Sanctions Mtn. at 5.) Plaintiffs' contention on this point is patently frivolous. A black-lined document is intended to track changes made in the text of a document, and Plaintiffs apparently have no quarrel with whether Allstate accurately tracked any proposed modifications to their original allegations. Moreover, Allstate's black-lined document, submitted for the convenience of the Court, shows that exhibits were added to the proposed Second Amended Complaint. (*See* Ex. A to 8/19/11 Schrero Decl., ¶¶ 48 (highlighting addition of reference to Ex. A), 118 (highlighting addition of allegation that "Plaintiff's causes of action may be supported by documents, including but not limited to documents attached as Exhibits A, B, C and D").)

As Plaintiffs have not demonstrated that a single statement made by Allstate was, in fact, either false or unsupported, Plaintiffs' sanctions motion cannot succeed, even apart from its procedural flaws. To the contrary, it is a plainly meritless motion, and Allstate legitimately asks that Plaintiffs or their counsel be made to bear Allstate's fees and costs in having to respond to it. (*See* Defendant The Allstate Corporation's

Memorandum of Law in Opposition to Plaintiffs' Motion For Sanctions Under Rule 11, dated Oct. 17, 2011 (Dkt.58), at 16; *see also* Fed.R.Civ.P. 11(c) (2) (allowing a court to award the fees and costs of a sanctions motion to the prevailing party).)

**D.** *Appropriate Sanctions Award in This Case*

 **\*21** Based on the flaws in Plaintiffs' pleaded claims against Allstate, the fact that Plaintiffs, through counsel, insisted on proceeding with these defective claims despite notice of the defects, and the fact that Allstate has, as a result, incurred fees and costs in what should have been unnecessary motion practice, I recommend that sanctions be awarded in Allstate's favor, and that the award be made against Suffin, as counsel.

As noted above, however, the Court is not currently in a position to determine the appropriate amount of a monetary sanction, given that it lacks information regarding Suffin's financial circumstances. Accordingly, I recommend that Allstate be directed to submit to the Court an itemized statement of the attorneys' fees and costs it incurred on its motion to dismiss, as well as on both of the sanctions motions, and that Suffin be directed to submit a sworn affidavit or declaration made under penalty of perjury, setting out the net income earned by his law practice over the past 12 months. I further recommend that Suffin be required, under Rule 11(c), to pay to Plaintiffs the reasonable fees and expenses incurred in filing or opposing the referenced motions, up to a cap of 10 percent of the annual net income received from his law practice, as reflected in his financial affidavit or declaration. *See Weinraub v. Glen Rauch Securities, Inc., 419 F.Supp.2d 507, 520 (S.D.N.Y.2005)* (noting that under Rule 11, a court must consider the financial circumstances of the sanctioned party); *see also Association of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG,* No. 04 Civ. 3600(SWK), 2005 WL 3099592, at \*8 (S.D.N.Y. Nov.17, 2005) ("As a final matter of the [Rule 11] sanctions determination, courts must take into account the financial circumstances of the sanctioned party." (citing *Sassower v. Field,* 973 F.2d 75, 81 (2d Cir.1992)); *Anschutz Petroleum Marketing Corp. v. E.W. Saybolt & Co., Inc.,* 112 F.R.D. 355, 357 (S.D.N.Y.1986) (finding that "adequate deterrence may permissibly fall short of full compensation," and that the court has the discretion to fashion a Rule 11 sanction for purposes of deterrence which awards part, but not all, of the opposing party's attorney's fees); *Becker v. Dunkin' Donuts of America, Inc.,* 665 F.Supp. 211, 217–18 (S.D.N.Y.1987) (taking into consideration offending litigant's ability to pay, even though sanctions were fully warranted).

## III. *THE HARRIS DEFENDANTS' MOTION TO DISMISS*

As noted above (*see* n. 2, *supra* ), the Harris Defendants never properly filed their motion to dismiss on the Court's ECF system, and the Court would be entitled to reject the motion on that basis. I do not recommend this, however, as some of the pleading issues raised by the motion are significant, and, for the sake of efficient case management, it would be preferable to resolve those issues as early as possible. For this reason, this Court has considered the merits of the Harris Defendants' motion.

### A. *Applicable Legal Standards*

**\*22** The standards governing motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure are set forth in connection with this Court's discussion of Allstate's motion to dismiss. (*See supra,* at 12.) Additionally relevant to the Harris Defendants' motion are Rules 8(a) and 9(b), which address the question of how specific a plaintiff s allegations must be.

Rule 8(a) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Under this Rule, a pleading "does not have to set out in detail the facts on which the claim for relief is based, but must give the court and the defendant fair notice of what [the] plaintiffs claim is and the grounds upon which it rests." *Owens v. Suter,* 02 Civ. 8198(SHS), 2003 WL 942554, at \*1 (S.D.N.Y. Mar. 7, 2003) (internal citations and quotations omitted); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted."). Rule 8(a) is violated where a plaintiff, by engaging in "group pleading," fails to give each defendant fair notice of the claims against it. *Pierson v. Orlando Regional Healthcare Systems, Inc.,* 619 F.Supp.2d 1260, 1273 (M.D.Fla.2009) (dismissing complaint because group-pleading method of collectively referring to individual defendants and two physician groups as "Peer Review Defendants" throughout complaint did not satisfy the "fair notice" requirement of Rule 8).

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To state a claim for fraud under New York law, a party must plead that: (1) the defendant(s) made a material false representation or omission, (2) the defendant(s) intended to

defraud the plaintiff(s) thereby, (3) the plaintiff(s) reasonably relied upon the representation, and (4) the plaintiff(s) suffered damage as a result of this reliance. *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995) (relying on New York law) (citations omitted). To satisfy the Rule 9(b) pleading requirements, a complaint alleging fraud must: "(1) specify the statement [or omissions] that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements [or omissions] were made, and (4) explain why the statements [or omissions] were fraudulent. *Scantek Medical, Inc. v. Sabella,* 583 F.Supp.2d 477, 493 (S.D.N.Y.2008) (internal quotations and citations omitted).

In addition, a fraud complaint must also "allege facts that give rise to a strong inference of fraudulent intent," which may be accomplished "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Motive involves "concrete benefits that could be realized by one or more of the false statements ... alleged" and opportunity is shown by "the means and likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1129 (2d Cir.1994). To allege conscious misbehavior or recklessness, "the Complaint must link the misleading statement with facts that give rise to an inference that the speaker had a basis for knowing it was false." *Shahzad v. H.J. Meyers & Co.,* 923 F.Supp. 57, 60 (S.D.N.Y.1996) (citations omitted).

**\*23** Rule 9(b) also requires plaintiffs to "connect the allegations of fraud to each individual defendant." *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. De–Con Mechanical Contractors, Inc.,* 896 F.Supp. 342, 347 (S.D.N.Y.1995); *see also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.' "). Plaintiffs alleging fraud "may not rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud." *Trustees of Plumbers and Pipefitters Nat. Pension Fund,* 896 F.Supp. at 347. Further, the allegations must demonstrate that "each [d]efendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme." *Id.*

The pleading requirements of Rule 9(b) apply both to fraud claims and to "other claims that are premised on fraud."

*Daly v. Castro Llanes,* 30 F.Supp.2d 407, 414 (S.D.N.Y.1998) (citing *O'Brien v. Nat'l Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991)). The particularity requirements of Rule 9(b) also apply to negligent misrepresentation claims. *In re Marsh & McLennan Cos. Sec. Litig.,* 501 F.Supp.2d 452, 495 (S.D.N.Y.2006) ("Negligent misrepresentation claims must be pleaded with particularity pursuant to Rule 9(b).". Accordingly, Plaintiffs' claims of fraud, negligent misrepresentation, and violation of New York York Debtor and Creditor Law § 276 are all subject to Rule 9(b)'s pleading requirements. *See also In re Sharp Intern. Corp.* 403 F.3d 43, 54 (2d Cir.2005) (noting that New York Debtor and Creditor Law § 276 must be pleaded with specificity, under Rule 9(b)).

### B. *Adequacy of Plaintiffs' Allegations Against the Harris Defendants*

In their motion to dismiss, the Harris Defendants argue, first, that Holmes does not have authority to speak for Samuel's Temple and thus lacks "standing" to assert claims on the Church's behalf. Second, the Harris Defendants argue that Plaintiffs' claims as to them fail under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. While their asserted "standing" argument appears misplaced, the Harris Defendants' arguments for dismissal of the Amended Complaint on the basis of pleading deficiencies are persuasive.

### 1. *Propriety of Naming Samuel's Temple as a Plaintiff*

As an initial matter, the Harris Defendants contend that Samuel's Temple is not controlled by Holmes and that the Church itself never assented to bringing this action. (*See* Harris Defs. Mem., at 6; *see also id.,* at 8 (stating that Holmes "has no authority whatsoever to bring this lawsuit on behalf of the Church").) Rather, the Harris Defendants assert that the person with authority to act for the Church is Shirley Holmes Sulton ("Sulton"), Senior Pastor (and purportedly the only pastor) of Samuel's Temple and Harris's mother, who, they contend, has not authorized this lawsuit. (*Id.*) In support of their position on this point, the Harris Defendants attach a declaration of Sulton, in which she states:

> **\*24** My son Tyrone is not the pastor, nor has he ever been the pastor of Samuel's Temple. Furthermore, he has no executory or signatory powers associated with the church. I maintain and control all financial

matters concerned with the church. Neither the church nor I have instituted any lawsuit or proceedings against Mr. Bryan Michael [Harris]. Any monies that I have sent to Mr. Bryan Michael Harris, whom I consider a loyal and committed son, are personal matters between Mr. Harris and me. I am not, nor will I become a party to the current lawsuit fostered by my son against Mr. Harris. Samuel's Temple COGIC is also not a party to the suit. My son, Tyrone, does not possess the signatory powers of the church to institute a suit against Mr. Harris.

(Declaration of Frank Wheaton in Support of Defendants' Motion to Dismiss the Amended Complaint of Plaintiffs, dated Oct. 10, 2011 ("Wheaton Decl.") (Dkt.56), at Ex. C (Declaration of Shirley Holmes–Sulton, dated Aug. 12, 2011 ("Sulton Decl.")), at 1.) The Harris Defendants also appear to contend that the funds at issue in this case are *Church* funds, and that Holmes has no personal standing to assert claims for recovery of those funds. (*See* Harris Defs. Mem., at 8–9.)

In response to these arguments, Plaintiffs submit certain documents purporting to show the Church's authorization for the suit. (*See* 11/10/11 Suffin Decl., at Ex. C (email from Sulton to Holmes, dated Oct. 18, 2011, and attachment), Ex. D (Resolution and Minutes of Special Meeting of the Samuel Temple Church of God in Christ, Inc.).) Plaintiffs also submit their proposed "Alternative Second Amended Complaint" in response to the Harris Defendants' arguments. (Alt.2d Am.Compl.)

Given that Samuel's Temple has itself been named as a plaintiff in this case and is asserting claims on its own behalf, it is evident that the Harris Defendants' argument regarding the Church is not appropriately styled as a "standing" argument. Certainly, the Church would be a real party in interest to a dispute over the disposition of Church funds. What the Harris Defendants actually argue, with respect to the Samuel's Temple, is that whoever purported to act on its behalf in authorizing this lawsuit was without power to do so. As shown by the parties' competing submissions, this raises an issue of fact that cannot be resolved without a more complete record.

As for the Harris Defendants' seeming argument that Holmes has no standing to challenge the alleged conversion of funds belonging to the Church, it is unclear whether Holmes may be claiming any personal interest in the money, or, alternatively, whether he may be seeking to proceed as a third-party beneficiary to agreements allegedly made between the Church and any of the Harris Defendants regarding the use of the funds in question. For example, while Holmes may have never had a right to direct Harris to purchase a home for him with Church money, if this was something that Harris promised to Samuel's Temple, and Holmes stood to benefit from the purchase, then he may have standing to assert claims against Harris in his own right, for breach of that promise. Moreover, several of the allegations in the Amended Complaint, while confusing because they draw no clear distinction between the two plaintiffs, appear to relate to personal claims by Holmes. For instance, Holmes seems to claim that Harris promised him employment at Bluebox, and then reneged on that promise. Regardless of the viability of such claims, there seems to be little question that Holmes would have a personal stake in their outcome.

**\*25** For these reasons, the Harris Defendants' challenge to Plaintiffs' "standing" should be rejected at this time, without prejudice to raise the issue again at a later juncture, on a clearer pleading and a more complete record, should the case proceed.

### 2. *Sufficiency of Pleading Under Rules 8(a) and 9(b)*

The Harris Defendants are more persuasive in their argument that the Amended Complaint fails to satisfy the pleading requirements of Rules 8(a) and 9(b). The most glaring defect, under both rules, is Plaintiffs' pervasive "group pleading," both with respect to (a) the injuries sustained by "plaintiffs" (referred to collectively) and (b) the alleged misconduct of "defendants" (also referred to collectively). As to the former, as noted above, the Amended Complaint fails to specify whether Holmes entrusted any of his own money to any defendant, and, if not, the nature of the consideration he may have provided for any promises made to him personally. As to the latter, it appears that Plaintiffs or their counsel may have simply conducted an online search for companies of which Harris was an officer (*see* Ex. D to proposed 2d Am. Compl.), and then named those companies as additional defendants without any knowledge or information as to what role, if any, each of them may have played in the transactions alleged.

Plaintiffs' failure to differentiate among the Harris Entities, so as to allege the nature of each particular defendant's misconduct, has resulted in a failure by Plaintiffs to give each defendant "fair notice" of Plaintiffs' claims and "the grounds upon which [they] rest[ ]," as required by Rule 8(a). *Owens,* 2003 WL 942554, at \*1 (internal citations and quotations omitted). For essentially the same reason, and as the Amended Complaint also wholly fails to particularize any statements by Defendants that were allegedly false or misleading, Plaintiffs have grossly violated Rule 9(b), as well. *See Trustees of Plumbers and Pipefitters Nat. Pension Fund,* 896 F.Supp. at 347.

As to the Harris Defendants' arguments regarding the independent insufficiency of each of Plaintiffs' claims under Rule 12(b) (6),[21] the vagueness of much of the Amended Complaint makes it difficult for the Court even to consider those arguments. It is impossible to determine, for example, whether Plaintiffs' conversion claim necessarily duplicates their breach-of-contract claim, as the Harris Defendants argue (*see* Harris Defs. Mem., at 15 (citing *Salem v. Software Guidance and Assistance, Inc.,* No. 96 Civ. 8437(AGS), 1997 WL 777402, at \*5 (S.D.N.Y. Dec.16, 1997))), when the particular contract(s) at issue are not well identified and when the subject of Plaintiffs' claim of conversion may be money, but may also be tangible goods. (*See, e.g.,* Am. Compl. at ¶ 84 (alleging that Defendants "comingled and fraudulently converted plaintiffs' investment capital for defendant Harris's pecuniary gain"); ¶ 80 (alleging conversion of "various personal property owned by plaintiff Holmes, including a rifle, hard drives, two (2) Mackie speakers, video footage, and sound tools essential to plaintiff Holmes's music and television production, documents, video masters, and music masters").)

[21]    The Court notes that the arguments advanced by the Harris Defendants, with respect to whether Plaintiffs have adequately pleaded the elements of their individual claims, appear to have been copied nearly verbatim from Allstate's memorandum in support of its motion to dismiss. *Compare* Allstate Mtn.–To–Dismiss Mem. at 4–7; 11–22, *e.g., with* Harris Defs. Mem., at 12–14; 14–23.

**\*26** Similarly, the Court cannot discern whether, as the Harris Defendants argue, Plaintiffs' conversion claim is barred by the applicable three-year statute of limitations (*see* Harris Defs. Mem., at 15), given that the Amended Complaint alleges that Harris converted the physical property

of Holmes "[a]t some point in 2008" (Am. Compl. at ¶ 80), but does not specify when in 2008 the alleged conversion occurred. Further, to the extent Plaintiffs are claiming the conversion of money, *see, e.g., Ehrlich v. Howe,* 848 F.Supp. 482, 492 (S.D.N.Y.1994) (noting that an action for conversion of money may lie if the pleading alleges that "the money converted was in specific tangible funds of which the claimant was the owner and entitled to immediate possession"), the Amended Complaint only alleges when certain funds were transferred to the Harris Defendants (*see* Am. Compl. at ¶¶ 55–58, 60), not when any particular acts of conversion occurred.

Because of the significant pleading defects present in the Amended Complaint against the Harris Defendants—defects that are not remedied by any version of Plaintiffs' proposed Second Amended Complaint—I recommend that the Harris Defendants' motion to dismiss be granted under Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. In this instance, though, I recommend that the dismissal be without prejudice to filing an amended pleading that actually addresses the defects identified herein, as Plaintiffs may have viable claims against Harris and/or one or more of the Harris Entities, for, *inter alia,* misappropriating a large sum of money allegedly entrusted to them. *See*Fed.R.Civ.P. 15(a) (stating that courts "should freely give leave [to amend] when justice so requires"); *Rich v. Maidstone Fin., Inc.,* No. 98 Civ. 2569(DAB), 2001 WL 286757, at *12 (S.D.N.Y. Mar.23, 2001) (holding that leave to amend should be given when the court "cannot determine that the plaintiff could not, under any circumstances, sufficiently allege its claims" (internal quotation marks and citation omitted)).

Finally, given the defects that have, to date, been manifest in each of Plaintiffs' pleadings or proposed pleadings, I further recommend that Plaintiffs and their counsel be strongly cautioned by the Court that, if they choose to proceed with a further amendment, (1) they take care to plead the claims of the Church and of Holmes individually, with allegations that show a basis for each claim, as to the plaintiff asserting it, (2) they not name as a defendant any corporate entity without a good faith basis for believing that the particular entity engaged in any activity that constituted an actionable wrong, and they provide each such defendant with notice of its specific alleged wrongdoing, and (3) they plead all claims falling within the ambit of Rule 9(b) with the particularity necessary to satisfy that Rule's requirements, as described herein.

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that the Court:

**\*27** (1) grant Allstate's motion to dismiss the Amended Complaint (Dkt.18), with prejudice;

(2) deny Plaintiffs' cross-motion for leave to amend as against Allstate (Dkt.33);

(3) grant Allstate's sanctions motion to the extent it seeks Rule 11 sanctions against Plaintiffs' counsel, and otherwise deny the motion (Dkt.27);

(4) deny Plaintiffs' motion for sanctions against Allstate (Dkt.51);

(5) impose Rule 11 sanctions on Plaintiffs' counsel in the manner set forth *supra* at 39–41;

(6) grant the Harris Defendants' motion to dismiss the Amended Complaint (*see* Dkt. 55), without prejudice; and

(7) afford Plaintiffs 30 days to file a Second Amended Complaint that cures the pleading defects against the Harris Defendants, as discussed herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also*Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Laura T. Swain, United States Courthouse, 500 Pearl Street, Room 755, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**Holmes v. Allstate Corp., Not Reported in F.Supp.2d (2012)**

2012 WL 627238

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 627238

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 626262
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Tyrone HOLMES and Samuel's Temple
Church of God in Christ, Inc., Plaintiffs,
v.
The ALLSTATE CORPORATION,
Bryan Harris et al., Defendants.

No. 11 Civ. 1543(LTS)(DCF).
|
Feb. 27, 2012.

*ORDER ADOPTING REPORT AND RECOMMENDATION*

LAURA TAYLOR SWAIN, District Judge.

**\*1** Plaintiffs Tyrone Holmes and Samuel's Temple Church of God in Christ, Inc., assert various fraud claims against Bryan Harris, the Allstate Corporation, and other defendants in connection with over $500,000 that Plaintiffs allege Harris promised to invest in their behalf but which Plaintiffs have yet to recover.

Magistrate Judge Debra C. Freeman issued a Report and Recommendation ("Report") on January 27, 2012, recommending that the Court (1) grant the motion to dismiss the Amended Complaint as against Allstate with prejudice; (2) deny Plaintiffs' cross-motion for leave to amend the complaint as against Allstate; (3) grant Allstate's sanctions motion to the extent it seeks Rule 11 sanctions against Plaintiffs' counsel but otherwise deny the motion; (4) deny Plaintiffs' motion for sanctions against Allstate; (5) impose Rule 11 sanctions on Plaintiffs' counsel in accord with certain procedures described in the Report; (6) grant the motion to dismiss the Amended Complaint as against the defendants other than Allstate but without prejudice to repleading; and (7) afford Plaintiffs 30 days to file a Second Amended Complaint that cures the pleading defects against all defendants other than Allstate.

In their objection to the Report, Plaintiffs assert that their claims against Allstate have been adequately pleaded; that Plaintiff's counsel should not be sanctioned; that Allstate should be sanctioned; and that the claims against Harris and

other defendants were adequately pleaded. No defendant has filed an objection to the Report.

In reviewing the Report, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.A. § 636(b)(1)(c) (West 2006). The Court is required to make a de novo determination as to the aspects of the Report to which specific objections are made. *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). When a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report only for clear error. *See Camardo v. General Motors HourlyRate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusory, or general, and which constitute a rehashing of the same arguments and positions taken in original pleadings); *Schoolfield v. Dep't of Corr.,* No. 91 Civ. 1691, 1994 WL 119740, at \*2 (S.D.N.Y. Apr.6, 1994) (objections stating the magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint was grounded, are conclusory and do not form a specific basis for not adopting the report and recommendation). Objections to a Report must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a "second bite at the apple" by simply relitigating a prior argument. *Camardo,* 806 F.Supp. at 381–82.

To the extent that Plaintiffs have raised specific objections that do more than simply repeat arguments made before the Magistrate Judge, the Court has reviewed them *de novo* and finds them unavailing. The Court finds no error in Magistrate Judge Freeman's thorough and thoughtful Report and, therefore, adopts the Report in its entirety.

**\*2** In connection with the sanctions to be imposed against Plaintiffs' counsel, Allstate is directed to file and serve an itemized summary of the attorneys' fees and costs it incurred on its motion to dismiss and both sanctions motions. Plaintiffs' counsel is directed to file and serve a sworn affidavit or declaration, made under penalty of perjury, setting out the net income earned by his law practice over the past 12 months. Both parties are required to file and serve these submissions within 14 days of the date of this Order.

Plaintiffs are also directed to file and serve any second amended complaint, revised to cure the defects discussed in the Report, within 30 days of the date of this Order.

**Holmes v. Allstate Corp., Not Reported in F.Supp.2d (2012)**

2012 WL 626262

This Order resolves docket entry numbers 18, 27, 33 and 51.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 626262

---

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 112 of 123

2017 WL 1418296

2017 WL 1418296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William G. SCHISLER, Sr., Plaintiff,

v.

CITY OF ROME, et al., Past
Management and Present, Defendants.

6:17-CV-312 (GTS/ATB)
|
Signed 03/22/2017

**Attorneys and Law Firms**

WILLIAM G. SCHISLER, SR, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

 *1  The Clerk has sent to the court a civil rights complaint, together with a motion to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, William G. Schisler, Sr. (Dkt. Nos. 1, 2).

**I. IFP Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial

resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**

Although plaintiff's complaint is unclear, he appears to suing the City of Rome, the present Mayor of Rome, Jackie Izzo, the former Mayor of Rome, Joseph Fusco, Jr., and the President of the Common Council in Rome. Plaintiff starts his complaint by stating that "this case" has been "going on for the last four years." (Complaint ("Compl.") ¶ 4) (Dkt. No. 1). He then states that "you" want dates, names, and proof, and plaintiff has provided dates, names, and proof. (Id.) Plaintiff then begins discussing problems that he had with the City of Rome pertaining to his former home, at 105 Fourth St. in Rome, New York ("105 Fourth St."), which is the subject of another law suit that he has pending in this district. Schisler v. Dominico, 6:15-CV-734 (TJM/ATB).

 *2  Plaintiff appears to be reiterating many of the issues that are involved in the other action that he has pending in this court. In fact, as "Exhibits" to the current action, plaintiff has attached a photograph of 105 Fourth St. and a letter that an attorney wrote to plaintiff's neighbors (former defendants in 15-CV-734), asking them to stop harassing the Schislers.[1] Schisler v. Dominico is still pending, and the only remaining issue involves the refusal of defendants in that action to allow the Schislers to build a driveway next to their former home.

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

2017 WL 1418296

[1] When Mr. Schisler filed 15-CV-734, he filed the case with a co-plaintiff, Annette Dow, who is now Annette Schisler.

In this complaint, plaintiff alleges that when Mrs. Schisler, then Ms. Dow, called to have the water shut off in 105 Fourth St., she was told that only Mr. Schisler could request this action, because only he was the owner of the home. (Compl. ¶ 4 at CM/ECF p.3). Mr. Schisler states that this was not true, and that either one of them could have requested that the water be turned off. (*Id.*) Plaintiff then states that the power was still "on," and that he and Mrs. Schisler were both in Utica and in Rome, and that they were in litigation with M & T Bank [2] over the house and "paying for a dump" that they had to "again move out of and into a new one." (*Id.* at 4). Plaintiff states that they had to move "due to mold, mildew and roaches due to landlord failing to keep up his responsibilities." (*Id.*)

[2] Plaintiff has an action against M & T Bank and other defendants pending in the Northern District of New York. *Schisler v. M & T Bank*, No. 6:16-CV-514 (DNH/TWD) (report-recommending dismissal pending). However, that action was filed in May of 2016 and refers to a foreclosure action. It is unclear if plaintiff is referring to another action involving M& T Bank, but this complaint cites 2014 as the year in which plaintiff had litigation over a house. Any litigation with M & T Bank is irrelevant to this court decision herein.

Plaintiff states that because of the second "move," "they" have lost everything twice, and this has been financially draining on two disabled parents and one disabled child. This statement appears unrelated to the present issues. Mr. Schisler may be trying to say that he and his family have had a difficult time since they left 105 Fourth St. because they have had to move again, and plaintiff views this as "losing everything twice." However, the deficiencies allegedly caused by the Schislers' "landlord" have nothing to do with any of the current municipal defendants, and plaintiff cannot bootstrap what he views as additional damages, caused by a private person, into a civil rights complaint.

Mr. Schisler then states that "[i]f you sit down with us and heard our side of this whole mess you could understand our frustration!!" (*Id.*) Plaintiff's "First Cause of Action" is "Negligence in assisting in protecting a handicap individuals [sic] property and home." (*Id.* at 5). The "Second Cause of Action" is "intentional infliction of emotional distress and mental anguish of a hearing impaired, handicapped individuals [sic]." (*Id.*) Plaintiff has asked for $20.5 million dollars.

## III. Personal Involvement/Municipal Liability

### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). It is also well-settled that in order to establish liability of a municipality pursuant to 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli*, 980 F. Supp. 635, 639 (N.D.N.Y. 1997) (citing *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 689 (1978)) (other citations omitted).

### B. Application

#### 1. Individuals

**\*3** Plaintiff's complaint is a rambling description of reasons why he and his family are frustrated with the City of Rome, the "loss" of 105 Fourth St., and apparently with the fact that their "case" is not moving fast enough. The court must point out that plaintiff and his family moved out of 105 Fourth St. in June of 2014, prior to the filing of 15-CV-734, and Mr. Schisler's current complaint does not mention any of the current defendants in the body of the complaint. There is absolutely no indication that any of the current individual defendants had any involvement in refusing to turn the water off in July of 2014, the only specific incident that appears to be the subject of plaintiff's rambling complaint.

It is unclear how the current common council president or the current mayor would have had any involvement in anything that plaintiff alleges in this complaint. Former Mayor of Rome, Joseph Fusco, was dismissed as a defendant in 15-CV-734, even when plaintiff attempted to make some specific claims against him regarding the "loss" of 105 Fourth St. (Dkt. No. 12 in 15-CV-734 at 11-12). The action was dismissed with prejudice against Mayor Fusco after plaintiff was given an opportunity to amend his complaint and had failed to do so. In the current complaint, Mr. Schisler has failed to even mention former Mayor Fusco in the body of the complaint. Not even the most liberal reading of this complaint would state any constitutional claims against any

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 114 of 123

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

2017 WL 1418296

of the individual defendants.[3] Thus, plaintiff may not sue the current mayor, Jackie Izzo, the former mayor, Joseph Fusco, Jr., or the Rome Common Council President, Stephanie Viscelli.

[3]     The court has interpreted the plaintiff's claims to raise the strongest arguments that they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

### 2. City of Rome

In the complaint, plaintiff describes one incident, which occurred in July of 2014, after his family moved out of 105 Fourth St. Plaintiff alleges that on July 3, 2014, his wife called to ask for the water to 105 Fourth St. to be shut off, but was told by an unidentified individual, that she could not have the water shut off because she did not own the house. However, plaintiff states that he and then-Ms. Dow, owned the house together, and that she did have the authority to request this action. Plaintiff does not allege that there were any adverse consequences to this action.

In any event, plaintiff is not challenging a "policy," he is stating that an unidentified city employee was incorrect in determining that plaintiff's wife was not authorized to have the water to 105 Fourth St. shut off.[4] Then plaintiff discusses the "power," but only states that the power was "on." (Compl. at 3-4). There is no basis in this complaint to establish municipal liability, and the complaint may be dismissed as against the City of Rome.

[4]     The court notes that plaintiff states that his wife called about the water on July 3, 2014, and then states that either one of them could have asked to shut the water off, but then states: "with them failing to shut water off during the very cold winter when we could not get there to Rome and check on our belonging [sic] or home." (Compl. at 3). Clearly, July is several months prior to the "winter," and plaintiff makes no connection between his wife's telephone call and any damages that may have occurred during the "winter" because the water was not turned off in July. Nor does he indicate why he did not call the City to have them shut the water off between July and the

"winter." In fact, plaintiff never mentions what, if any, damage to their property the family sustained due to the unnamed individual's actions. Clearly, even assuming that there was some damage, it was not due to an alleged "policy" of the City of Rome.

## IV. "Causes of Action"

### A. Negligence

**\*4** Plaintiff's first cause of action is for "Negligence in assisting in protecting a handicap [sic] individuals [sic] property and home." Plaintiff's frustration with the way he was "negligently" treated by the City of Rome or its unidentified employees may not be the subject of a section 1983 action regardless of the official who plaintiff names. *D. v. City of New York*, No. 14 Civ. 7131, 2016 WL 4734592, at *4 (S.D.N.Y. Aug. 22, 2016) (citing inter alia *City of Sacremento v. Lewis*, 523 U.S. 833, 849 (1988) (liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process)). In any event, a careful reading of the complaint shows that plaintiff never alleges any damage to 105 Fourth St. which occurred as the result of "negligent" behavior by any defendant. The court can only assume that plaintiff is trying to say that defendants were "negligent"—in failing to help in "protecting" plaintiff's property. Plaintiff does not claim any damage to his property as the result of any defendant's actions, and if he is still referring to the alleged "loss" of 105 Fourth St., that is the subject of 15-CV-734. Thus, plaintiff's attempt at stating a a cause of action for negligence fails, and plaintiff's first cause of action must be dismissed.

### B. Intentional Infliction of Emotional Distress

There is no recognized claim for intentional infliction of emotional distress under section 1983. *Watson v. Doe*, No. 1:15-CV-1356, 2016 WL 347339, at *32 (N.D.N.Y. Jan. 28, 2016). Intentional infliction of emotional distress is a state law claim that could only be brought in federal court if the court exercised supplemental jurisdiction, which is available if there is an underlying federal or constitutional claim to which the state claim is "supplemental." *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("if Matican has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims").

Because plaintiff in this case has not stated a constitutional claim, there is no reason to exercise supplemental jurisdiction over a vague claim of emotional distress, which may be

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 115 of 123

Schisler v. City of Rome, Not Reported in Fed. Supp. (2017)

2017 WL 1418296

referring to actions that are the subject of another law suit. As stated above, plaintiff is already suing the City of Rome and individuals in their official capacity in 15-CV-734 for incidents relating to the "loss" of 105 Fourth St., due to the alleged failure of the defendants in 15-CV-734 to allow plaintiff and his wife to obtain a permit to build a driveway so that he and his family could better access the home.[5]

[5]     The court notes that 15-CV-734 is proceeding based on the claim that plaintiffs were discriminated against based on their disability under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., not based on section 1983 jurisdiction. (Dkt. No. 20 in 15-CV-734, *recon. denied*, Dkt. No. 26, *appeal dismissed*, Dkt. No. 31 (2d Cir. July 18, 2016)).

This complaint also refers to incidents that relate to 105 Fourth St. The only incident to which plaintiff refers in this complaint relates to his wife calling the City of Rome to request the water to be shut off. An employee's refusal to shut off water based on a perceived lack of the caller's authority, cannot be the subject of a claim of intentional infliction of emotional distress by this plaintiff. Plaintiff's frustration and vague complaints about other incidents that may have also caused him stress are not the subject of a section 1983 action. Conclusory allegations are insufficient to state a claim under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987). Thus, this case may be dismissed for failure to state a claim.[6]

[6]     Plaintiff is apparently frustrated with the legal system. However, this court notes that some of the delay that plaintiff is experiencing in 15-CV-734 is due to the efforts made to find a defendant that plaintiff did not properly identify, an "interlocutory appeal" to the Second Circuit in April of 2016 that was dismissed by that court, and now another interlocutory appeal to the Second Circuit of a text order that I issued on February 17, 2017. (Dkt. Nos. 61-63 in 15-CV-734).

## V. Opportunity to Amend

### A. Legal Standards

**\*5**  Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any

amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

This court does not find that plaintiff could amend his complaint in any way to allege a constitutional claim based on the facts that he has stated in this complaint against the current defendants who he has named.[7] To the extent that plaintiff seeks to sue defendant Fusco over 105 Fourth St., plaintiff has already had an opportunity to amend to state a claim against the former mayor and failed to do so in 15-CV-734. (*See* Dkt. No. 12 in 15-CV-734 at 12-13, *adopted* Dkt. No. 14). Thus, the court should not afford plaintiff another opportunity to do so. Thus, I will recommend dismissal of the entire complaint without opportunity to amend.

[7]     Plaintiff and his wife have filed multiple actions in the Northern District of New York, most of which have been dismissed. *Schisler v. Rizio*, No. 6:14-CV-793 (GTS/TWD), dismissed Oct. 16, 2014; *Schisler v. Fusco*, No. 6:14-CV-794 (GTS/TWD), dismissed Dec. 16, 2014; *Schisler v. Rizio*, No. 15-CV-1122 (TJM/ATB), dismissed May 23, 2016; *Schisler & Dow v. M & T Bank*, No. 6:16-CV-514 (DNH/TWD) (dismissal recommended on May 24, 2016) (objections filed —currently open); *Schisler v. Thomas*, No. 6:16-CV-1051 (GLS/ATB), dismissed Nov. 19, 2016; *Schisler v. Utica Police Dep't*, No. 6:16-CV-1051 (dismissal with prejudice recommended on Sept. 9, 2016) (objections filed—currently open); *Schisler v. James Cars of Rome*, No. 6:16-CV-1382 (GTS/ TWD) (dismissed Dec. 22, 2016).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for IFP (Dkt. No. 2) be **GRANTED FOR PURPOSES OF FILING ONLY**. and it is

**RECOMMENDED**, that the plaintiff's complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

2017 WL 1418296

**ORDERED**, that the Clerk serve a copy of this Order on the pro se plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1418296

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 117 of 123

2022 WL 2209441
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mazell YORK and Michael McDonald, Plaintiffs,

v.

CITY OF JOHNSTOWN, City of Johnstown Police
Department, Blaine Walker, and Jase Kollar, Defendants.

1:20-cv-01616 (MAD/ML)
|
Signed 06/21/2022

**Attorneys and Law Firms**

DANIEL ROMEO SMALLS, ESQ., LAW OFFICE OF
DANIEL R., SMALLS, PLLC, 251 State Street, Suite 202,
Schenectady, New York 12305, Attorneys for Plaintiffs.

THOMAS K. MURPHY, ESQ., MURPHY BURNS LLP,
407 Albany Shaker Road, Loudonville, New York 12211,
Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, United States District Judge:

**I. INTRODUCTION**

**\*1** On December 29, 2020, Plaintiffs Mazell York ("Plaintiff
York") and Michael McDonald ("Plaintiff McDonald")
commenced this action pursuant to 42 U.S.C. § 1983
("Section 1983") against Defendants City of Johnstown
(the "City"), City of Johnstown Police Department (the
"Johnstown Police Department"), Police Officer Blaine
Walker ("Officer Walker"), and Police Officer Jase Kollar
("Officer Kollar"). See Dkt. No. 1. Plaintiffs' amended
complaint asserts five causes of action under Section 1983:
(1) the unlawful seizure of Plaintiffs in violation of the
Fourth and Fourteenth Amendments against Officer Walker;
(2) intentional infliction of emotional distress against Officer
Walker and Officer Kollar;[1] (3) failure to intervene against
Officer Kollar; (4) malicious prosecution against the City,
Officer Walker, and Officer Kollar; and (5) municipal liability
against the City and the Johnstown Police Department. See
Dkt. No. 24 at ¶¶ 44-85.

[1]    Plaintiffs make repeated reference to a Defendant
"Doe" throughout the amended complaint. See
generally Dkt. No. 24. The Court believes that
these references are accidental remnants of the
original complaint, which asserted claims against a
"City of Johnstown Police Officer John Doe." See
Dkt. No. 1 at ¶ 4. That officer was later identified as
Officer Kollar. See Dkt. No. 24 at ¶ 4. Accordingly,
the Court treats all references to Defendant Doe
in the amended complaint as references to Officer
Kollar.

Presently before the Court is Defendants' motion for
summary judgment. See Dkt. No. 46. For the following
reasons, Defendants' motion is granted in part and denied in
part.

**II. BACKGROUND**

On December 30, 2019, at approximately 4:13 p.m., Plaintiff
York was sitting in the driver's seat of his car, parked in front
of a residence on Byard Street in the City of Johnstown. See
Dkt. No. 46-9 at ¶ 1. Plaintiff York's vehicle had an object—a
"replica water buoy"—hanging from his rearview mirror. See
id. at ¶ 14. As Plaintiff York was sitting in his car, Plaintiff
McDonald exited the front door of the Byard Street residence
and began walking towards Plaintiff York's vehicle. See id. at
¶ 2. Officer Walker, who was driving down Byard Street in
a marked vehicle, observed Plaintiff McDonald approaching
the vehicle from the Byard Street residence and parked his
police vehicle in a nearby parking lot where he could observe
Plaintiffs. See id. at ¶¶ 3, 8. Officer Walker was familiar with
Plaintiff McDonald through his work as a police officer, and
knew that he had prior arrests and convictions for narcotic-
related crimes. See id. at ¶ 4.[2]

[2]    Plaintiff McDonald had been convicted of criminal
possession of a controlled substance in 2014 and
criminal possession of marihuana in 2018. See Dkt.
No. 46-9 at ¶ 5. Two months after the events of this
action, Plaintiff McDonald was convicted again of
criminal possession of a controlled substance. See
id. at ¶ 6.

Plaintiff McDonald returned to the Byard Street residence for
a short period of time, and then reemerged and entered the
front passenger seat of Plaintiff York's vehicle. See id. at ¶ 10.
Plaintiff York, with Plaintiff McDonald as a passenger, then

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 118 of 123

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

pulled away from the curb and began traveling westbound on Byard Street. *See id.* at ¶ 11. When Plaintiff York turned onto North Perry Street, Officer Walker initiated a traffic stop and pulled Plaintiffs over. *See* Dkt. No. 47 at 4. During the traffic stop, Officer Walker ordered Plaintiff York out of the vehicle and questioned both Plaintiffs. *See id.* at 5. At some point during the traffic stop, Officer Kollar arrived on the scene to assist Officer Walker. *See* Dkt. No. 46-9 at ¶ 19. Ultimately, Officer Walker issued Plaintiff York a traffic ticket for violating New York Vehicle and Traffic Law ("VTL") § 375(30), and concluded the stop without arresting either Plaintiff. *See* Dkt. No. 46-9 at ¶ 20.

**\*2** VTL § 375(30) makes it

> unlawful for any person to operate a motor vehicle with any object placed or hung in or upon the vehicle ... in such a manner as to obstruct or interfere with the view of the operator through the windshield, or to prevent him from having a clear and full view of the road and condition of traffic behind such vehicle.

The traffic ticket was subsequently dismissed by Johnstown City Court. *See* Dkt. No. 46-10 at 14 n.2.

Defendants now move for summary judgment, arguing that (1) Officer Walker had probable cause for the traffic stop; (2) Plaintiffs fail to allege a claim for malicious prosecution, intentional infliction of emotional distress, and municipal liability; (3) Officer Kollar had no obligation to intervene; and (4) both Officer Walker and Officer Kollar are entitled to qualified immunity. *See* Dkt. No. 46-10. In opposition, Plaintiffs argue that (1) there is a question of fact concerning whether Officer Walker had probable cause for the traffic stop; (2) Plaintiffs have stated a claim for municipal liability; and (3) Officer Walker and Officer Kollar are not entitled to qualified immunity. *See* Dkt. No. 47-2.

### III. DISCUSSION

#### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material

fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

" 'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.' " *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Id.* (quoting *Anderson*, 477 U.S. at 252). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.' " *Id.* (quotations omitted).

#### B. Unlawful Seizure / False Arrest

**\*3** "To prevail on a claim of false arrest under New York law, the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise

Case 8:24-cv-00889-MAD-MJK Document 9 Filed 09/06/24 Page 119 of 123

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)). Defendants concede the first three elements of the claim. As to the fourth element, "[a]n arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *McKay v. City of New York*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014). Thus, " '[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.' " *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "The burden of establishing the absence of probable cause rests on the plaintiff." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007) (citing *Brown v. City of New York*, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004)).

"The Fourth Amendment permits brief investigative stops, including traffic stops, when 'a law enforcement officer has a particularized and objective basis'—also known as a 'reasonable suspicion'—to 'suspect[ ] the particular person stopped of criminal activity.' " *United States v. Churchill*, 792 Fed. Appx. 39, 41 (2d Cir. 2019) (quoting *Navarette v. California*, 572 U.S. 393, 396–97 (2014)). "[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). "While the reasonable suspicion standard requires 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause,' ... it does entail 'some minimal level of objective justification.' " *United States v. Diaz*, 802 F.3d 234, 238-39 (2d Cir. 2015) (quotations omitted); *see also United States v. Patterson*, 25 F.4th 123, 135-36 (2d Cir. 2022).

Here, the Court cannot conclude that Officer Walker had reasonable suspicion to suspect Plaintiff York of violating VTL § 375(30) because there is conflicting testimony on Officer Walker's ability to see the object hanging from the vehicle's rearview mirror prior to the traffic stop. Officer Walker testified that, "[a]s the vehicle approached [his] position" in the Johnstown Area Volunteer Ambulance Corps parking lot, he "observed an orange or red spherical object hanging from the rearview mirror of the vehicle ... which obstructed [Plaintiff York's] view of the roadway." Dkt. No. 46-4 at ¶ 25. Plaintiff York, on the other hand, testified that the distance between the two cars and the light from the vehicles' headlights would have made it impossible for Officer Walker

to see an object hanging from the rearview mirror prior to the traffic stop. Dkt. No. 47-3 at ¶ 13. The Court cannot make a credibility determination or choose between conflicting versions of events on summary judgment. *See Jeffreys*, 426 F.3d at 553-54.

Defendants argue that, in any event, Officer Walker is shielded from liability by the doctrine of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 54, 60-61 (2d Cir. 2009)). "Where, as here, qualified immunity is asserted at the summary judgment stage, a court may grant judgment if it is clear—after viewing the facts in the light most favorable to plaintiff—that reasonable law enforcement officers could have disagreed about whether defendants' conduct violated the law." *Ozga v. Elliot*, 150 F. Supp. 3d 178, 189 (D. Conn. 2015) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015)); *see also Cox v. Village of Pleasantville*, 271 F. Supp. 3d 591, 614 (S.D.N.Y. 2017) ("When analyzing an officer's claim for qualified immunity in the context of an investigatory stop, the Court must examine whether '(a) it was objectively reasonable for the officer[s] to believe reasonable suspicion existed or (b) officers of reasonable competence could disagree on whether the reasonable suspicion test was met' ") (quotation omitted). "For a right to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question 'beyond debate' in the particular factual context at issue." *Kerr v. Morrison*, 664 Fed. Appx. 48, 51 (2d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

**\*4** Here, the Court holds that Officer Walker is not shielded from liability under the doctrine of qualified immunity. Crediting Plaintiffs' testimony that Officer Walker was unable to see the object hanging from the vehicle's rearview mirror before he pulled Plaintiffs over, the only remaining grounds for suspecting Plaintiffs of criminal activity available to Officer Walker was that he had (1) "personally interacted with [Plaintiff] McDonald on several occasions" and "was aware that he had a history of arrests and convictions for the possession of illegal narcotics"; (2) "observed [Plaintiff] McDonald look up and show a surprised expression upon

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 120 of 123

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

seeing [the] marked police vehicle" which Officer Walker characterized "as his 'jaw dropping' "; and (3) observed Plaintiff McDonald return to the residence before entering and departing in the vehicle. Dkt. No. 46-4 at ¶¶ 20-21, 24. The Court finds that no officer of reasonable competence could disagree about whether the knowledge of a criminal history and observing a "surprised expression" provided objectively reasonable grounds for a suspicion of illegal activity. *See Vasquez v. Maloney*, 990 F.3d 232, 239 (2d Cir. 2021) ("Although it is well settled that police officers may reasonably consider a person's criminal history as part of the total mix of information guiding their reasonable suspicion analysis, it has been equally well settled since at least 1977 that seeing a person with a criminal record in a public place, with nothing more, does not give rise to reasonable suspicion that the person has engaged or is engaging in further criminal activity"); *United States v. Swindle*, 407 F.3d 562, 569 (2d Cir. 2005) ("[T]he officers had merely observed an unidentified black man drive up to the drug house in a Bonneville (a model the police associated with [a wanted drug dealer]), enter the house, leave a short while later and then drive away. This is not enough information on which to reasonably order a person to stop").

Accordingly, Defendants' motion for summary judgment on Plaintiffs' first cause of action for unlawful seizure is denied.

## C. Failure to Intervene

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). To establish a claim of failure to intervene a plaintiff must prove:

"(1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene."

*Butchino v. City of Plattsburg*, No. 8:20-CV-796, 2022 WL 137721, *6 (N.D.N.Y. Jan. 14, 2022) (quotation omitted).

Even assuming that Officer Walker committed a constitutional violation against Plaintiffs and that Officer Kollar had a reasonable opportunity to intervene, no reasonable jury could find under the uncontroverted facts of this case that Officer Kollar knew of, or deliberately ignored, Officer Walker's alleged constitutional violation. Officer Kollar's involvement with the traffic stop underlying this action began *after* Officer Walker pulled over Plaintiffs' vehicle, when he heard over the police radio that Officer Walker had conducted a traffic stop of a vehicle on North Perry Street. *See* Dkt. No. 46-8 at ¶ 8. When Officer Kollar arrived, Officer Walker informed him that he had conducted the traffic stop due to a violation of VTL § 375(30), whereupon Officer Kollar looked into Plaintiffs' vehicle and observed that there was, in fact, an object hanging from the vehicle's rearview mirror. *See id.* at ¶¶ 11-12. Officer Kollar testifies that the hanging object appeared to obstruct a driver's view of the roadway. *See id.* at ¶ 12.[3] In sum, there is no evidence in the record that Officer Kollar had any reason to know or suspect that Officer Walker may have used the object hanging from the mirror as an after-the-fact pretext to justify his traffic stop.

[3]   Although Plaintiffs flatly deny these facts in their response to Defendants statement of material facts, *see* Dkt. No. 47 at 3, they offer no grounds for doing so. *See* Local Rule 56.1(b) ("Each denial shall set forth a specific citation to the record where the factual issue arises"). Nor do Plaintiffs offer any alternative view of Officer Kollar's involvement in the traffic stop in their testimony, *see generally* Dkt. Nos. 46-2, 46-3, 47-3, 47-4; and fail to even address this claim in their memorandum of law, *see generally* Dkt. No. 47-2.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' third cause of action for failure to intervene is granted.

## D. Intentional Infliction of Emotional Distress

**\*5** As a preliminary matter, "intentional infliction of emotional distress 'is not a cognizable constitutional claim' " under Section 1983. *Scott v. City of Rochester*, No. 17-CV-6311, 2019 WL 4016165, \*4 (W.D.N.Y. Aug. 26, 2019); *see also Slater v. Mackey*, No. 12-CV-04325, 2015 WL 6971793, \*9 (E.D.N.Y. Nov. 10, 2015); *Anderson v. City of New York*, No. 13-CV-1745, 2013 WL 6182675, \*3 (S.D.N.Y. Nov. 19, 2013). Thus, to the extent that Plaintiffs intend to assert this claim under Section 1983[4] against Officers Walker and Kollar, the claim must be dismissed.

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

Case 8:24-cv-00889-MAD-MJK    Document 9    Filed 09/06/24    Page 121 of 123

2022 WL 2209441

<sup>4</sup> The amended complaint places "42 U.S.C. § 1983" immediately before Plaintiffs' cause of action for intentional infliction of emotional distress, but does not otherwise state the intended grounds for this claim. *See* Dkt. No. 24 at ¶¶ 48-55. Plaintiffs' opposition to this motion does not directly address this claim. *See generally* Dkt. No. 47-2.

It is possible that Plaintiffs intend to assert this claim under state law. "[U]nder New York law, an intentional infliction tort may 'be invoked only as a last resort,' ... 'to provide relief in those circumstances where traditional theories of recovery do not.' " *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (quotations omitted). Thus, "[c]laims for intentional infliction of emotional distress must be dismissed where ... the conduct underlying the claim may be redressed by way of traditional tort remedies such as battery, false arrest, and malicious prosecution." *Kirk v. Metro. Transp. Auth.*, No. 99-CIV-3787, 2001 WL 258605, *8 (S.D.N.Y. Mar. 14, 2001) (citations omitted); *see also Salmon*, 802 F.3d at 256 ("[T]he New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.' All four Appellate Division courts have answered the question and held that it cannot") (quotation omitted); *Dayes v. Watertown City Sch. Dist.*, No. 5:20-CV-964, 2021 WL 4407385, *10 (N.D.N.Y. Sept. 27, 2021). Because the allegations underlying Plaintiffs' intentional infliction of emotional distress claim are the same as those supporting their false arrest claim, this cause of action must be dismissed under state law.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' second cause of action for intentional infliction of emotional distress is granted.

**E. Malicious Prosecution**

"To prevail on a § 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.' " *Azeez v. City of New York*, 790 Fed. Appx. 270, 274 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). To establish a malicious prosecution claim under New York law, a plaintiff must prove " '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of

probable cause for the criminal proceeding and (4) actual malice.' " *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)). "For a malicious prosecution claim under Section 1983, a plaintiff also must demonstrate a 'sufficient post-arraignment liberty restraint.' " *Id.* at 162 (quotation omitted).

**\*6** Plaintiffs have, at a minimum, failed to satisfy the first and third elements of their claim.<sup>5</sup> Initially, Plaintiff York cannot show that a criminal prosecution was commenced against him because "traffic infractions are not a crime." *Azeez*, 790 Fed. Appx. at 274 (citing VTL § 155 ("A traffic infraction is not a crime")). Even assuming that traffic infractions could constitute a criminal prosecution against Plaintiff York, Officer Walker had probable cause to issue Plaintiff York a traffic ticket for violating VTL § 375(30).<sup>6</sup> " 'Probable cause exists when 'the facts and circumstances within ... the [police] officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.' " *Meyers v. City of New York*, 812 Fed. Appx. 11, 14 (2d Cir. 2020) (quotation omitted). Plaintiff York acknowledges that he had an object hanging from his rearview mirror at the time of the traffic stop and that Officer Walker observed it before he issued the traffic ticket. *See* Dkt. No. 47 at 5. Officer Walker's contemporaneous belief that this object obstructed Plaintiff York's view is sufficient for the purposes of probable cause; an officer need not conclusively prove a violation of VTL § 375(30) before he issues a traffic ticket.

<sup>5</sup> To the extent that Plaintiffs seek to allege a malicious prosecution claim on behalf of Plaintiff McDonald, that claim must be dismissed. The traffic ticket forming the basis of the malicious prosecution claim was only issued against Plaintiff York.

<sup>6</sup> The Court notes that whether Officer Walker had probable cause to issue Plaintiff York a traffic ticket is a separate issue from whether Officer Walker had probable cause to believe a criminal activity had occurred when he pulled over Plaintiffs' vehicle.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' fourth cause of action for malicious prosecution is granted.

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

## F. Municipal Liability

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Matusick v. Erie County Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones*, 691 F.3d at 80; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that under Section 1983 governmental bodies are not vicariously liable for their employees' actions); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Thus, "to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and '(1) the existence of a municipal policy or custom ... that caused his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.' " *Lapoint v. Vasiloff*, No. 1:15-CV-185, 2016 WL 951566, *6 (N.D.N.Y. Mar. 9, 2016) (quoting *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011)). "Municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating 'a deliberate government policy or failing to train or supervise its officers.' " *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)).

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (" '[T]he mere assertion ... that a municipality has such a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference' ") (quotation omitted); *see also Zherka v. City of New York*, 459 Fed. Appx. 10, 12 (2d Cir. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citation omitted); *see also Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).

**\*7** The Court holds that Plaintiffs have not stated a claim for municipal liability under Section 1983. Plaintiffs' claim

appears to be premised on two theories: First, that the Defendant Officers were acting pursuant to an expressly adopted official policy of the Johnstown Police Department, *see* Dkt. No. 24 at ¶ 75; and second, that the Johnstown Police Department has a longstanding and widespread practice or custom of, among other things, utilizing pretextual traffic stops on minorities. *See id.* at ¶ 76. However, Plaintiffs have not identified or provided any official policy of the Johnstown Police Department, let alone one that permits or encourages officers to conduct pretextual traffic stops on minorities. [7] Furthermore, Plaintiffs do not identify any examples of unconstitutional traffic stops by Johnstown Police Department other than (1) the traffic stop that underlies their claim, and (2) a single prior traffic stop between Plaintiff McDonald and Officer Walker. *See* Dkt. No. 46-3 at 34-36. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, *9 (S.D.N.Y. May 9, 2022) ("Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]' ") (quotation omitted); *Murphy v. City of Elmira*, No. 6:18-CV-06572, 2020 WL 709610, *3 (W.D.N.Y. Feb. 12, 2020) (holding that a plaintiff's allegations that focused "solely on his own experiences" were "plainly insufficient under *Monell*").

[7]    It appears that Plaintiffs' counsel has "serve[d] no discovery demands and conducted no depositions." Dkt. No. 46-10 at 20.

Accordingly, Defendants' motion for summary judgment on Plaintiffs' fifth cause of action for municipal liability is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 46) is **GRANTED in part** and **DENIED in part**; [8] and the Court further

Case 8:24-cv-00889-MAD-MJK   Document 9   Filed 09/06/24   Page 123 of 123

York v. City of Johnstown, Not Reported in Fed. Supp. (2022)

2022 WL 2209441

8      As a result of this Memorandum-Decision and
       Order, Plaintiffs' only remaining claim is their first
       cause of action for unlawful seizure against Officer
       Walker.

**ORDERS** that Defendants **City of Johnstown, City of Johnstown Police Department**, and **Police Officer Jase Kollar** are **DISMISSED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2209441

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.